UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS



NEUTONE RECORDINGS,
    Plaintiffs

    v.

DREAMWORKS SKG,
DREAMWORKS, INC.,
DREAMWORKS DISTRIBUTION, LLC,
DREAMWORKS PRODUCTIONS, LLC,
DREAMWORKS INTERNATIONAL
DISTRIBUTION, LLC,
DREAMWORKS, LLC,
DREAMWORKS FILMS, LLC
HOME BOX OFFICE, INC.,
LATIN MUSIC ENTERTAINMENT,
and DIMELO! RECORDS
    Defendants.

COMPLAINT

1.    This is a suit for a permanent injunction, an accounting, and damages for

Defendants' actions in directly, contributorily, and vicariously infringing copyrights

owned by Plaintiff. Counts I through XLVI are brought under the Copyright Act of the

United States as amended, 17 United States Code sections 101 et seq., to redress the

infringement of one (1) copyrighted musical work and one (1) copyrighted sound

recording.

## JURISDICTION

2.    Jurisdiction for copyright infringement is conferred on this Court pursuant to 28 U.S.C. sections 1331, 1338(a) and 1332, and under the Copyright Act of the United States, Title 17 U.S.C.A. § § 101 et seq., Proper venue exists under 28 U.S.C. §§ 1391(b) and 1400(a). The amount in controversy exceeds $75,000.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1400(a) and 1391(b) and (c), as the Defendants are corporations or limited liability companies subject to personal jurisdiction in this district and are therefore deemed to reside here for purposes of venue. Upon information and belief, each of the Defendants, have engaged in and committed the acts herein complained of in the State of Massachusetts and in this District causing injury to Plaintiff and its property rights within the State of Massachusetts and in this District.

## PARTIES

4.    Plaintiff Neutone Recordings (hereinafter, "NEUTONE") is a partnership located at 7 Nottingham Road, Grafton, Massachusetts, and owns fifty percent (50%) of the copyright in the musical work alleged to have been infringed by the Defendants. Plaintiff NEUTONE is also the owner of the copyright in the sound recording embodying the same musical work, which sound recording is alleged to have been infringed by the Defendants.

2

5.    Upon information and belief, Defendant DREAMWORKS, INC. (hereinafter referred to as "DREAMWORKS, INC") is a duly organized Delaware corporation, whose principal address is 1000 Flower Street, Glendale, California 91201, and at all times relevant hereto was in the business of producing, distributing, and licensing entertainment related properties, including the motion picture "The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie Chan."

6.    Upon information and belief, Defendant DREAMWORKS SKG (hereinafter referred to as "DREAMWORKS" or "SKG") is a duly organized Delaware corporation, whose principle address is 1000 Flower Street, Glendale, California 91201, and at all times relevant hereto was in the business of producing, distributing, and licensing entertainment related properties, including the motion picture "The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie Chan."

7.    Upon information and belief, Defendant DREAMWORKS DISTRIBUTION, LLC (hereinafter referred to as "DREAMWORKS DISTRIBUTION") is a duly organized Delaware limited liability company, whose principal address is 1000 Flower Street, Glendale, California 91201, and at all times relevant hereto was in the business of distributing entertainment related properties, including the motion picture "The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie Chan."

8.    Upon information and belief, Defendant DREAMWORKS
PRODUCTIONS, LLC (hereinafter referred to as "DREAMWORKS PRODUCTIONS")
is a duly organized Delaware limited liability company, whose principal address is 1000
Flower Street, Glendale, California 91201, and at all times relevant hereto was in the
business of producing entertainment related properties, including the motion picture "The
Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie Chan."

9.    Upon information and belief, Defendant DREAMWORKS
INTERNATIONAL DISTRIBUTION, LLC (hereinafter referred to as
"DREAMWORKS INTERNATIONAL") is a duly organized Delaware limited liability
company, whose principal address is 1000 Flower Street, Glendale, California 91201, and
at all times relevant hereto was in the business of distributing entertainment related
properties, including the motion picture "The Tuxedo" and the audio-visual work "HBO
First Look: Tailor Made For Jackie Chan."

10.    Upon information and belief, Defendant DREAMWORKS, LLC
(hereinafter referred to as "DREAMWORKS LLC") is a duly organized Delaware
limited liability company, whose principal address is 1000 Flower Street, Glendale,
California 91201, and at all times relevant hereto was in the business of producing,
distributing, and licensing entertainment related properties, including the motion picture
"The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie
Chan."

4

11.    Upon information and belief, Defendant DREAMWORKS FILMS, LLC (hereinafter referred to as "DREAMWORKS FILMS") is a duly organized Delaware limited liability company, whose principal address is 1000 Flower Street, Glendale, California 91201, and at all times relevant hereto was in the business of producing, distributing, and licensing entertainment related properties, including the motion picture "The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made For Jackie Chan."

12.    Upon information and belief, Defendant HOME BOX OFFICE, INC. (hereinafter referred to as "HBO") is a duly organized Delaware corporation, whose principal address is 1100 Avenue of the Americas, New York, New York 10036-6712, and at all times relevant hereto was in the business of producing, distributing, licensing, and cable-casting audio-visual works.

13.    Upon information and belief, Defendant LATIN MUSIC ENTERTAINMENT, INC. (hereinafter referred to as "LME") is a California business entity having its usual place of business at 10835 Chandler Boulevard, North Hollywood, California 91601-2938.  LME at all times relevant hereto was in the business of producing, distributing, and licensing sound recordings and musical works.

14.    Upon information and belief, Defendant DIMELO! RECORDS (hereinafter referred to as "DIMELO") is a California business entity having its usual place of business at 10835 Chandler Boulevard, North Hollywood, California 91601-

2938. LME at all times relevant hereto was in the business of producing, distributing, and licensing sound recordings and musical works.

## FACTS

15.    NEUTONE was formed in 2001 for the purpose of licensing, producing, and distributing sound recordings and musical works.

16.    Plaintiff NEUTONE is the co-owner of the musical work "El Mambo" with co-owners Marcelo Carlos Castelli Pintos a/k/a "Marcelo Castelli" (hereinafter referred to as "CASTELLI") and Gustavo Bravetti (hereinafter referred to as "BRAVETTI"). By written agreement, NEUTONE was assigned fifty percent (50%) of the copyright in the musical work "El Mambo" along with sole administration rights over the work. Copyright registration was secured on November 13, 2003 as Registration number PAU 2 829 551, (attached hereto as Exhibit A).

17.    Plaintiff NEUTONE is the sole owner of the sound recording "El Mambo." By written contract, NEUTONE was assigned one hundred percent (100%) of the copyright in the sound recording "El Mambo" by CASTELLI and BRAVETTI, the co-authors and original owners of the sound recording "El Mambo." Copyright registration was secured on November 13, 2003 as Registration number SRU 531 993, (attached hereto as Exhibit B).

6

18.   On or about November 25, 1997, BRAVETTI entered into an agreement with Oscar Jose Valdez d/b/a Dee Jay Music to record certain master recordings ("DJ Master Agreement") (attached hereto as Exhibit C). Said agreement did not include the "El Mambo" sound recording.

19.   On or about July 1, 2001 NEUTONE entered into a written contract with BRAVETTI and CASTELLI, the co-authors and original owners of the sound recording and musical composition, both titled "El Mambo." The contract granted plaintiff NEUTONE one hundred percent (100%) of the copyright in the "El Mambo" sound recording and fifty percent (50%) of the copyright in the musical work "El Mambo", along with full administration rights of said musical work (attached hereto as Exhibit D). The musical work and the sound recording are occasionally collectively referred to hereinafter as the "Copyrights" or "the Works."

20.   Defendant LME, through its subsidiary Dimelo! Latin Dance Records distributed an audio compilation on compact disc titled, DANCE REMIX EN TU IDIOMA VOL. 2, which contained unauthorized reproductions of both the sound recording and musical work titled "El Mambo."

21.   On or about September 27, 2002, Defendant DREAMWORKS entered into a written licensing contract with Defendant LME, to license from LME, the sound recording "El Mambo" for use in the DREAMWORKS production "The Tuxedo", (attached hereto as Exhibit E).

22.    On or about September 27, 2002, Defendant DREAMWORKS

PRODUCTIONS entered into a written licensing contract with Defendant LME, to

license from LME, the musical work "El Mambo" for use in the DREAMWORKS

production "The Tuxedo", (see Exhibit E).

23.    On or about September 27, 2002, Defendant DREAMWORKS released

the motion picture, "The Tuxedo" theatrically.

24.    On or about September 9, 2003, NEUTONE's Roger Mouzakis contacted

Julie Butchko at DREAMWORKS via telephone regarding the use of the Works in "The

Tuxedo."

25.    In a letter dated September 9, 2003, NEUTONE'S Roger Mouzakis

notified Julie Butchko of DREAMWORKS that the use of the Works by

DREAMWORKS was unauthorized and in need of a resolution, the letter further

confirms the previous phone conversation putting DREAMWORKS on notice of

NEUTONE'S rights, (attached hereto as Exhibit F).

26.    On or about February 25, 2003, Defendant DREAMWORKS released the

motion picture, "The Tuxedo" on DVD and VHS.

27.    On or about November 21, 2003, NEUTONE, through counsel, sent via

fax and mail, a demand letter to Julie Butchko at DREAMWORKS. Said letter reiterated

NEUTONE's ownership of the Works and confirmed notification to DREAMWORKS that use of the Works constituted infringements of NEUTONE'S copyrights. Said letter also mentions that any public performance by HBO would also be infringing the exclusive rights of NEUTONE.

28.    On or about November 21, 2003, Defendant HBO  began to cable-cast the motion picture "The Tuxedo" and the audio-visual work "HBO First Look: Tailor Made for Jackie Chan," both containing the Works.

29.    On or about December 15, 2003, NEUTONE, through its counsel, sent via fax, a letter to Lenny Wohl at DREAMWORKS with an attached copy of the written agreement between CASTELLI and BRAVETTI and NEUTONE granting NEUTONE "all right title and interest, including without limitation one hundred percent (100%) of the world-wide copyright, in and to the master recording "El Mambo" and fifty percent (50%) of the world-wide copyright and exclusive administration rights in and to the musical composition embodied thereon."

30.    On or about March 15, 2004, NEUTONE, through its counsel, sent a letter via fax, to Lenny Wohl at DREAMWORKS. Attached to this fax was the DJ Master Agreement, (see Exhibit C). The DJ Master Agreement involved certain master recordings embodying the performances of BRAVETTI. "El Mambo" was not on the list of masters in the DJ Master Agreement.

31.    On or about September 27, 2004, NEUTONE, through its counsel, sent to Nissim Baly, Executive Officer of LME and DIMELO, via certified mail a demand letter notifying LME that LME's release of "El Mambo" on the audio compilation Dance Remix En Tu Idioma Vol. 2 and LME's third-party licensing of the Works to DREAMWORKS constituted infringements of NEUTONE's copyrights (attached hereto as Exhibit I). Attached to this letter were copyrights registration certificates issued to NEUTONE by the United States Copyright Office for the Works. The letter also requested that LME contact ASCAP to have the publishing information changed in the ASCAP database.

32.    On or about September 27, 2004, Mr. Baly, Executive Officer of Defendant LME sent to NEUTONE, through its counsel, a copy of a written agreement between LME and Dee Jay Music. This agreement purported to convey certain master recordings including "El Mambo." Under the DJ Master Agreement, Dee Jay Music had no rights to convey to LME. Moreover, the agreement between Dee Jay Music and LME was silent regarding any license or conveyance of musical works.

**COUNT I**
(DREAMWORKS, INC.)
Copyright Infringement
Musical Work "El Mambo"

33.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

34.  DREAMWORKS, INC. synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff NEUTONE's copyright in the said musical work.

35.  As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT II
(DREAMWORKS, INC.)
Copyright Infringement
Musical Work "El Mambo"

36.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

37.    DREAMWORKS, INC.  synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff NEUTONE's copyright in the said musical work.

38.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to

the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT III
(SKG)
Copyright Infringement
Musical Work "El Mambo"

39.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

40.    SKG's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

41.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT IV
(SKG)
Copyright Infringement
Musical Work "El Mambo"

42.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

43.    SKG's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

44.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT V
(DREAMWORKS DISTRIBUTION)
Copyright Infringement
Musical Work "El Mambo"

45.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

46.    DREAMWORKS DISTRIBUTION's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

47.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

## COUNT VI
### (DREAMWORKS DISTRIBUTION)
Copyright Infringement
Musical Work "El Mambo"

48.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

49.    DREAMWORKS DISTRIBUTION's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

50.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT VII
(DREAMWORKS PRODUCTIONS)
Copyright Infringement
Musical Work "El Mambo"

51.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

52.    DREAMWORKS PRODUCTIONS' synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

53.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT VIII
(DREAMWORKS PRODUCTIONS)
Copyright Infringement
Musical Work "El Mambo"

54.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

55.    DREAMWORKS PRODUCTIONS' synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff NEUTONE's copyright in the said musical work.

56.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT IX
(DREAMWORKS INTERNATIONAL DISTRIBUTION)
Copyright Infringement
Musical Work "El Mambo"

57.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

58.    DREAMWORKS INTERNATIONAL DISTRIBUTION's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

59.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to

the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT X
(DREAMWORKS INTERNATIONAL DISTRIBUTION)
Copyright Infringement
Musical Work "El Mambo"

60.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

61.    DREAMWORKS INTERNATIONAL DISTRIBUTION's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

62.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XI
(DREAMWORKS LLC)
Copyright Infringement
Musical Work "El Mambo"

63.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

64.    DREAMWORKS LLC's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

65.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XII
(DREAMWORKS LLC)
Copyright Infringement
Musical Work "El Mambo"

66.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

67.    DREAMWORKS LLC's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

68.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XIII
(DREAMWORKS FILMS)
Copyright Infringement
Musical Work "El Mambo"

69.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

70.    DREAMWORKS FILMS' synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

71.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XIV
(DREAMWORKS FILMS)
Copyright Infringement
Musical Work "El Mambo"

72.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

73.    DREAMWORKS FILMS' synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

74.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XV
(HBO)
Copyright Infringement
Musical Work "El Mambo"

75.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

76.    HBO's performance and cable-casting of the musical work "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said musical work.

77.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

## COUNT XVI
### (HBO)
### Copyright Infringement
### Musical Work "El Mambo"

78.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

79.    HBO's synchronization, distribution and performance of the musical work "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said musical work.

80.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

## COUNT XVII
### (LME)
### Copyright Infringement
### Musical Work "El Mambo"

81.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

82.    LME's reproduction and distribution of the musical work "El Mambo" without the copyright owners' permission on the phonorecord compilation; "DANCE REMIX EN TU IDIOMA VOL. 2" infringed Plaintiff's copyright in the said musical work.

83.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XVIII
(DIMELO)
Copyright Infringement
Musical Work "El Mambo"

84.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

85.    DIMELO reproduction and distribution of the musical work "El Mambo" without the copyright owners' permission on the phonorecord compilation; "DANCE

REMIX EN TU IDIOMA VOL. 2" infringed Plaintiff NEUTONE's copyright in the said musical work.

86.    As a result of said infringement of the musical work "El Mambo," the Plaintiffs sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's musical work all to the Plaintiff's damage.

COUNT XIX
(DREAMWORKS INC.)
Copyright Infringement
Sound Recording "El Mambo"

87.  Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

88.    DREAMWORKS INC's. synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff NEUTONE's copyright in the said sound recording.

89.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XX
(DREAMWORKS INC.)
Copyright Infringement
Sound Recording "El Mambo"

90.     Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

91.     DREAMWORKS INC's. synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

92.     As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXI
(SKG)
Copyright Infringement
Sound Recording "El Mambo"

93.     Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

94.    SKG's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff NEUTONE's copyright in the said sound recording.

95.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXII
(SKG)
Copyright Infringement
Sound Recording "El Mambo"

96.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

97.    SKG's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

98.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to

the Copyright and the Defendants unlawfully and wrongfully derived income and profit

from their use of Plaintiff's sound recording all to the Plaintiff's damage.


COUNT XXIII
(DREAMWORKS DISTRIBUTION)
Copyright Infringement
Sound Recording "El Mambo"


99.    Plaintiff hereby repeats and realleges each and every allegation contained

in paragraph 3 through 32.


100.    DREAMWORKS DISTRIBUTION's synchronization, distribution and

performance of the sound recording "El Mambo" without the copyright owners'

permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said

sound recording.


101.    As a result of said infringement of the sound recording "El Mambo," the

Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to

the Copyright and the Defendants unlawfully and wrongfully derived income and profit

from their use of Plaintiff's sound recording all to the Plaintiff's damage.


COUNT XXIV
(DREAMWORKS DISTRIBUTION)
Copyright Infringement
Sound Recording "El Mambo"

102.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

103.    DREAMWORKS DISTRIBUTION's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

104.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXV
(DREAMWORKS PRODUCTIONS)
Copyright Infringement
Sound Recording "El Mambo"

105.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

106.    DREAMWORKS PRODUCTIONS' synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said sound recording.

107.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording work all to the Plaintiff's damage.

COUNT XXVI
(DREAMWORKS DISTRIBUTION)
Copyright Infringement
Sound Recording "El Mambo"

108.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

109.    DREAMWORKS PRODUCTIONS' synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

110.    As a result of said infringement of the musical work "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXVII
(DREAMWORKS INTERNATIONAL DISTRIBUTION)
Copyright Infringement
Sound Recording "El Mambo"

112.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

113.    DREAMWORKS INTERNATIONAL DISTRIBUTION's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said sound recording.

114.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXVIII
(DREAMWORKS INTERNATIONAL DISTRIBUTION)
Copyright Infringement
Sound Recording "El Mambo"

115.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

116.    DREAMWORKS INTERNATIONAL DISTRIBUTION's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

117.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXIX
(DREAMWORKS LLC)
Copyright Infringement
Sound Recording "El Mambo"

118.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

119.    DREAMWORKS LLC's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said sound recording.

120.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to

30

the Copyright and the Defendants unlawfully and wrongfully derived income and profit

from their use of Plaintiff's sound recording all to the Plaintiff's damage.


COUNT XXX
(DREAMWORKS LLC)
Copyright Infringement
Sound Recording "El Mambo"


121.    Plaintiff hereby repeats and realleges each and every allegation contained

in paragraph 3 through 32.


122.    DREAMWORKS LLC's synchronization, distribution and performance of

the sound recording "El Mambo" without the copyright owners' permission in the audio-

visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's

copyright in the said sound recording.


123.    As a result of said infringement of the sound recording "El Mambo," the

Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to

the Copyright and the Defendants unlawfully and wrongfully derived income and profit

from their use of Plaintiff's sound recording all to the Plaintiff's damage.


COUNT XXXI
(DREAMWORKS FILMS)
Copyright Infringement
Sound Recording "El Mambo"

124.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

125.    DREAMWORKS FILMS' synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said sound recording.

126.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXII
(DREAMWORKS FILMS)
Copyright Infringement
Sound Recording "El Mambo"

127.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

128.    DREAMWORKS FILMS' synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made For Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

129.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXIII
(HBO)
Copyright Infringement
Sound Recording "El Mambo"

130.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

131.    HBO's public performance and cable-casting of the sound recording "El Mambo" without the copyright owners' permission in the motion picture "The Tuxedo" infringed Plaintiff's copyright in the said sound recording.

132.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXIV
(HBO)
Copyright Infringement
Sound Recording "El Mambo"

133.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

134.    HBO's synchronization, distribution and performance of the sound recording "El Mambo" without the copyright owners' permission in the audio-visual work "HBO First Look: Tailor Made for Jackie Chan" infringed Plaintiff's copyright in the said sound recording.

135.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to his ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXV
(DIMELO)
Copyright Infringement
Sound Recording "El Mambo"

136.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

137.    DIMELO's reproduction and distribution of the sound recording "El Mambo" without the copyright owners' permission on the phonorecord compilation,

"DANCE REMIX EN TU IDIOMA VOL. 2" infringed Plaintiff's copyright in the said sound recording.

138.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXVI
(LME)
Copyright Infringement
Sound Recording "El Mambo"

139.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

140.    LME's reproduction and distribution of the sound recording "El Mambo" without the copyright owners' permission on the phonorecord compilation, "DANCE REMIX EN TU IDIOMA VOL. 2" infringed Plaintiff's copyright in the said sound recording.

141.    As a result of said infringement of the sound recording "El Mambo," the Plaintiff sustained substantial injury, loss and damage to their ownership rights in and to the Copyright and the Defendants unlawfully and wrongfully derived income and profit from their use of Plaintiff's sound recording all to the Plaintiff's damage.

COUNT XXXVII
Declaratory Relief

142.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

143.    That Defendant DREAMWORKS entity responsible for title credits correctly credits NEUTONE as publishers of the musical work "El Mambo" and owners of the master recording "El Mambo" in all further reproductions of the motion picture "The Tuxedo."

COUNT XXXVIII
Declaratory Relief

144.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

145.    That Defendant LME relinquish any claim of ownership or interest in the musical work "El Mambo."

COUNT XXXIX
Declaratory Relief

146.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

147.    That Defendant LME relinquishes any claim of ownership or interest in the sound recording "El Mambo."

## COUNT XL
### Declaratory Relief

148.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

149.    That Defendant LME contact ASCAP in writing, directing ASCAP to update the ASCAP database by naming NEUTONE as administrator and publisher of the musical work "El Mambo."

## COUNT XLI
### Declaratory Relief

150.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

151.    That Defendant LME immediately ceases and desists from manufacturing, distributing, and publicly performing the musical work "El Mambo."

## COUNT XLII
### Declaratory Relief

152.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

153.    That Defendant LME immediately cease and desist from manufacturing, distributing, and publicly performing the sound recording "El Mambo."

COUNT XLIII
Declaratory Relief

154.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

155.    That Defendant DIMELO relinquishes any claim of ownership or interest in the musical work "El Mambo."

COUNT XLIV
Declaratory Relief

156.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

157.    That Defendant DIMELO relinquishes any claim of ownership or interest in the sound recording "El Mambo."

COUNT XLV
Declaratory Relief

158.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

159.    That Defendant DIMELO immediately ceases and desists from manufacturing, distributing, and publicly performing the musical work "El Mambo."

## COUNT XLVI
### Declaratory Relief

160.    Plaintiff hereby repeats and realleges each and every allegation contained in paragraph 3 through 32.

161.    That Defendant DIMELO immediately cease and desist from manufacturing, distributing, and publicly performing the sound recording "El Mambo."

## RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

1.    That Defendants be required to pay to Plaintiff such actual damages as they have sustained as a result of Defendant's copyright infringement pursuant to 17 U.S.C. §504(b);

2.    That Defendants be required to account for and disgorge to Plaintiff all gains, profits, and advantages derived by Defendant's copyright infringement pursuant to 17 U.S.C. 504(b);

3.    That the Defendants be required to pay to the Plaintiff such statutory damages as shall appear just to the Court within the provisions of the Copyright Act in a sum not less than $750.00 nor more than $30,000 per copyright, pursuant to 17 U.S.C. §504(c);

4.    That Defendant be required to pay Plaintiff an increase in the award of statutory damages in a sum up to and including $150,000 per copyrighted work, due to Defendant's willful infringement pursuant to 17 U.S.C. §504(c)(2);

5.    That Defendants, and their agents, employees and servants be enjoined during the pendency of this action and permanently from infringing Plaintiff's copyrights and other proprietary rights in the "El Mambo" sound recording and in the "El Mambo" musical work in any manner, and from publishing, selling, marketing, distributing, broadcasting or otherwise disposing of or performing the "El Mambo" sound recording and "El Mambo" musical work, or any materials derived there from that include any portion of the infringed musical work or sound recording.

6.    That Defendants be required to deliver up to be impounded during the pendency of this action all material copied from or derived from the "El Mambo" musical work and

the "El Mambo" sound recording in their possession or under their control and to deliver up for destruction all infringing copies of these works;

7.     That Defendants be required to notify ASCAP or any other applicable performing rights organization that NEUTONE is the rightful publisher and administrator of the musical work "El Mambo," and that all public performance royalties be directed to Plaintiff;

8.     That Defendants pay to Plaintiff the costs of this action together with reasonable attorney's fees to be allowed to Plaintiffs by this Court;

9.     That Plaintiff be granted such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury for all applicable claims.

Neutone Recordings
By their Attorneys:

William Carroll, Esquire
BBO Number 076400
48 Forest Street
Wakefield, MA 01880
(781) 621-8258

David Herlihy, Esquire
BBO Number 541907
14 Staniford Street
Newton, MA 02466
(617) 964-4006

Dated: _____ 2005

# CIVIL COVER SHEET

☙JS 44  (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

Neutone Recordings

### DEFENDANTS

DreamWorks, Inc., DreamWorks SKG, DreamWorks Distribution, LLC, DreamWorks Productions, LLC, (continued, see attachment)

**05 — 10807 NG**

**(b)**  County of Residence of First Listed Plaintiff    Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

(see attachment)

Attorneys (If Known)

(see attachment)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17 USC § 501

Brief description of cause:
Unauthorized reproduction, performance, and distribution of copyrighted works.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  *Actual, statutory damages and injunction*

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                DOCKET NUMBER

DATE  4/22/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)   Neutone Recordings v. DreamWorks SKG

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

**05    10807    NG**

- I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- ✔ II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

- III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

- IV.    220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

- V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐    NO ✔

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

YES ☐    NO ✔

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐    NO ✔

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐    NO ✔

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐    NO ✔

A. If yes, in which division do **all** of the non-governmental parties reside?

Eastern Division ☐    Central Division ☐    Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐    Central Division ✔    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐    NO ✔

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    William H. Carroll

ADDRESS    48 Forest Street Wakefield, MA 01880

TELEPHONE NO.    781-621-8258

(CategoryForm.wpd - 2/15/05)

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM PA**
For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

R **PAu 2 – 829 – 551**

EFFECTIVE DATE OF REGISTRATION

Month **11** Day **13** Year **03**

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

"El Mambo"

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼ See instructions**

Musical composition

## 2

**a**

**NAME OF AUTHOR ▼** "Marcelo Castelli, pseudonym"
Marcelo Carlos Castelli Pintos

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ Uruguay

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☒ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Musical composition

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

Gustavo Bravetti

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ Uruguay

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Musical composition

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a** **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1999 ◀ Year

**b** **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month ▶    Day ▶    Year ▶
◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Neutone Recordings
36 Hemlock Shore Drive
Atkinson, New Hampshire 03811

APPLICATION RECEIVED
NOV 13 2003

ONE DEPOSIT RECEIVED
NOV 1 3 2003

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

By written contract

---

**MORE ON BACK ▶**   • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

*Certification confirmed as of 11/13/03 per
phone call of 3/3/04 with David Herlihy, Esq.

| EXAMINED BY | | FORM SR |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE<br>☐ Yes | | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a. ☐ This work was previously registered in unpublished form and now has been published for the first time.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION**
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

See Instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                                                                    Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼
David Herlihy, Esq.
14 Staniford Street
Newton, MA 02466

Area code and daytime telephone number ▶ 617-964-4006          Fax number ▶ 617-964-4016
Email▶ herlisong@comcast.net

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of **Neutone Recordings**
                           Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

David Herlihy                                                              Date▶ 11/20/2003 *

☞ Handwritten signature (X) ▼
X

| Certificate<br>will be<br>mailed in<br>window<br>envelope<br>to this<br>address | Name ▼<br>David Herlihy, Esq. |
|---|---|
| | Number/Street/Apt ▼<br>14 Staniford Street |
| | City/State/ZIP ▼<br>Newton, MA 02466 |

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
**MAIL TO**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of
July 1, 1999,
the filing fee
for Form SR
is $30.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—60,000
WEB REV: June 1999        ♲ PRINTED ON RECYCLED PAPER        ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/48

**EXHIBIT B**

Certificate of Registrati



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

**SRu 531 – 993**

SR              SRU

EFFECTIVE DATE OF REGISTRATION

Month **11**  Day **13**  Year **03**

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

"El Mambo"

**PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼**

---

**NAME OF AUTHOR ▼** "Marcelo Castelli, pseudonym"
Marcelo Carlos Castelli Pintos

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ Uruguay }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes  ☒ No
Pseudonymous?  ☒ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Sound Recording

**NAME OF AUTHOR ▼**
Gustavo Bravetti

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ Uruguay }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Sound Recording

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶ }

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire," check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
1999 ◀ Year
This information must be given in all cases.

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶        Day ▶        Year ▶        ◀ Nation

---

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Neutone Recordings
36 Hemlock Shore Drive
Atkinson, New Hampshire 03811

APPLICATION RECEIVED
NOV 13 2003
ONE DEPOSIT RECEIVED
NOV 13 2003
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

By written contract

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

\*Certification confirmed as of 11/13/03 per
phone call of 3/3/04 with David Herlihy, Esq.

| EXAMINED BY | 031 | FORM PA |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is "no," go to space 7.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

See instructions before completing this space.

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼          **Account Number** ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

David Herlihy, Esq.
14 Staniford Street
Newton, MA 02466

Area code and daytime telephone number ▶ (617 )964-4006          Fax number ▶ (617 ) 964-4016
Email ▶ herlisong@comcast.net

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
Check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   Neutone Recordings
Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
David Herlihy, Esq.          Date ▶ 11/20/2003 \*

Handwritten signature (X) ▼
X

| Certificate will be mailed in window envelope to this address: | **Name** ▼ David Herlihy, Esq. |
|---|---|
| | **Number/Street/Apt** ▼ 14 Staniford Street |
| | **City/State/ZIP** ▼ Newton, MA 02466 |

**9**

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*As of July 1, 1999, the filing fee for Form PA is $30.

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—800,000          ☺ PRINTED ON RECYCLED PAPER          ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/85
WEB REV: June 1999

# **EXHIBIT C**

# CONTRATO *DE INTERPRETE*

En Montevideo,a los 25 dias del mes de Noviembre de 1997 entre por una parte: Gustavo Bravetti , cuyos nombres artisticos son: Latina,It,s up to you,Hopeless y de nacionalidad Uruguaya,domiciliado en German Barbato 1543 ap 201 y en la ciudad de Montevideo con documento de identidad N° 3.754.311-8 en adelante denominado el "Interprete",y por otra parte Dee jay production(Dee jay music) representada por Oscar Jose Valdez,documento de identidarlN° 1.671.892-8,en su calidad de productor,con domicilio en Luis Alberto de Herrera 2092 ap 402.En la ciudad de Montevideo,denominado." Productor" CONVIENEN:

PRIMERO.- Durante la vigencia del presente contrato,el Interprete otorga al "Productor",dentro del pais y para todo el mundo , la plena y absoluta Exclusividad de sus Interpretaciones para fijaciones sonoras,comprometiendose a no grabarlas para si mismo o para terceros.
El "Interprete", conforme a ello podra participar en la fijacion efimera de programas destinados a una sola transmision por emisora de radio o television, y en peliculas cinematograficas en que desempeñe un papel, siempre que , en ambos casos, no haya sincronizacion de una fijacion del "Productor" , ni se utilice el videotape o la pelicula para publicacion de ejemplares destinados a la venta,alquiler o donacion,a cualquier público,en cualquier pais.Ademas el "Interprete" se compromete a hacer el maximo esfuerzo para evitar las grabaciones particulares o privadas de sus actuaciones en vivo.

SEGUNDO.- El "Interprete" interpretara las siguientes obras musicales :El vacilon, Spacy Funk,Just a feel it,y Mi Guajira que el"Productor"Fijará bajo cualquier proceso técnico actual o a inventarse;los fonogramas y videos resultantes se destinarán a la reproduccion, publicacion,y comercializacion por el "Productor",por todos los medios de utilizacion conocidos,inclusive mediante venta,alquiler. radiodifucion y ejecucion pública,en discos,cintas o cualquier otro soporte material apto para la reproduccion de sonidos o de imágenes y sonido.

TERCERO.- El "Productor" se obliga a publicar,en el pais,directamente,los fonogramas que contengan interpretaciones del "Interprete" manteniendolos bajo catálogo por un periodo no inferior a 90 dias,contados desde la fecha de su publicacion,exceptuando los casos de fuerza mayor o decision de la autoridad. Finalizando dicho periodo,el "Productor" podrá, a su exclusivo criterio,retirar los fonogramas del catalogo,definitiva o temporalmente.

CUARTO.- AL Publicar los fonogramas y videogramas que incorporan interpretaciones del "Interprete", el "Productor" se obliga a mencionar su nombre o seudónimo,tal como consta en el presente contrato,en las etiquetas,o envases de los discos,cassetes y distintas formas de Reproduccion.

QUINTO.-El "interprete" reconoce expresamente que corresponde al "Productor" la plena y exclusiva propiedad de las fijaciones, asi como los soportes materiales que las reproduzcan, tales como matrices,cintas,discos y,en general,cualquier soporte apto para su reproduccion.

SEXTO.- Como retribucion por la realizacion de sus interpretaciones,cesion de derechos y demás Obligaciones asumidas por el "Interprete", además de lo dispuesto en la cláusula novena,el "Productor" pagara al "Interprete" los siguientes derechos artisticos por los fonogramas, en el mismo acto de firmado de ambas partes la suma de U$s 800 (ochocientos dolares americanos)por su trabajo cedido y nombrado anteriormente.Hasta los 2000 cd y 500 cassetes.
Pasando estas cantidades antes nombradas,el pago sera a convenir previa autorizacion del "interprete" en común acuerdo con el "Productor" valido solo para la Republica Oriental del Uruguay.Para el exterior el Productor pagará al "Interprete"los siguentes derechos artisticos por los fonogramas 0.33 de dólar(u$s0,33) por cd vendido y 0.10 de dólar(us$0,10)por cassete vendido.
Se pagará a los 6 meses de haberse publicado en cada pais que se venda.

SEPTIMO: Los ejemplares entregados gratuitamente para fines de publicidad y divulgacion,siempre que sean identificados no causaran derechos artisticos a favor del "Interprete".

OCTAVO: El "Productor" tiene el derecho exclusivo de autorizar o prohibir en el pais, la reproduccion, la locacion,la inclusion en publicidad.
Las retribuciones economicas que se deriven en el pais de la comunicación al publico de fonogramas(ejecucion publica y radiodifucion)a favor del interprete serán recaudadas por la entidad que lo represente para este fin.

NOVENO. El presente contrato  entrará en vigencia desde la fecha de su firma y tendrá una duracion de 10 años.

DECIMO. Las comunicaciones y notificaciones previstas en este contrato serán cursadas por medio fehaciente, y tendrán validez siempre que sean enviadas a los domicilios consignados en el contrato,si la otra parte no hubiere comunicado por la misma otro domicilio.

DECIMO PRIMERO.Cualquier contraversia,divergencia,reclamacion o duda con motivo de la interpretacion,aplicación,ejecucion,cumplimiento,resolucion o rescisión de este contrato,asi como La compensacion de los daños y perjuicios resultantes,será resuelta mediante un Juicio Arbitral de Arbitros Arbitradores,los cuales serán designados de acuerdo a la ley pertinente por el juez competente de la ciudad de Montevideo.Las partes contratantes se someten tambien al fuero del juez de la ciudad de Montevideo para la ejecucion del laudo arbitral, cuando ella fuere necesaria.

DECIMO SEGUNDO. El "interprete" se compromete a no efectuar por el termino de un año, ninguna interpretacion para fijaciones sonoras dentro de el genero musical que implica los temas nombrados en este contrato con otro sello discografico sin el previo consentimiento escrito del "Productor"

DECIMO TERCERO. El "Interprete autoriza al "Productor a que pueda comercializar este contrato libremente con cualquier empresa fonográfica.

DECIMO CUARTO. Para la constancia se firman 3 ejemplares del mismo tenor(de tres paginas) en Lugar y fechas arriba indicados.

INTERPRETE                                     PRODUCTOR

## EXHIBIT D

HEADS OF AGREEMENT

Contract # Neu1112

Agreement dated this 1st day of July 2001 by and between Neutone Recordings, ("Company") 36 Hemlock Shore Drive, Atkinson, NH, 03811 -and- Mr. Marcelo Carlos Castelli Pintos, Bonpland 623, Montevideo 11300, Uruguay, a/k/a "Marcelo Castelli", -and- Mr. Gustavo Bravetti, Gorriti, Barbaro 1543, Apt#2, Montevideo 11300, Uruguay (individually and collectively hereinafter referred to as "Producer(s)"), whereby the parties agree as follows:

The provisions hereof may hereafter be amplified and incorporated in a more formal agreement satisfactory to both parties. Such agreement may contain additional provisions customary in contracts of this kind, and if executed, shall supersede this agreement. Otherwise, this agreement shall continue in full force and effect, and shall be binding on the parties.

1.    Recording Commitment/Options: Producer(s) shall deliver the Master Recording(s) entitled "El Mambo", including all mixes of such single(s).

2.    Rights:  Producer(s) hereby grants to company the exclusive rights and ownership throughout World (the "Territory") of the Master Recording(s) entitled "El Mambo" (the "Master Recording(s)") in all formats now known or hereinafter developed.  Company shall have the right to exploit such Master Recording(s) in any manner it deems appropriate, the right to use (and authorize the use of) Producer(s) and Artist's approved name and likeness and shall be the copyright owner of the Master Recording(s), free and clear of any and all claims.  Such Master Recording(s) shall be deemed a "work for hire" under the Copyright law.  Producer(s) hereby agree not to re-record any composition released by Company for a period of perpetuity after the commercial release of such composition.  Company shall have the rights to re-mix the Master Recording(s).  Company shall have the right to use/exploit the Master Recording(s) in any CD Compilation(s) released only by the Company, at no expense whatsoever, to be defined as "royalty-free", throughout the Term of this Contract.

3.    Delivery:  It is agreed that, Producer(s) shall deliver to Company a CD(s) embodying the following final mixes of the Master Recording(s): (i) Main Mix, and a CD(s) embodying solely the vocal track(s) or sample(s) contained in the Master Recording(s) and arranged as follows:  (i) with both the dry part(s), also known as the vocal track(s)/sample(s) without the effects (if any were used) that were contained in the Master Recording(s) in all forms (main vocal, background vocal, etc.) and (ii) the wet part(s) also known as the vocal track(s)/sample(s) containing any effects that were contained in the Master Recording(s) in all forms (main vocal, background vocal, etc.).

4.    Advances: Company shall pay Producer(s) no advance for the Master Recording(s) hereunder.

5.    Royalties: Company shall pay to Producer(s), after recoupment of the advance and any and all recording, mastering, remixing, the following royalties:

> (A)    Ten percent (10%) of the PPD (price per disc) for all audio devices containing the Master Recording(s) manufactured and sold in the United States (the "Royalty Rate").

1

(B)    The Royalty Rate for sales outside the United States shall be the same as the Royalty Rate above.

(C)    Producer(s) shall be credited with fifty percent (50%) of the total amounts received from all third party licensing.

(D)    For any digital download formats, Artist(s) shall be credited with ten percent (10%) of Company's net profit received from such uses.

(E)    As to records not consisting entirely of Master Recording(s) produced hereunder, Producer(s)/Artist's royalties otherwise payable hereunder shall be pro-rated on the basis of the number of such Masters, which are on such records compared to the total number of Recording on such records.

6.    Third Party Licensing:  Producer(s) shall be credited with fifty percent (50%) of any and all moneys received from any third party licensing or income.  These monies are recoupable against advances or any costs what so ever that might have been incurred in relation to this single.

7.    Publishing:  Company's publishing designee shall be deemed co-publisher and co-owner with Producer(s)/Artist(s) or Producer(s) publishing designee, and shall have the exclusive right of administration and control of the compositions embodied in the Master Recording(s) and any option recording(s) hereunder.  Company shall be the owner of, and Producer(s) hereby grants to Company, a fifty percent (50%) interest in the Copyright of all compositions embodied in the Recording released hereunder.  Company shall be entitled to fifty percent (50%) of all publishing revenues and the Producer(s) shall be entitled to the balance of fifty percent (50%) of such revenues.  Producer(s) shall complete all appropriate copyright registration and publishing forms as requested by Company in further compliance with this provision.  The elected Publishing entity, such as ASCAP or BMI, whichever elected, shall be responsible for distributing the revenues stated in this subparagraph.

8.    Mechanical Royalties:  Producer(s) hereby grants to Company a mechanical license for any controlled composition contained in the Master Recording(s) and any option recording.  Mechanical royalties shall be paid at the statutory rate at the time of recording of the Master Recording(s) (the "controlled composition rate").  In no instance shall Company be obliged to pay more than ten (10) times the controlled composition rate for any album hereunder, nor more than two (2) times the controlled composition rate for any single hereunder, regardless of the time of the compositions.

9.    Accounting:    We will account to Producer(s) twice a year, within 90 days of the June 30 and December 31.  We shall have the right to withhold reasonable reserves, such as twenty five percent (25%) for returns, which shall be liquidated over four (4) accounting periods.

10.    Representations & Warranties:
                      (a)  Producer(s) represents and warrants that Producer(s) owns the Master Recording(s), that Artist(s) has the right to make this Agreement and the written terms of this Agreement do not infringe upon any common law or statutory rights of any other person or entity.

2

(b) Company represents and warrants that the Company shall be solely responsible for the costs associated with the manufacture, distribution, promotion, sale and exploitation of the Master Recording(s)

11. Artist Inducement/Samples: Producer(s) shall be solely responsible for and shall make any and all payments becoming due to any person, firm or corporation, including, but not limited to, the Producer(s) hereunder and any owners of any "sampled" recordings or "sampled "compositions" (if any,. in connection with the rendition of Artist's services or the acquisition, exercise or exploitation of rights by Company pursuant to this agreement. Producer(s) shall cause each individual performing in connection with the Master Recording(s) hereunder, to execute an agreement in the form of inducement Letter annexed hereto and made a part hereof and which Producer(s) shall deliver same to Purchaser simultaneously with the mutual execution of this agreement.

12. Cure: If either party hereto alleges that the other has breached this agreement, the party accused shall have a period of thirty (30) days to cure such breach.

13. Entire Understanding: This writing contains the entire understanding between the parties and supercedes any previous agreements between the parties. During the term of this Agreement, it is understood and agreed that there shall be no change or modification of this Agreement unless reduced to writing and signed by all parties hereto. This agreement shall be governed by the laws of the State of New Hampshire, and subject to the exclusive jurisdiction of the courts located in the State of New Hampshire.

14. Definitions:

1.01 "Master Recording(s)" shall mean the sound recording of the performances by Producer(s) & Artist(s) of the composition tentatively entitled "El Mambo".

1.02 "Producer(s)" shall refer collectively to Mr. Marcelo Carlos Castelli Pintos, a/k/a "Marcelo Castelli" –and- Mr. Gustavo Bravetti.

1.03 "Territory" means the Universe.

1.04 "Controlled Composition(s)" means a composition written, owned or controlled, in whole or in part, by Producer(s), or any Person in which Producer(s) have a direct or indirect interest.

1.05 "Person" means any individual, corporation, partnership, association or other organized group of persons or legal successors or representatives of the foregoing.

1.06 "Term" shall refer collectively to the life of this contract, specified to perpetuity.

1.07 "Record(s)", "Recording(s)" means all forms of reproductions, now or hereafter known, manufactured or distributed primarily for home use, school use, juke box use or use in means of transportation, including, without limitation, Records of sound alone or sound synchronized with visual images, e.g. "sight and sound devices"

3

Each other expression used herein, unless herein expressly defined, shall have the meaning commonly understood in the recording industry.

This is a legal document which requires a total understanding by the principles to which are addressed to hereinabove. Neutone Recordings recommends the presence of a law official before the signing of this document.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written.

Accepted and Agreed to:

By: _____

Mr. Marcelo Carlos Castelli Pinto, a/k/a "Marcelo Castelli", individually, and and on behalf of my publishing designee Passport ID# 1.860.091??

_____

Mr. Gustavo Bravett individually, and and on behalf of my publishing designee
ID# 3.754.311.B

4

# EXHIBIT E

SEP-24-2004 ...

## MASTER USE LICENSE

This License Agreement ("License"), entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc., 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee"):

1. **Master:** "El Mambo"

   **Artist:** Bravetti & Castelli

   **Production:** The Tuxedo (motion picture)

   **Initial Theatrical Release:** September 27, 2002

   **Usage:** :34 Background Vocal (interrupted use)

   **Media:** All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (planes, ships, etc.), and a buyout of all home video formats (excluding non-linear interactive rights)

   **Territory:** Worldwide

   **Term:** Perpetuity

   **License Fee:** $1,500.00

2. Licensor hereby grants to Licensee the following non-exclusive, rights:

   (a)  To record the Master in timed-relation with the Production, to make copies of such recording, to dub and edit the Master, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Master, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

   (b)  To use Artist's name, and approved likeness and biography, solely in connection with the exploitation and promotion of the Production.

2

3.     Licensee may use the Master in all forms of clips, excerpts and/or in-context trailers in connection with advertising and promotion of the Production.

4.     Licensee shall have the right to embody the Production (including the Master) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5.     Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"

Performed by Bravetti & Castelli

Courtesy of Dimelo! Latin Dance Records

By Arrangement with Latin Music Entertainment, Inc.

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

6.     (a)     Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of all rights, including copyrights, in and to the Master, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Master as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b)     Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by Artist, and any other recording artists, performers, or producers in connection with the Master. Except as may be expressly provided herein, Licensee shall have no obligation to make payments of any kind whatsoever to any third party or parties (including, but not limited to, any and all persons performing or rendering any services in connection with the recording of the Master) with respect to Licensee's use of the Master hereunder.

3

7.    (a)    Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

(b)    Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

8.    No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter.  In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

9.    Licensor's rights and remedies in the event of a breach or alleged breach of the License by Licensee shall be limited to the right to recover damages in an action at law, and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Production or future soundtrack albums of the Production.

10.    Licensee may transfer or assign this License without Licensor's consent to any third party acquiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.    This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State.    All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.    All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

SEP-24-2004 11:05    LEGAL AFFAIRS    P.07/11

4

   13. This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and can not be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:         LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.  DREAMWORKS PRODUCTIONS L.L.C.

By:_____   By:_____
  an authorized signatory     an authorized signatory

Federal I.D. # 95-4479581

## SYNCHRONIZATION & PERFORMANCE LICENSE

This License Agreement ("License"), is entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc. d/b/a Ambiente Latino Music Publishing, 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee").

| | | |
|---|---|---|
| 1. | **Composition:** | "El Mambo" |
| | **Written by:** | Bravetti & Castelli |
| | **Production:** | The Tuxedo (motion picture) |
| | **Initial Theatrical Release:** | September 27, 2002 |
| | **Usage:** | :34 Background Vocal (interrupted use) |
| | **Media:** | All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (airlines, ships, etc.) and a buyout of all home video formats (excluding non-linear interactive rights) |
| | **Territory:** | Worldwide |
| | **Term:** | Perpetuity |
| | **License Fee:** | $1,500.00 |

2.     Licensor hereby grants to Licensee the following non-exclusive, rights: to record the Composition in timed-relation with the Production, to make copies of such recordings, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Composition, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

Licensee may use the Composition in all forms of in-context clips, excerpts and/or trailers in connection with advertising and promotion of the Production.

2

3.    The right to exhibit the Production in the United States, by means of television (including by means of "free television," "pay television, "subscription television," "CATV" and "closed circuit into homes television,") is expressly conditioned upon the networks, local stations or closed circuits having valid performance licenses from the American Society of Composers, Authors and Publishers ("ASCAP") or Broadcast Music, Inc. ("BMI)" as the case may be.

Clearance by performance rights societies in such portion of the Territory as is outside the United States will be in accordance with their customary practices and the payment of their customary fees.

4.    Licensee shall have the right to embody the Production (including the Composition) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5.    The terms of this License are limited to the Usage of the Composition described herein. This License does not authorize or permit Licensee to alter the fundamental character of the music and lyrics of the Composition or to use the title or subtitle of the Composition as the title of any production.

6.    (a)    Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of the copyright in and to the Composition, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Composition as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b)    Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by the Writer. Licensee shall have no obligation to make payments of any kind whatsoever to any writers, including the Writer, with respect to Licensee's use of the Composition hereunder.

3

7.     Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"
Written by Bravetti & Castelli

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

8.     Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

9.     No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter. In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

10.     Licensee may transfer or assign this License without Licensor's consent to any third party requiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.     This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State.   All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.     All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

4

13.    This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and cannot be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:                              LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.  DREAMWORKS PRODUCTIONS L.L.C.
d/b/a AMBIENTE LATINO MUSIC
PUBLISHING

By: _____        By: _____
    an authorized signatory             an authorized signatory

Federal I.D. #: 95-4479581

**EXHIBIT F**

# Neutone Recordings

279 Newbury Street. 1st Floor, Boston, MA 02116
Tel:  617.247.3666 / Fax:  617.247.2260
NeutoneRecords@aol.com

Date:  9/9/03

To:    Julie Butchko
From:  Roger Mouzakis

RE:    Use of "El Mambo" by Marcelo Castelli on "Tuxedo"

Dear Julie;

Hope all is well.  As requested, we have provided you with a
letter to indicate that we own the rights for the world
regarding "El Mambo" written by Marcelo Castelli and Gustavo
Bravetti. This was effective since July 2001.  When we spoke
to the producer(s), both indicated that they did not
authorize anyone outside of our company to negotiate any
deals concerning the track nor was any permission granted in
any case.  Any other company acting on their behalf has made
fraudulent indications that they have any rights to this
track.
We, the appropriate owners of the track did not permit the
inclusion of "El Mambo" on the "Tuxedo" movie by DreamWorks.
We hopefully are looking for a quick resolution to this
matter.  Please let us know the status of this ASAP!

Best Regards,

Roger Mouzakis
Neutone Recordings