UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| NEUTONE RECORDINGS,<br><br>            Plaintiff,<br><br>v.<br><br><br>DREAMWORKS SKG,<br>DREAMWORKS, INC.,<br>DREAMWORKS DISTRIBUTION, LLC,<br>DREAMWORKS PRODUCTIONS, LLC,<br>DREAMWORKS INTERNATIONAL<br>   DISTRIBUTION, LLC,<br>DREAMWORKS, LLC,<br>DREAMWORKS FILMS, LLC,<br>HOME BOX OFFICE, INC.,<br>LATIN MUSIC ENTERTAINMENT,<br>and DIMELO! RECORDS,<br><br>            Defendants. | CIVIL ACTION No. 05-CV-10807 NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
FOR FAILURE TO JOIN NECESSARY AND INDISPENSABLE PARTIES**

William S. Strong (BBO No. 483520)
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, Massachusetts 02114
(617) 227-7031

John A. Shope (BBO No. 562056)
Gabriel M. Helmer (BBO No. 652640)
Michael C. Martin (BBO No. 653876)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts  02210
(617) 832-1000

## **Introduction**

Although cast by plaintiff Neutone Recordings as a copyright infringement action, this case essentially asks the Court to determine which one of two allegedly conflicting licenses adequately conveyed rights to a musical work entitled "El Mambo."  Neutone claims to have a license and/or an assignment from the two alleged authors and performers, Gustavo Bravetti and Marcello Castelli.  A third party named Dee Jay Music Producciones, however, obtained a license to "El Mambo" from Bravetti four years *before* Neutone contracted with Bravetti and Castelli, and the named defendants, in turn, have operated under a sublicense defendant Latin Music Entertainment, Inc. ("LME") obtained from Dee Jay two years before the alleged Neutone license.  (In fact, LME released "El Mambo" on a CD in the United States with Bravetti's express approval well over a year before Bravetti and Castelli even entered into their contract with Neutone.)  However, despite the central roles and critical interests of both the authors and alleged copyright owners (Bravetti and Castelli) and the original music producer and licensee (Dee Jay), Neutone has failed to join them as parties in this action. These parties are necessary to the just adjudication of this action because any resolution of this action requires the Court to determine the validity and scope of their intellectual property rights and contractual obligations. The case should not be permitted to proceed without them.[1]

---

[1] While Neutone has failed to join several parties centrally involved in its claims, Neutone improperly named as defendants, DreamWorks, Inc. and DreamWorks Films, LLC, two companies that did not play a role in the alleged infringements, as well as "DreamWorks SKG," a trade name that is not itself a business entity.  In view of their improper joinder, Neutone has filed a notice of dismissal as to these three named defendants.

**Factual Background**

I.    **Bravetti and Castelli are allegedly the authors and co-owners of "El Mambo."**

The two United States copyrights in suit involve the musical composition and sound recording of a musical track entitled "El Mambo."[2]  Bravetti and Castelli, the alleged authors and co-owners of the "El Mambo" copyrights, are disc jockeys ("DJs") who, according to their promotional materials, compose and perform music by sampling pre-existing sounds and musical compositions and synthesizing musical "tracks" and remixing tracks composed by others into styles of contemporary electronic dance music known variously as "progressive," "latin," "house" or "tribal."[3]  Bravetti and Castelli are purportedly residents of Uruguay, but travel to various countries around the world, including the United States, to perform music in dance clubs. Shope Aff., Ex. A, Materials from Castelli website.  Castelli has, for instance, performed in Miami and Atlanta and has worked with record labels in New York (Star Sixty Nine Records, Jellybean Records) and Boston (Referense Records) to release three CDs.  Id.

In 1992, Bravetti began to compose his first tracks with Castelli in Uruguay.  Id.  By 1994, Bravetti had formed an ongoing business relationship with an Uruguayan music producer and record label, Dee Jay Productions / Dee Jay Music / D.J. Music Producciones / REMIX Records (collectively, "Dee Jay"), and its principal, Oscar José Valdez, who were also located in Montevideo, Uruguay.  Affidavit of Nissim J. Baly ("Baly Aff.") ¶ 6.  Between 1994 and 1996, Dee Jay released at least three CDs containing music by Bravetti.  Id. ¶ 7.  During this time, one

---

[2]   The copyright in the musical composition is separate from the copyright in the sound recording, the latter being a "derivative work" of the former.  Except where necessary, this memorandum will not distinguish between the two copyrights as they have traveled parallel paths among the parties to this action.

[3] Castelli describes his music as "pure tribal house at it's [sic] best."  Affidavit of John A. Shope ("Shope Aff."), Ex. A, Materials from Castelli website.  "Track," it should be added, is music industry terminology for a song or musical work appearing on a CD.

Sibyla Trabal, whom plaintiff's counsel describe as Bravetti's girlfriend, worked for Dee Jay and promoted Bravetti's music.  Baly Aff. ¶¶ 6-8.

## II.    Bravetti licenses rights to his music, including "El Mambo," to Dee Jay.

On November 25, 1997, Bravetti entered into a royalty-bearing license agreement with Dee Jay (the "Dee Jay License") that on a world-wide basis conveyed to Dee Jay "complete and absolute exclusivity to [Bravetti's] performances in phonorecords" as well as "whatever support materials [Bravetti] might produce, such as masters, tapes, records, and, in general, any material required for their reproduction."  Shope Aff., Ex. G, Dee Jay License.  Neutone's counsel admits that this agreement was made with the knowledge of Bravetti's partner, Castelli.  The Dee Jay License authorized Dee Jay "to commercialize this contract freely with any recording studio" and contemplated that Dee Jay's promotion efforts would ultimately lead to the publication of both "phonorecords and videograms" (better known as DVDs) incorporating Bravetti's music. Id.  Although Neutone concedes that the license included use in DVDs, it argues it did not include the rights necessary to make a movie that such a DVD would contain.

While Neutone's applications for the "El Mambo" copyrights represent that Bravetti and Castelli completed the composition and recording of "El Mambo"[4] in 1999, when DreamWorks informed Neutone of the 1997 Dee Jay License, Neutone promptly asserted that Bravetti and Castelli had actually written and recorded "El Mambo" in 1995, contrary to what it had represented to the Copyright Office, in order to bolster its argument that the Dee Jay license was inapplicable.  Affidavit of John Ehlers, Jr. ("Ehlers Aff."), Ex. E, Letter dated March 15, 2004.

_____

[4] "El Mambo" is Spanish for "The Mambo."  A "mambo" is a style of ballroom dance popular in Latin America that became fashionable in the 1940s, and was derived from the Cuban rumba. Shope Aff., Ex. D, Grove Music Online ed. L. Macy (accessed June 28, 2005).

III.    **Dee Jay, with Bravetti's authorization and approval, licenses "El Mambo" to LME and Dimelo! for commercialization in the United States.**

In 1998, Nissim J. Baly, principal of LME, met Dee Jay's representative Sibyla Trabal (also, apparently, Bravetti's girlfriend, according to counsel for Neutone) at MIDEM, a Latin American music convention in Miami.  Baly Aff. ¶ 6.  Baly and Trabal discussed licensing "El Mambo," along with other music promoted by Dee Jay for commercial distribution in the United States.  Id. ¶¶ 7-8.  Trabal provided Baly with a CD containing, among other tracks, Bravetti's and Castelli's "El Mambo."  Id. ¶ 8.  Baly subsequently contacted Trabal to license the rights to promote and commercialize the music contained on the Dee Jay CD in the United States.  Id. ¶ 9.

By letter dated June 29, 1999, Baly memorialized the terms of the proposed license and identified fourteen (14) tracks for license to LME that included "El Mambo."  Baly Aff. ¶ 10, Ex. B, Letter dated June 29, 1999.  The terms of this agreement were accepted by Dee Jay.  Id. ¶ 11.  Shortly thereafter, Dee Jay and LME entered into a license for the right to publish "El Mambo" and twenty-four other tracks (the "LME License").  Baly Aff. ¶ 11, Ex. C, LME License.

Later that year, LME and its music imprint, Dimelo! Records, released a CD entitled "Dance Remix En Tu Idioma Vol. 2" that contained, among 13 other tracks, "El Mambo."  Baly Aff. ¶ 12.  The sales were disappointing, with proceeds from the entire CD totalling less than $2,000.  Id. ¶ 14.  Between late 1999 and early 2000, Bravetti contacted Baly at LME by telephone to ask for copies of the Dance Remix CD.  Id. ¶ 13.  During the telephone discussion, Bravetti expressed gratitude for LME's decision to commercialize Bravetti's music, including "El Mambo," and asked whether LME would be interested in licensing additional musical tracks. Id.  Neutone has never explained why Bravetti's girlfriend offered a license for "El Mambo" to LME in 1998 or why Bravetti would have a year later expressly thanked LME for producing and distributing it if LME had done so without Bravetti's authority.  Id.

**IV.    Neutone licenses "El Mambo" from Bravetti and Castelli, but fails to commercialize it.**

Roger Mouzakis and Darlene Gray apparently formed Neutone as a general partnership and start-up record label in Atkinson, New Hampshire in 2001.  Complaint, ¶15; Shope Aff., <u>Ex. C</u>, Materials obtained from Neutone website.  Shortly after Neutone's formation, on July 1, 2001, Neutone allegedly entered into a written agreement with Bravetti and Castelli (the "Neutone License") purporting to grant Neutone "a fifty percent (50%) interest in the Copyright of all compositions embodied in the [Sound] Recording released [as 'El Mambo']."  Shope Aff., <u>Ex. H</u>, Neutone License ¶ 7; Complaint, ¶ 4.  The Neutone License also purports to grant Neutone "the exclusive rights and ownership throughout the World . . . of the Master Recording(s) entitled 'El Mambo.'"  Shope Aff., <u>Ex. H</u>, Neutone License ¶ 2; Complaint, ¶ 4. Bravetti and Castelli retained fifty percent (50%) ownership interest in "the Copyright of all compositions embodied in the [sound] Recording," but apparently granted all rights of "administration and control" to Neutone.  Shope Aff., <u>Ex. H</u>, Neutone License ¶ 7.  Bravetti and Castelli are thus, under the terms of the Neutone License, Neutone's partners in any commercial exploitation of "El Mambo" and would be entitled to receive a portion of the proceeds from the present suit.

Bravetti and Castelli apparently executed the Neutone license even though Bravetti had previously licensed rights to "El Mambo" to Dee Jay four years earlier and both co-owners were well aware that LME was distributing "El Mambo" on CDs pursuant to a license from Dee Jay arranged by Bravetti's girlfriend.  Though Bravetti had contacted LME before, he never provided notice of the Neutone license to Dee Jay or any of the defendants before the alleged infringement.

**V.      LME licenses "El Mambo" to DreamWorks for use as approximately 34 seconds of interrupted background music in the motion picture "The Tuxedo."**

On September 27, 2002, defendant DreamWorks Productions LLC entered into two non-exclusive licenses with LME for the use of approximately 34 seconds of "El Mambo" as interrupted background music in a brief scene in the motion picture "The Tuxedo," which starred Jackie Chan and Jennifer Love Hewitt.  Ehlers Aff., <u>Ex. A</u>, Master Use License ¶ 1; <u>Ex. B</u>, Synchronization & Performance License ¶ 1.  During the scene in question, Jackie Chan attempts to distract the villain's girlfriend by dancing with her in a nightclub while Jennifer Love Hewitt separately seeks to seduce the villain into revealing secrets about his terrorist plot.  The action in the scene cuts between Chan and the villain's girlfriend talking and dancing on the dance floor, during with time "El Mambo" is faintly audible, and Love Hewitt and the villain at a table, at which point other background music is used.  Shope Aff. ¶ 3.  In exchange for the right to use both the recording and the composition of "El Mambo," DreamWorks Productions paid LME the sum of $3,000, as a flat, upfront and total royalty fee, without right to further royalty payments.  Ehlers Aff., <u>Ex. A</u>, Master Use License ¶ 1; <u>Ex. B</u>, Synchronization & Performance License ¶ 1.

"The Tuxedo" was released in theaters across the United States on September 27, 2002.  Ehlers Aff. ¶ 12.  As part of the release of the movie, HBO began to broadcast HBO First Look program on cable television.  Immediately after its release, and again without complaint, Bravetti contacted LME to request copies of the movie.  Baly Aff. ¶ 17.  After "The Tuxedo" finished its worldwide theatrical run, on February 25, 2003, DreamWorks LLC released "The Tuxedo" for distribution on video tape and DVD.  Ehlers Aff. ¶ 13.

**VI.     Neutone makes escalating demands for a "retroactive" licensing fee.**

Approximately one year after "The Tuxedo's" theatrical release and over six months after the film became available on DVD, between September and December 2003, Neutone began

contacting DreamWorks LLC to demand that DreamWorks immediately pay Neutone $80,000 plus other unspecified "royalty participation" for the use of "El Mambo," or face an injunction prohibiting the distribution of the movie and a damages claim of $300,000 or more.  Ehlers Aff. ¶ 14, Ex. C, Letter dated November 21, 2003; Ex. D, Letter dated December 15, 2003. DreamWorks informed Neutone that "El Mambo" had been properly licensed from LME, which had obtained a non-exclusive license to use "El Mambo" from Dee Jay, Bravetti's exclusive agent and promoter.  Ehlers Aff. ¶ 15.  Neutone disputed that the LME License even existed and that the Dee Jay and LME Licenses were valid conveyances (id.) and subsequently produced an affidavit by Bravetti purportedly warranting, in conclusory fashion, that he and Castelli had been "free to enter into and perform" the Neutone License, but which failed to account for the previous license of "El Mambo" to Dee Jay in 1997.  Shope Aff., Ex. I, Bravetti affidavit.

In November 2003, DreamWorks licensed the rights to televise "The Tuxedo" to HBO, which began broadcasting the film to its cable television subscribers.  The same month, for the first time Neutone submitted applications to the United States Copyright Office for copyright applications for the musical composition as well as sound recording of "El Mambo," claiming on each application that "El Mambo" had been created in 1999 but leaving blank the date of first publication.  Shope Aff., Exs. E & F.  The Copyright Office issued registrations (Nos. PAu-2-829-551 and SRu-531-993).  Shope Aff., Exs. E & F.

In 2004, after DreamWorks had repeatedly informed Neutone that "El Mambo" had been properly licensed pursuant to the agreement between Bravetti, Dee Jay and Valdez dated November 25, 1997 (i.e., the Dee Jay License), Neutone asserted that the Dee Jay License, expressly conveying rights to all of Bravetti's works, did not apply to "El Mambo."  Neutone thereafter increased its demands to various sums many times greater than the original licensing

fee DreamWorks Productions paid LME for the right to use "El Mambo." Ehlers Aff. ¶ 16, <u>Ex. E</u>, Letter dated March 15, 2004, <u>Ex. F</u>, Letter dated October 27, 2004, <u>Ex. G</u>, Letter dated November 29, 2004.

To date, apparently no significant profits have been generated from "El Mambo." According to Neutone, Bravetti and Castelli never published the work notwithstanding the fact that it was allegedly completed ten years ago in 1995. Despite obtaining the license asserted in this action over four years ago, Neutone has never published or commercialized "El Mambo."[5] LME/Dimelo! distributed only 1520 copies of the CD containing "El Mambo" (and 13 other recordings by various artists) and sales of the CD were so disappointing (returns of less than $2,000) that the CD was discontinued entirely. Baly Aff. ¶ 14.

On April 22, 2005, Neutone filed the present complaint, asserting forty-six (46) causes of action against eight DreamWorks entities, LME, Dimelo! and HBO, all of which are non-exclusive sub-licensees of Bravetti's co-ownership in "El Mambo." Neutone now seeks to enforce a claim of exclusive copyright ownership eight years after Bravetti first licensed Dee Jay to promote "El Mambo," six years after LME/Dimelo! first released "El Mambo" on CD, three years after DreamWorks incorporated excerpts of "El Mambo" as background music into a motion picture, and two years after HBO broadcast the movie and its promotional feature "HBO First Look: Tailor Made For Jackie Chan" on cable television.

## Discussion

Neutone seeks this Court's enforcement of its alleged rights in "El Mambo" against numerous defendants, but has failed to join the parties most deeply involved in the underlying events. Those parties are Bravetti and Castelli, the authors and co-owners of the "El Mambo"

---

[5] "El Mambo" is not among the music identified in Neutone's catalog of released CDs. Shope Aff., <u>Ex. C</u>, Materials obtained from Neutone website.

copyrights, as well as Dee Jay, the original licensee of the music at issue.  Their involvement is

crucial to resolve the central issues in this case, including:

- Was "El Mambo" created by Bravetti and Castelli in 1995, as Neutone now asserts, or  at some other date to be determined?  Neutone originally represented to the copyright office that it was created in 1999, but LME obtained a copy of it in 1998.  As a result of this shifting view of the facts, the date of actual creation is not known, although Neutone contends that creation before 1997 is critical to its assertion that Bravetti's license to Dee Jay does not apply to "El Mambo."

- Did Bravetti intend to license "El Mambo" to Dee Jay under the Dee Jay License, and thereby impliedly authorize the subsequent chain of licenses to defendants, as his comments to LME's Baly both before and after the release of "The Tuxedo" indicate?

- If the Dee Jay license did not include "El Mambo," did Bravetti nevertheless explicitly or implicitly authorize his girlfriend, Sibyla Trabal, who worked for Dee Jay, to license "El Mambo" to LME?

- Or did Dee Jay and Bravetti's girlfriend misrepresent to LME the music Bravetti had authorized them to commercialize?

- Did Bravetti's license to Dee Jay for use in "videograms" intend to include a license for use in motion pictures?

- Did Bravetti and Castelli misrepresent the rights they could convey to Neutone after Bravetti licensed his music to Dee Jay?

- Why did Neutone wait for years, until "The Tuxedo" finished its theatrical release, was available on video tape and DVD and was broadcast on cable TV, to assert its claim, even though co-owner Bravetti had requested a copy of the film from LME in 2002?

Because Neutone has failed to join the parties who not only can answer these questions, but

whose liabilities, rights and contractual obligations are necessarily determined by a court's

resolution of these issues, there is good reason to dismiss the complaint.

The Copyright Act provides that, in cases like the one at bar, the Court may "require the

joinder . . . of any person having or claiming an interest in the copyright."  17 U.S.C. § 501(b).

The intent of § 501(b) was "to have all claims presented before one tribunal."  Kamakazi Music

Corp. v. Robbins Music Corporation, 534 F. Supp. 69, 75 (S.D.N.Y. 1982).  In cases such as this

one, where the validity and ownership of the copyrights (as opposed to copying) is the central issue, joinder of the copyright owners and current licensees is considered mandatory. "Absent special circumstances joinder should be required in cases challenging the validity of the copyright upon which rest the rights of the person to be joined." Night Hawk Limited v. Briarpatch Limited, Civil Act. No. 03-CV-1382, 2003 WL 23018833, at *3 (S.D.N.Y. December 23, 2003) (dismissing case for failure to join licensee with rights to the copyright in suit). "Validity" in this sense does not refer solely to the validity of the underlying copyright; it also encompasses the validity of a claim to hold one or more rights in the copyright. See id.; Plunket v. Doyle, Civil Act. No. 99-CV-11006, 2001 WL 175252, at *6 (S.D.N.Y. 2001) (requiring joinder of all parties with an interest in the copyright in lawsuit, like this one, in which the court was requited to determine copyright ownership).

Under the Federal Rules, defendants typically must make two threshold showings to demonstrate that this action should be dismissed for failure to join a party needed for just adjudication: first, that the plaintiff has failed to join parties "necessary" to the proper resolution of this case, and, second, that those parties are "indispensable" and thus, that the case should not proceed without them. Delgado v. Plazas Las Americas, Inc., 139 F.3d 1, 4 n.2 (1st Cir. 1998) ("[A] party cannot be indispensable under Fed. R. Civ. P. 19(b) unless she is first deemed necessary under Fed. R. Civ. P. 19(a)."). Both of these conditions are met here.

A party is "necessary" when his rights and interests are so intertwined with the resolution of the lawsuit that the matter cannot be resolved without prejudicing either the interests of parties to the lawsuit or the interests of the "necessary" party. See Fed. R. Civ. P. 19(a). Federal Rule 19(a) states that a person is "necessary" party if:

1. in the person's absence complete relief cannot be accorded among those already parties, or

    2.  the person possesses an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

        i.  as a practical matter impair or impede the person's ability to protect that interest <u>or</u>

        ii.  leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a) (emphasis added).

Rule 19(b) provides that if a "necessary" party cannot be made a party to the case, the Court must then determine whether that party is "indispensable" and the case may not proceed without him. "[T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b). In making this determination courts must consider four issues:

    1.  "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;"

    2.  "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;"

    3.  "whether a judgment rendered in the person's absence will be adequate;" and

    4.  "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Fed. R. Civ. P. 19(b).

In the copyright context, courts have made clear that the owners and licensees of the copyright at issue are both "necessary" and "indispensable," where, as here, the validity of the copyrights and contractual obligations of those parties shall be decided in resolving the case. <u>See</u> <u>Night Hawk</u>, 2003 WL 23018833, at *3 (case dismissed for failure to join licensee whose rights were material to establish infringement by defendants); <u>Plunket</u>, 2001 WL 175252 at *6 (plaintiff asserting exclusive rights to literary works required to join owners of copyrights to

maintain suit); Ediciones Quiroga v. Fall River Music, Inc., 35 U.S.P.Q.2d 1814, 1823 (S.D.N.Y. 1995) (case dismissed for failure to join composers of copyrighted songs).

**VII.   Bravetti and Castelli, the Authors and Owners of the "El Mambo" Copyrights, Are Parties Needed For Just Adjudication**

**A.    Bravetti and Castelli are both "necessary" parties.**

As co-owners of the copyright to the musical composition entitled "El Mambo," Bravetti and Castelli are both necessary parties to this action.  The validity and scope of their copyrights and contracts are the central issues in the case.  Should the Court find merit in the defendants' contentions that Bravetti licensed "El Mambo" to Dee Jay, either in the Dee Jay License or through his girlfriend Trabal, the Court will "as a practical matter impair or impede" Bravetti's and Castelli's ability to assert those copyrights or enforce the Neutone License.  On the other hand, if Neutone is successful, the Court necessarily must find that Bravetti did not in fact license the right to use "El Mambo" to Dee Jay or that that license has been rescinded, thereby affecting Bravetti's and Dee Jay's rights and responsibilities under the Dee Jay License and opening Bravetti and Dee Jay up to claims by LME of fraud or estoppel.  Resolution of this case for either the plaintiff or the defendants will thus extinguish certain rights or contractual obligations for Bravetti and Castelli and presents the named defendants with the risk of multiple lawsuits and inconsistent obligations.  See Ediciones Quiroga, 35 U.S.P.Q.2d at 1823 (dismissing case where composers were not joined and "if not made parties, might be unable to protect their copyright interest in the song."); see also Plunket, 2001 WL 175252, at *6 (plaintiff asserting exclusive rights to literary works required to join owners of copyrights to maintain suit to avoid risk of multiple lawsuits and inconsistent verdicts).  Cf. Photofile v. Graphicomp Systems, Civil

Act. No. 92-CV-8414, 1993 WL 375769 (N.D.Ill. Sept. 22, 1993) (joinder of all authors of the copyrighted work eliminated danger of multiple, inconsistent verdicts).[6]

In this regard, failure to join Bravetti and Castelli will mean that the defendants will bear the risk of additional lawsuits by Bravetti and Castelli, who remain 50% co-owners of one of the copyright at issue.  See Wales Indus., Inc. v. Hasbro Bradley, Inc., 612 F. Supp. 510, 517 (S.D.N.Y. 1985) (Japanese copyright owner was indispensable party because of risk that Japanese copyright owner could still sue defendant, even if defendant prevailed in present lawsuit).  Even if the second lawsuit was merely focused on such issues as collateral estoppel and res judicata, the fact that the defendants would have to litigate a second action arising from the same factual predicate as the present case weighs in favor of joinder.  See JTG of Nashville, Inc. v. Rhythm Band, Inc., 693 F. Supp. 623, 627 (M.D. Tenn. 1988) (intellectual property owner was indispensable because the possibility of a second suit by owner placed defendant "in the unenviable and expensive position of defending two different suits arising out of essentially the same set of facts").

The situation is even more clearly prejudicial to LME.  The Neutone License clearly does not assign to Neutone Bravetti's and Castelli's causes of action for any pre-existing copyright infringements, such as the creation and sale of LME's CD "Dance Remix En Tu Idioma Vol. 2," that predate the Neutone License.  Since those causes of action have not been assigned, Bravetti

---

[6] As is explained in further detail below, because it is eminently clear that this case focuses on the rights and obligations of Bravetti and Castelli, the fact that Neutone seeks to proceed without joining them suggests that Neutone, Bravetti and Castelli seek to obtain a tactical advantage in going forward without the joinder of the true parties in interest.  The Court's analysis of whether Bravetti and Castelli are necessary parties and may be prejudiced by the outcome of this case is not altered by the fact that Bravetti and Castelli may see some advantage in remaining unnamed in this lawsuit.  See Acton Company, Inc. v. Bachman Foods, Inc., 668 F.2d 76, 80 (1st Cir. 1982) ("[G]iven the relationship between [the plaintiff and the necessary party] and the fact that they have substantially identical interests in the lawsuit, we are unable to view [the necessary party] as a party haled into federal court against its will.").

and Castelli could later sue LME for alleged infringements that, although otherwise identical to the Neutone's current claims, occurred before the Neutone license.  See Seastrunk v. Darwell Integrated Technology, Inc., Civil Act. No 05-CV-0531-G, 2005 WL 1667811 (N.D. Tex. July 15, 2005) ("a copyright owner can assign its copyright but, if the accrued causes of action for past infringement are not expressly included in the assignment, the assignee will not be able to prosecute them") (quoting ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 981 (2d Cir. 1991).

### B.     Bravetti and Castelli are also "indispensable" parties.

Bravetti and Castelli are not only "necessary" but also are "indispensable" parties, without whom this action should not proceed.  First, as discussed above, a resolution in the defendants' favor will necessarily prejudice Bravetti's and Castelli's ability to enforce either the "El Mambo" copyrights or the Neutone license.  See Fed. R. Civ. P. 19(b) (directing the court to consider "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties").

Secondly, it is entirely appropriate to require Bravetti and Castelli to appear in this action when they are already acting in concert with Neutone.  Indeed, the present circumstances suggest that Neutone, with the knowing assistance of Bravetti and Castelli, have arranged this lawsuit as a trap for the defendants, a pretense to obtain additional, unearned revenue from an otherwise unprofitable and unpopular track by relatively unknown musicians.  Bravetti and Castelli knowingly entered into an agreement with Neutone for rights to "El Mambo," even though they were both aware that "El Mambo" was previously licensed by Dee Jay to LME.  Despite allegedly entering into a license with Bravetti and Castelli over four years ago, Neutone's only apparent efforts to commercialize "El Mambo" have been its escalating demands for exorbitant sums of money from the defendants.  Bravetti and Castelli are now apparently assisting Neutone

in this lawsuit in the effort to obtain a second payoff for "El Mambo," including by submitting an affidavit allegedly supporting Neutone's claims. Shope Aff., Ex. I. Full resolution of this matter thus requires the joinder of Bravetti and Castelli, not merely Neutone acting as their straw man.

Furthermore, Bravetti and Castelli should not be allowed to avoid the reciprocal discovery obligations imposed upon parties to the lawsuit by pretending to remain at arm's length from the case, while providing affirmative assistance to Neutone. Neutone apparently seeks to force the defendants to assume the considerable burden of seeking third-party discovery from Bravetti and Castelli in Uruguay, while Neutone, which already has Bravetti's and Castelli's active cooperation, would face no equivalent burden. This burden should not be underestimated. Indeed, the procedural hurdles to obtaining discovery from Bravetti and Castelli in Uruguay are so significant that they may effectively prevent the defendants from obtaining even minimal discovery in this case.

The only method available to the defendants to obtain discovery from Uruguayan citizens would be to obtain the Uruguayan government's execution of a letter rogatory issued by this Court pursuant to the Inter-American Convention on Letters Rogatory. This procedure is well known to suffer from significant flaws. The United States Department of State reports that it usually takes between six months to one year for a foreign government to execute a properly issued request from this Court under the Convention's procedure. Shope Aff. ¶ 10, Ex. J, U.S. Department of State Circular. The Department of State also reports "practical problems with implementation of the Convention," ranging from foreign governments claiming they never received requests to foreign governments lacking the "bureaucratic machinery to efficiently execute requests." Id. The United States Department of Justice also reports that this system provides "no obligation that the foreign country honor the request," "there are no mutually

agreed upon procedures which ensure the obtaining of evidence in admissible form," and "the

multiple stages of the process . . . generate serious time delays."  Shope Aff. ¶ 11, <u>Ex. K</u>, U.S.

Dept. of Justice, Criminal Tax Manual § 41.05[5] (2001).

   Moreover, even if the defendants succeed in circumnavigating the extensive procedure

and bureaucracy required to execute a letter rogatory in Uruguay, Uruguayan civil procedure

effectively prevents the defendants from obtaining the discovery to which they would be entitled

were Bravetti and Castelli joined in this action.  As in most civil law jurisdictions, Uruguayan

law requires that all depositions be taken by a Uruguayan judge -- the defendants' counsel would

not be allowed to depose either Bravetti or Castelli.  <u>See</u> Shope Aff. ¶ 12.  In such a proceeding,

the Uruguayan judge would ask only the questions expressly set forth in the letter rogatory,

thereby providing Neutone, Bravetti and Castelli six to twelve months to prepare their responses

to scripted questions.  The defendants' ability to cross-examine the witness would be largely

curtailed, though they may be entitled to ask limited questions posed solely to clarify the

witness' answer to a question expressly identified in the letter rogatory.  <u>See</u> Shope Aff. ¶ 13**.**   In

addition, no procedures would be in place to ensure that the testimony is recorded and obtained

in a form admissible in this lawsuit.  Accordingly, the discovery available to the defendants from

Uruguay would, even under the best circumstances, cause significant delay and expense, would

difficult to obtain and may ultimately never result in any admissible evidence.  In view of

comparable procedural hurdles, at least one federal court has declared that discovery is

effectively out of reach in countries, like Uruguay, that have ratified the Inter-American

Convention.  <u>See</u> <u>Taylor v. Costa Cruises Inc.</u>, Civil Act. No. 90-2630 KC, 1992 WL 196793

(S.D.N.Y. 1992) (finding that plaintiff could not, as a practical matter, compel discovery from

residents of Honduras and Costa Rica, two countries ratifying the Inter-American Convention).

The delay and practical problems associated with obtaining discovery in Uruguay would be especially prejudicial in light of the highly relevant nature of Bravetti and Castelli's testimony. Bravetti is a primary witness needed to establish the validity of the defendants' chain of licenses, including the Dee Jay, LME and DreamWorks Licenses. To the extent there is any ambiguity in the 1997 Dee Jay License (which Neutone's counsel concedes was "poorly drafted," Ehlers Aff., Ex. E, Letter dated March 15, 2004), Bravetti must explain why he thanked LME for publishing "El Mambo" in a CD and commercializing it for use in "The Tuxedo," both of which he now apparently contends were unlicensed. Likewise, the unexplained sequence of Bravetti's licenses to DeeJay and then to Neutone, the unexplained circumstances under which DeeJay obtained Bravetti and Castelli's recording of "El Mambo" through one of its employees, Bravetti's girlfriend, are all critical subjects that fairness should require to be subject to cross-examination in the American deposition process and evaluated for credibility in person at trial. For these reasons, "in equity and good conscience," this case should not proceed without the joinder of Bravetti and Castelli. See Fed. R. Civ. P. 19(b); Ediciones Quiroga, 35 U.S.P.Q.2d at 1823.

## VIII. Dee Jay, The Original Licensee of "El Mambo," Is Also A Party Needed for Just Adjudication.

Dee Jay is also a party needed for just adjudication in this action. Neutone's claims in this case in effect ask the Court to determine (1) that the Dee Jay license, for which Dee Jay apparently paid consideration, did not cover "El Mambo," (2) that its employee Sibyla Trabal acted without authority in promoting and licensing "El Mambo" to LME, and (3) that as a result, its license of "El Mambo" to LME was invalid and possibly fraudulent. In consequence, resolution of this case in favor of Neutone will necessarily "as a practical matter impair or

impede" Dee Jay's ability to protect its interests in "El Mambo." Fed. R. Civ. P. 19(a)(2)(i). The Court should not embark on such determinations without Dee Jay in the case.

Pursuant to § 501(b) of the Copyright Act, courts typically require joinder in cases, where, as here, a plaintiff asserts a copyright against a defendant that has been licensed by parties not joined in the suit. "If a defendant in an infringement action raises as a defense a license from a third party, thereby raising as an issue the validity of the copyright held by such third party, it has been held that such third party is an indispensable party in an action against the licensee." Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright § 12-03, at 12-69 (2005); Night Hawk Limited, 2003 WL 23018833, at *3 (dismissing case for failure to join licensee with rights to the copyright in suit); Ediciones Quiroga, 35 U.S.P.Q.2d at 1823 (judgment required determination of rights possessed by authors of underlying work). Dee Jay possesses contractual rights to the "El Mambo" copyrights that must be extinguished if Neutone is to succeed, and Neutone should therefore not be permitted to obtain the Court's interpretation of the Dee Jay License without the parties to that contract being joined.

Furthermore, although a judgment of this court against the defendants would in practice impede Dee Jay's exercise of rights vis-à-vis LME, it would not even have the advantage of closure. Unless Dee Jay is a party to the action, a judgment holding that Dee Jay had no right to license "El Mambo" to LME would not preclude Dee Jay from subsequently suing to establish its right in the song or the royalties therefrom. Against such claims, LME would in effect be defenseless under the principles of collateral estoppel. These circumstances thus present a significant risk of multiple lawsuits and/or inconsistent obligations for LME/Dimelo! and this case should therefore not proceed without Dee Jay.

**IX.    As the Court does not have personal jurisdiction over all of the current named defendants, several of whom are both necessary and indispensable parties, this case must be dismissed.**

Should the Court grant, even in part, the defendants' motion to dismiss for lack of personal jurisdiction, it again becomes necessary to consider dismissal of this matter for failure to join parties needed for just adjudication of this action.  Specifically, the parties that are not subject to the Court's personal jurisdiction include the defendants that licensed "El Mambo" for use in the allegedly infringing works (LME, Dimelo!, and DreamWorks Productions LLC), as well as the defendants that produced "The Tuxedo" and the HBO First Look program (DreamWorks LLC, DreamWorks Productions LLC).  Much like Dee Jay, these particular parties are central to the alleged infringing activity in this action because they are licensees whose contractual rights to use "El Mambo" necessarily must be determined to resolve this case. For the same reasons discussed above in relation to Dee Jay, dismissal of such defendants for lack of personal jurisdiction further justifies dismissal of this lawsuit for failure to join necessary and indispensable parties, since the plaintiff could refile in California, where jurisdiction may be had.

## Conclusion

For the reasons stated above, the complaint must be dismissed for failure to join necessary and indispensable parties.

| | |
|---|---|
| LATIN MUSIC ENTERTAINMENT, and DIMELO! RECORDS, | DREAMWORKS DISTRIBUTION, LLC, DREAMWORKS PRODUCTIONS, LLC, DREAMWORKS INTERNATIONAL DISTRIBUTION, LLC, DREAMWORKS LLC, and HOME BOX OFFICE, INC., |
| | By their attorneys, |
| By their attorney, | |

| | |
|---|---|
| **/s/ William S. Strong** | **/s/ Gabriel M. Helmer** |
| William S. Strong (BBO No. 483520) | John A. Shope (BBO No. 562056) |
| KOTIN, CRABTREE & STRONG, LLP | Gabriel M. Helmer (BBO No. 652640) |
| One Bowdoin Square | Michael C. Martin (BBO No. 653876) |
| Boston, Massachusetts 02114 | FOLEY HOAG LLP |
| (617) 227-7031 | 155 Seaport Blvd. |
| | Boston, Massachusetts  02210 |
| | (617) 832-1000 |

| **CERTIFICATE OF COUNSEL** | **CERTIFICATE OF SERVICE** |
|---|---|
| Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that on July 13, 2005, John A. Shope, Esquire, counsel for the DreamWorks defendants and HBO, attempted to confer with William Carroll, Esquire, counsel for Neutone Recordings, in a good faith attempt to resolve the issues raised in this motion and was unable to resolve this matter. | I hereby certify that on the 27th day of July, 2005, I caused a true copy of the above document to be served upon William Carroll, Esquire, counsel for Neutone Recordings, by facsimile and mail. |
| **/s/ Gabriel M. Helmer** | **/s/ Gabriel M. Helmer** |
| Gabriel M. Helmer | Gabriel M. Helmer |

B3052820.5