UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| NEUTONE RECORDINGS,<br><br>          Plaintiff,<br><br>v.<br><br>DREAMWORKS SKG,<br>DREAMWORKS, INC.,<br>DREAMWORKS DISTRIBUTION, LLC,<br>DREAMWORKS PRODUCTIONS, LLC,<br>DREAMWORKS INTERNATIONAL<br>   DISTRIBUTION, LLC,<br>DREAMWORKS, LLC,<br>DREAMWORKS FILMS, LLC,<br>HOME BOX OFFICE, INC.,<br>LATIN MUSIC ENTERTAINMENT,<br>and DIMELO! RECORDS,<br><br>          Defendants. | CIVIL ACTION No. 05-CV-10807 NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO TRANSFER VENUE**

William S. Strong (BBO No. 483520)
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, Massachusetts 02114
(617) 227-7031

John A. Shope (BBO #562056)
Gabriel M. Helmer (BBO #652640)
Michael C. Martin (BBO #653876)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA  02210
(617) 832-1000

**Introduction**

Defendants DreamWorks Distribution LLC, DreamWorks Productions, LLC, DreamWorks International Distribution, LLC, DreamWorks, LLC, (collectively, the "DreamWorks" defendants), Home Box Office, Inc. ("HBO"), Latin Music Entertainment, Inc. ("LME") and Dimelo! Records respectfully submit this memorandum in support of their motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Central District of California.  Transfer of this case is especially appropriate because all but one of the defendants is based in that district, the alleged infringing activity occurred primarily in that district and, in contrast to Massachusetts, all of the named defendants and all of the defendants necessary to the just adjudication of this action are subject to jurisdiction in that district.

**Factual Background**

**I. THE PARTIES**

Plaintiff Neutone Recordings is a general partnership and start-up record label formed in 2001 in Atkinson, New Hampshire, and currently located in Grafton, Massachusetts.  Complaint ¶ 4; Affidavit of John A. Shope ("Shope Aff."), Ex. H, Neutone License at p. 1.  Neutone has filed the present suit seeking a declaration that it is the owner of two copyrights in a musical track entitled "El Mambo" and seeking damages for alleged infringement of those copyrights when "El Mambo" was distributed in whole on a compilation CD entitled "Dance Remix En Tu Idioma Vol. 2," and integrated as approximately thirty-four (34) seconds of interrupted background music in a brief scene in the motion picture entitled "The Tuxedo," as well as a promotional feature for "The Tuxedo" entitled "HBO First Look: Tailor Made For Jackie Chan."  The seven remaining[1] named defendants may be logically divided into three groups: (1) the

---

[1] Defendants DreamWorks SKG (which is not a legal entity), DreamWorks, Inc., and DreamWorks Films LLC have been voluntarily dismissed.

companies alleged to be responsible for the Dance Remix CD (LME and Dimelo!), (2) the companies alleged to be responsible for the licensing, production, and distribution of "The Tuxedo" (the DreamWorks defendants), and (3) the companies alleged to be responsible for the production and distribution of the HBO First Look program (HBO and the DreamWorks defendants).

Three DreamWorks defendants (DreamWorks LLC, DreamWorks Productions, LLC, and DreamWorks Distribution, LLC) did have some involvement in the alleged infringing activities. DreamWorks, LLC is a limited liability company organized under Delaware law, and has its principal offices in Glendale, California. It does business under the trade name "DreamWorks SKG" and is engaged in producing motion pictures and licensing prints of its films for exhibition throughout the United States and abroad, including "The Tuxedo." Affidavit of John Ehlers, Jr. ("Ehlers Aff.") ¶¶ 3-4.

DreamWorks Productions, LLC, also a limited liability company organized under Delaware law with its principal place of business in Glendale, California, was responsible for licensing "El Mambo" and producing "The Tuxedo," including integrating "El Mambo" into that motion picture. Id. ¶ 5. DreamWorks Distribution, LLC, a limited liability company organized under Delaware law with its principal place of business in Glendale, California, distributed copies of "The Tuxedo" for exhibition throughout the United States. Id. ¶ 6. DreamWorks International Distribution, LLC, a limited liability company organized under Delaware law with principal offices in Glendale, California, has not engaged in any activity relating to "The Tuxedo" in Massachusetts or elsewhere. Id. ¶ 7.

Defendant Home Box Office, Inc. ("HBO") is a Delaware corporation with principal offices in New York City, Complaint, ¶ 12.  HBO broadcast "The Tuxedo" and the HBO First Look program.  Id. ¶ 28.

Defendant LME is a California corporation with principal offices in North Hollywood, California.  Dimelo! Records is a music imprint of LME and is not a separate legal entity.  Affidavit of Nissim Baly ("Baly Aff.") ¶ 3.  LME and Dimelo! produce, promote and distribute music by Latin artists in the United States.  Music under management with LME and Dimelo! have appeared in popular motion pictures and television programs as "A Man Apart," "Resurrection Blvd.," and "The O.C."  LME and Dimelo! produced and distributed the Dance Remix CD containing "El Mambo" and licensed "El Mambo" to DreamWorks Productions LLC for use in "The Tuxedo."  Baly Aff. ¶¶ 12-16.

## II.  EVENTS UNDERLYING NEUTONE'S CLAIMS

The events underlying Neutone's claims have been described in the defendants' memorandum in support of their motion to dismiss for failure to join necessary and indispensable parties and, in the interest of brevity, will not be repeated here at length.  The following is a summary of the key facts relevant to venue.

### A.  Events in Uruguay.

Gustavo Bravetti and Marcelo Castelli, residents of Montevideo, Uruguay, are alleged to be the authors and co-owners of the work at issue here, entitled "El Mambo."  By at least as early as 1994, Bravetti had formed an ongoing business relationship with an Uruguayan music producer, Oscar José Valdez, and his record labels and production companies, variously referred to as Dee Jay Productions / Dee Jay Music / D.J. Music Producciones / REMIX Records which

are collectively referred to herein as "Dee Jay."  Dee Jay was also located in Montevideo, Uruguay.  Baly Aff. ¶ 6.[2]

Although the year in which "El Mambo" was created is unclear, there seems to be no dispute that it was created and first recorded by Bravetti (and allegedly by Castelli as well) in Uruguay.  The recording came into the possession of Dee Jay in Uruguay, and Dee Jay included that recording in a CD referred to as an "Advance Release CD" (*i.e.*, a CD created for the purpose of promoting the new tracks contained on it).  Baly Aff. ¶ 8.

In 1997, Bravetti entered into a contract with Dee Jay governing the rights in certain music.  Affidavit of John A. Shope ("Shope Aff.") Ex. G.  The parties disagree as to whether that contract (the "Dee Jay License") governs "El Mambo," but there appears to be no dispute that the contract was entered into in Uruguay and is governed by Uruguayan law.

A Uruguayan citizen or resident named Sibyla Trabal worked for Dee Jay and was, apparently, Bravetti's girlfriend at the time that the Advance Release CD was created and promoted to LME.  She may have been the person responsible for inclusion of "El Mambo" on Dee Jay's Advance Release CD.  (If she was, then her apparent authority to bind Bravetti would presumably be determined under Uruguayan law.)  Her only known contacts with the United States consist of a business trip to Miami in early 1998 (to attend the MIDEM conference) and communications (fax and e-mail) sent to LME in California.  Baly Aff. ¶¶ 6-11.

**B.     Events in Florida.**

In early 1998, Nissim J. Baly, principal of defendant LME, met Dee Jay representative Sibyla Trabal at MIDEM, a Latin American music convention in Miami.  Baly and Trabal

---

[2] The defendants are uncertain at this point whether Dee Jay was a Uruguay corporation or the sole proprietorship of Valdez.  The term "Dee Jay" as used herein is therefore used to apply interchangeably to the company and Valdez.

discussed licensing Dee Jay music for publication in the United States.  In the effort to promote Dee Jay musicians, Trabal provided LME with the Advance Release CD containing, among other tracks, Bravetti's and Castelli's "El Mambo."  Baly Aff. ¶¶ 6-8.

### C. Events in California.

LME and Dee Jay exchanged correspondence between Uruguay and California that culminated in a license of "El Mambo."  By letter dated June 29, 1999, Baly memorialized the terms of the proposed license and identified fourteen (14) tracks for license to LME, including "El Mambo."  Baly Aff. ¶ 10, Ex. B, Letter dated June 29, 1999.  Dee Jay accepted these terms by faxing their acknowledgement to Baly in California.  Id. ¶ 11.  Dee Jay and LME thereafter entered into a written non-exclusive license for the right to publish twenty-five (25) tracks, specifically including "El Mambo" (the "LME License").  Bally Aff. ¶ 12, Ex. C, LME License. The LME License provided that Dee Jay and Valdez would "indemnify and hold [LME] harmless against any adverse claim" asserted by anyone as a result of LME's use of the music licensed by Dee Jay.  Id., Ex. C, LME License ¶¶ 11, 21.  The LME License also provided that its "validity, construction and effect shall be governed and construed under the laws of the State of California applicable to contracts executed therein and wholly to be performed therein, with jurisdiction and venue in the County of Los Angeles."  Id., Ex. C, LME License ¶ 25(a).

Later that year, LME and Dimelo! released a CD entitled "Dance Remix En Tu Idioma Vol. 2" that contained, along with other tracks, Bravetti's and Castelli's "El Mambo."  Baly Aff. ¶ 12.  LME's CD containing "El Mambo" was produced in California and sold in California and no copies were sold to Massachusetts customers.  Id. ¶¶ 14-15.  Between late 1999 and early 2000, Bravetti contacted Baly at LME in Los Angeles by telephone to ask for copies of the Remix CD.  During the telephone discussion, Bravetti expressed gratitude for LME's decision to

- 5 -

commercialize Bravetti's music, including "El Mambo," and asked whether LME would be interested in licensing additional musical tracks.  Id. ¶ 13.

The agreements by which DreamWorks Productions, LLC obtained the rights to use "El Mambo" from LME (the "DreamWorks Licenses") were negotiated between the California offices of those two parties, and are likewise governed by California law.  Ehlers Aff., Exs. A & B ¶ 11.  The movie was produced in California (Ehlers Aff. ¶ 10), does not concern subjects of any special relevance to Massachusetts, and cannot be said to be targeted in any way to a Massachusetts audience.  Distribution, sales and licensing of the movie – including the licensing of the movie – were all handled from the California offices of one or another of the defendants.  Ehlers Aff. ¶¶ 3-10.  After the release of "The Tuxedo," Bravetti called LME in California and requested a copy, making no complaint about its use of "El Mambo."  Baly Aff. ¶ 17.

   **D.**  **Events in New Hampshire.**

On July 1, 2001, Neutone apparently entered into a written agreement with Bravetti and Castelli (the "Neutone License").  The Neutone License provides that it "shall be governed by the laws of the State of New Hampshire," where Neutone was then located.  Shope Aff., Ex. H, Neutone License ¶ 13.

   **E.**  **Events in Massachusetts.**

None of the events underlying Neutone's claims occurred in Massachusetts.  Admittedly, "The Tuxedo" was shown in theaters and sold in stores in Massachusetts, but only in the context of general nationwide distribution.  The only connection between this case and Massachusetts is the random and fortuitous fact that the principals of Neutone happened to move to Massachusetts at some time after entering into the license agreement with Bravetti and Castelli.  Neutone has not, from its new base in Massachusetts, licensed or otherwise promoted or exploited "El

- 6 -

Mambo" in any way.  See Shope Aff. Ex. C (list of available Neutone tracks not including "El Mambo").

## Discussion

This case should proceed, if at all, before the United States District Court for the Central District of California because it involves no connection whatsoever with the District of Massachusetts, except that the plaintiff, a two-person general partnership, moved to Massachusetts at some point after it entered into the license allegedly conveying an interest to the copyrights in suit.  This case presents issues of alleged copyright ownership infringement that arose primarily in California.  Resolution of the copyright infringement claims is dependent upon the Court's interpretation of several licenses executed in and expressly governed by the laws of California, New Hampshire, and Uruguay.  Neutone now names six California defendants and one New York defendant, none of which are alleged to maintain offices, property, employees or other business presence in Massachusetts.  Four of these defendants have moved, contemporaneously with the present motion, to dismiss the complaint for lack of personal jurisdiction.  The defendants have also moved to dismiss the complaint for failure to join the copyright owners (Bravetti and Castelli) and the original licensee (Dee Jay), all of them Uruguayan parties and two with relevant contacts with California, whose rights and contractual obligations must be extinguished or determined in order to resolve this case.  Under these circumstances, this case is ripe for transfer to the forum in which the vast majority of defendants and witnesses reside, where all defendants necessary to adjudicate this dispute may be joined, and where this action may be most efficiently and effectively resolved, the Central District of California.

Unlike Massachusetts, California has jurisdiction over all the parties named in the Complaint.  "[F]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). Traditionally, to demonstrate good cause for a transfer pursuant to §1404(a), the movant must establish, first, that the requested forum is a venue in which the case "might have been brought" and, second, that interests of equity, efficiency and convenience justify such a transfer. See In re Josephson, 218 F.2d 174, 184 (1st Cir. 1954) ("[I]t seems to us that the obvious purpose of the phrase 'where it might have been brought', as used in § 1404(a), is to authorize the transfer of a civil action to the district court of any judicial district having jurisdiction over the subject matter and proper venue, provided the transfer is found to be for the convenience of parties and witnesses and in the interest of justice."); Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 2 (D. Mass. 1987) ("[T]ransfer is appropriate if it will promote the convenience of the parties and witnesses and serve the interest of justice.").

In this case, the complaint "might have been brought" in the Central District of California, as required by §1404(a). That court of course has subject matter jurisdiction over Neutone's federal copyright claims pursuant to 28 U.S.C. §1338; and personal jurisdiction over the seven defendants, as well as venue, would be proper in the Central District of California because all defendants are either based in California or are subject to personal jurisdiction there in connection with the claims in this case. Baly Aff. ¶ 2-3; Ehlers Aff. ¶¶ 3-12. See 28 U.S.C. §1391(b).

Furthermore, the essential defendant missing from this action at present – namely Dee Jay, whom defendants argue in their concurrent motion to dismiss must be joined if this case is to proceed – is subject to jurisdiction in California, having consented to California jurisdiction in the Dee Jay license. Dee Jay is not subject to jurisdiction elsewhere in the United States, to defendants' best knowledge, except perhaps Florida.

- 8 -

In consequence, the critical question in this case is whether a transfer to the Central District of California is warranted for the convenience of the parties and witnesses, and in the interests of justice. Courts consider several factors to make this determination, including:

1. the convenience of the parties and the witnesses;
2. the weight accorded the plaintiff's choice of forum;
3. the location of relevant documents;
4. the nexus between the operative facts and the respective forums;
5. trial efficiency;
6. the forum's familiarity with governing law; and
7. the interests of justice.

See F.A.I. Elecs. Corp. v. Chambers, 944 F. Supp. 77, 81 (D. Mass. 1996); Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991). In this case, consideration of these factors all but mandate transfer to the Central District of California.

**I.      Massachusetts Is Highly Inconvenient For Almost All of the Parties and Witnesses.**

In this District, "the convenience to the expected witnesses is probably the most important factor." Workgroup Tech. Corp. v. MGM Grand Hotel, 246 F. Supp. 2d 102, 116 (D. Mass. 2003); see also Home Owners Funding Corp. of Am. v. Century Bank, 695 F. Supp. 1343, 1347 (D. Mass. 1988) (stating that, of all the factors, convenience of witnesses, has been termed "the most important [one]"); Princess House, 136 F.R.D. at 20 n.1 (observing that courts in this district typically place "great weight on the convenience of [] non-party witnesses."). "The important question concerning witness convenience is whether either forum is so inconvenient as to inhibit access to necessary witnesses." Trans Nat'l Travel, Inc. v. Sun Pac. Int'l, Inc., 10 F. Supp. 2d 79, 81 (D. Mass. 1998). In weighing the burden on witnesses, the Court "must consider . . . the nature and quality" of witnesses' testimony. Princess House, 136 F.R.D. at 18. Factors

to be considered also include not only the financial costs imposed on the non-party witnesses associated with appearing for deposition and trial, but also whether the Court can compel the non-party witnesses to testify at all.  Princess House, 136 F.R.D. at 19-20.

In the present case, not only are the defendants themselves all found in California, but the defendants have also identified multiple individuals who are expected to provide relevant testimony, almost all of whom also reside in California.  The California witnesses are expected to provide highly material testimony related to the central disputes in this case, including testimony related to the alleged infringing activity (the bulk of which is alleged to have occurred in California) and whether one of the co-owners of the "El Mambo" copyrights properly conveyed his interests to "El Mambo" to Dee Jay in 1997 and authorized the conveyance of similar rights to LME and Dimelo! in 2002.

All of the individuals involved in the selection and licensing of "El Mambo" for use in "The Tuxedo" are located in California.  For example, Billy Gottlieb of Playback Music, in Los Angeles, who was never an employee of any DreamWorks company, was hired as the Music Supervisor to select the music for "The Tuxedo."   Shope Aff. ¶ 5.  Gottlieb was responsible for the selection of "El Mambo" for use in "The Tuxedo."  The defendants expect that Gottlieb's testimony will support their contention that "El Mambo" was used as generic background dance music and that any number of other titles available at equally modest expense would have served the purpose for which "El Mambo" was used.  Shope Aff. ¶ 5.

Gottlieb contacted another likely witness, Baly, the principal of defendant LME, to obtain LME's terms for licensing "El Mambo."  Baly Aff. ¶ 16.  The defendants expect Baly to testify that Bravetti repeatedly contacted him in California and expressed gratitude for LME's commercialization of "El Mambo."  Baly Aff. ¶¶ 13, 17.  Both Baly and Gottlieb are expected to

- 10 -

testify as to their good faith belief that the defendants' use of "El Mambo" was made pursuant to properly authorized licenses, Shope Aff. ¶ 6, thus defeating the complaint's allegations of willful infringement.

Similarly, the defendants expect to call as witnesses Lenny Wohl and Julie Butchko, both employees of DreamWorks Productions, LLC and residents of California, who negotiated the terms of the licenses between DreamWorks Productions and LME.  The defendants expect Wohl and Butchko to testify to their good faith belief that they were purchasing properly licensed rights to "El Mambo" as well as to its limited fair market value ($3,000). Shope Aff. ¶ 7.

In addition to these individuals, the production and distribution of the film took place in California and involved numerous DreamWorks personnel there.  The defendants expect those persons to testify to the good faith belief that the defendants were distributing the film in the absence of infringement.  Ehlers Aff. ¶¶ 4-6, 10.  Shope Aff. ¶ 8.

Traveling from California to Massachusetts for a lengthy trial would impose upon these witnesses great costs and disruption to their business and personal lives.  Moreover, because the distance between this Court and the bulk of the witnesses exceeds 100 miles, the Court could not compel any non-party witnesses, such as Gottlieb, to testify at trial.  See Fed. R. Civ. P. 45(c)(3)(A)(ii) (stating that a court may not require "a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business").  In light of these facts, maintaining this action in Massachusetts is "unacceptable when the action can be transferred to a district where attendance can be compelled and live testimony can be presented to the jury."  See Brant Point Corp., 671 F. Supp. at 8.

**II.     Neutone's Choice of Forum Is Not Entitled To Great Weight Where The Only Connection To Massachusetts Is That Neutone Moved To This Forum.**

While the plaintiff's choice of forum is entitled to consideration, it is not dispositive in cases like this one, where almost all of the parties, witnesses, discovery and events are located or occurred in California, not Massachusetts.  See West Marine Prod., Inc. v. Dolphinite, Inc., Civil Act. No. 04-CV-10251, 2005 WL 1000259, at *10 (D. Mass. March 23, 2005) (transferring case despite plaintiff's choice of forum largely due to convenience of witnesses); Princess House, 136 F.R.D. at 18 (observing that the "weight accorded to plaintiff's choice depends upon the circumstances of the case").  Indeed, Neutone's choice of forum "is not absolute and will not defeat a well-founded motion to transfer." Sitrick v. DreamWorks LLC, 2003 WL 21147898, at *3 (N.D. Ill. 2003) (quoting Wen Products, Inc. v. Master Leather, Inc., 899 F. Supp. 384, 386 (N.D. Ill. 1995)).  "[T]he fact that the situs of material events is outside of [the plaintiff's home forum] mitigates the weight given to the plaintiff's choice of his resident forum." Id.  While Neutone has predictably filed suit where its principals currently reside, that choice should be given little weight because Massachusetts has no nexus with the underlying events.  See Brant Point Corp., 671 F. Supp. at 5 (transferring case from Massachusetts to North Carolina because "[w]here [as here] the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight").

Indeed, and unlike the typical case, the allegations in the complaint contain no direct factual connection whatsoever to Massachusetts.  "Intellectual property suits typically focus on the alleged infringing activities of the defendant, and the employees and documents that evidence these activities." Sitrick, 2003 WL 21147898, at *3 (transferring lawsuit brought against DreamWorks LLC and other movie studios in plaintiff's home forum in Illinois to Central District of California).  Neutone obtained the allegedly exclusive rights to "El Mambo" that

Neutone now seeks to enforce, by executing a license with Bravetti and Castelli in New Hampshire, not Massachusetts, and, by express provision, the license is governed by New Hampshire law.  Shope Aff., Ex. H, Neutone License ¶ 13.  No contract was made in Massachusetts or will be interpreted pursuant to Massachusetts law.  LME and Dimelo! licensed, produced and distributed "El Mambo" in California, and the DreamWorks entities licensed "El Mambo" and produced and distributed "The Tuxedo" in California.  HBO broadcast "The Tuxedo" and the HBO First Look program to its cable subscribers from a nationwide satellite network.  When faced with an analogous case involving nationwide distribution, a federal district court in Connecticut stated:

> Although the plaintiff has chosen to litigate this action in Connecticut, the alleged infringement . . . claims are nationwide.  As a result, the only exclusive connection that this cause of action has with Connecticut is that the plaintiff resides here.  Therefore, the plaintiff's choice of forum is not controlling.

See Alden Corp. v. Eazypower Corp., 294 F. Supp. 2d 233, 237 (D. Conn. 2003) (emphasis added).

## III.   There is a Strong Nexus Between This Dispute And California.

While there is no exclusive connection between Neutone's claims and Massachusetts, the reverse is true as to California.  As detailed above, all of the allegedly infringing activity -- and all the defendants' efforts leading up to the purported infringement -- occurred in California.  LME and Dimelo! licensed "El Mambo" and produced and distributed the Dance Remix CD in California.  Baly Aff. ¶¶ 2-3, 9-12, 14-15.  Similarly, the DreamWorks defendants licensed "El Mambo" and produced and distributed "The Tuxedo" in California.  The authors of "El Mambo" as well as Dee Jay, the original licensee, were in contact with LME and Dimelo! in California.  Baly Aff. ¶¶ 9-11, 13, 17.  Of the contracts in dispute, two were executed in California, and choose California as providing the governing law and venue.  This case does not involve a single

Massachusetts statute, contract or cause of action. California is thus the forum with the greatest nexus both to the events underlying this case as well as the parties, witnesses and discovery involved. See Sitrick, 2003 WL 21147898, at *4 (finding that the inconvenience to multiple out-of-state defendants outweighed burden to individual plaintiff of litigating in defendants' home forum); F.A.I. Elecs. Corp. v. Chambers, 944 F. Supp. 77, 81 (D. Mass. 1996) (transferring case from Massachusetts to Texas because "[t]he majority of the defense witnesses would be in Texas," and "the bulk of the testimony and evidence" will come from defendant's employees in Texas).

### IV.   Most Relevant Documents Will Be Found In California.

As with the witnesses, most of the relevant documents are likely to be located in California, where all defendants but HBO are headquartered and where the allegedly infringing film and CD were made and distributed. Although modern photocopying admittedly makes the location of relevant documents a less significant factor, any weight given to this factor favors transfer to California, the location of the vast majority of the defendants and most relevant documents. See F.A.I. Elecs. Corp., 944 F. Supp. at 81 (transferring case to Texas partly because "bulk" of records located in Texas).

### V.   The District Court In California Is Likely To Be More Familiar with Governing California Law.

While most of the counts in Neutone's complaint appear to be federal claims of copyright infringement,[3] a federal court in California is equally familiar with federal law as a federal court in Massachusetts. However, this case is unusual in that determining the ownership and

---

[3] Neutone's 46-count complaint asserts numerous counts that expressly assert neither federal nor state law, but seek a declaration of ownership that, as argued in the defendants' motion to dismiss for failure to name the general partners of Neutone as plaintiffs, in fact arise under state law.

infringement of the "El Mambo" copyrights requires an interpretation of California contracts (the LME and DreamWorks Licenses) and representations made by Bravetti and Dee Jay in California. Furthermore, in the present circumstances, the defendants may be adjudged infringers only if various prior parties misrepresented the intellectual property rights they could convey. The defendants are thus poised to assert state-law claims of misrepresentation, estoppel, indemnity, or breach of contract against the prior licensors of each defendant's rights to "El Mambo," on which they have relied. As all of the events underlying these claims originate in California, California law will govern the resolution of the defendants' counterclaims and cross-claims. A federal court sitting in California is likely to be more familiar with the laws of that state. See Brant Point Corp., 671 F. Supp. at 8 (transferring to North Carolina in part because Massachusetts court "unfamiliar with North Carolina law"). This factor strongly favors transfer to California.

## VI.     Interests of Efficiency and Justice Favor Transferring This Case to California.

In the consideration of trial efficiency and the interests of justice, "[t]ransfer is appropriate in order to facilitate discovery when: (i) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many of the witnesses and documents are located." Wellquest Int'l, Inc. v. Genesis Intermedia.com, Inc., et al., Civil Act. No. 00 CIV. 6558, 2001 WL 1246592, at *6 (S.D.N.Y. Oct. 18, 2001) (holding that trial efficiency favored transfer from New York to California because "the parties are at a relatively early stage of the litigation, and the majority of the documents and witnesses are located in California"). "The administration of justice is served more efficiently when the action is litigated in the forum that is 'closer to the action.'" Sitrick, 2003 WL 21147898, at *4 (quoting Paul v. Land's End, Inc., 742 F. Supp. 512, 514 (N.D. Ill. 1990)). That is precisely the situation here. This case is at the earliest of stages; indeed, the complaint was filed on April 22, 2005 and

no answer has been filed in the case. In addition, the facts, witnesses, and documents are predominately located in California, as explained above.

Most critically in this case, and in contrast to Massachusetts, California is the venue where a court may exercise jurisdiction over all the defendants needed for a just adjudication, including the party who licensed "El Mambo" for commercialization in the United States (Dee Jay), the party that licensed the rights for use in a film (LME), and the parties that made the film in good faith and reliance upon that license (DreamWorks LLC, DreamWorks Productions, LLC). The inability of this Court to exercise jurisdiction over all the named defendants (let alone those indispensable defendants that the plaintiff has failed to join) more than justifies transfer to a court which may exercise jurisdiction over all essential parties. See DuBois v. Moore, 821 F. Supp. 792, 793 (D. Mass. 1993) (transferring case to New Hampshire in part because Massachusetts court did not have personal jurisdiction over one of defendants and transfer would promote "policy of resolving this entire dispute in one action"); West Marine Prod., Inc., 2005 WL 1000259 at *10 (stating that "this court's inability to exercise personal jurisdiction over one of the two defendants against whom this case is currently proceeding also favors a transfer of venue").

In sum, transferring this action to California now, when the case is still in its infancy, would undoubtedly improve the efficiency of discovery, result in a speedier trial, and ultimately promote the interests of justice. See JMTR Enter., L.L.C. v. Duchin, 42 F. Supp. 2d 87, 99-100 (D. Mass. 1999) ("In considering a motion to transfer venue, paramount among the factors considered in the interests of justice analysis is trial efficiency.").

| | |
|---|---|
| LATIN MUSIC ENTERTAINMENT, and DIMELO! RECORDS, | DREAMWORKS SKG, DREAMWORKS, INC., DREAMWORKS DISTRIBUTION, LLC, DREAMWORKS PRODUCTIONS, LLC, DREAMWORKS INTERNATIONAL DISTRIBUTION, LLC, DREAMWORKS, LLC, DREAMWORKS FILMS, LLC and HOME BOX OFFICE, INC., |
| By their attorneys, | By their attorneys, |
| /s/ William S. Strong | /s/ Gabriel M. Helmer |
| William S. Strong (BBO No. 483520)<br>KOTIN, CRABTREE & STRONG, LLP<br>One Bowdoin Square<br>Boston, Massachusetts 02114<br>(617) 227-7031 | John A. Shope (BBO #562056)<br>Gabriel M. Helmer (BBO #652640)<br>Michael C. Martin (BBO #653876)<br>FOLEY HOAG LLP<br>155 Seaport Blvd.<br>Boston, MA  02210<br>(617) 832-1000 |

| **CERTIFICATION OF COUNSEL** | **CERTIFICATE OF SERVICE** |
|---|---|
| Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that on July 13, 2005, John A. Shope, Esquire, counsel for the DreamWorks defendants and HBO, attempted to confer with William Carroll, Esquire, counsel for Neutone Recordings, in a good faith attempt to resolve the issues raised in this motion and was unable to resolve this matter. | I hereby certify that on the 27th day of July, 2005, I caused a true copy of the above document to be served upon William Carroll,, Esquire, counsel for Neutone Recordings, by facsimile and mail. |
| /s/ Gabriel M. Helmer<br>Gabriel M. Helmer | /s/ Gabriel M. Helmer<br>Gabriel M. Helmer |

B3067865.10