UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

NEUTONE RECORDINGS,

          Plaintiff,

v.

DREAMWORKS SKG,
DREAMWORKS, INC.,
DREAMWORKS DISTRIBUTION, LLC,
DREAMWORKS PRODUCTIONS, LLC,
DREAMWORKS INTERNATIONAL
  DISTRIBUTION, LLC,
DREAMWORKS, LLC,
DREAMWORKS FILMS, LLC,
HOME BOX OFFICE, INC.,
LATIN MUSIC ENTERTAINMENT,
and DIMELO! RECORDS,

          Defendants.

CIVIL ACTION No. 05-CV-10807 NG

## AFFIDAVIT OF JOHN EHLERS, JR.

I, John Ehlers, Jr., hereby depose and state:

1.     I make this Declaration on the basis of my personal knowledge.

2.     I am Vice President of Taxation at DreamWorks LLC.

### The DreamWorks Defendants

3.     The DreamWorks defendants named above that were actually involved in the creation and distribution of the motion picture "The Tuxedo" or the promotional feature "HBO First Look: Tailor Made For Jackie Chan," both of which are alleged to infringe the plaintiff's rights in the musical work "El Mambo," are DreamWorks LLC, DreamWorks Productions LLC, and DreamWorks Distribution LLC.

4.    DreamWorks LLC, which does business as DreamWorks SKG, is a limited liability company organized under Delaware law, and has its principal place of business in Glendale, California. DreamWorks LLC does not maintain offices, real property, employees or agents or any other significant business presence in Massachusetts. DreamWorks LLC is engaged in producing motion pictures and television programming throughout the United States and abroad, including "The Tuxedo." DreamWorks LLC also distributes, leases, and sells content on video tape and DVD, including "The Tuxedo" and "HBO First Look: Tailor Made For Jackie Chan."

5.    DreamWorks Productions LLC is a limited liability company organized under Delaware law with its principal place of business in Glendale, California. DreamWorks Productions LLC purchased a license to use "El Mambo" from defendant Latin Music Entertainment, Inc. in Los Angeles and produced the movie "The Tuxedo." DreamWorks Productions LLC did not produce "The Tuxedo" in Massachusetts, is not currently filming any motion pictures in Massachusetts, and has no plans to produce any future films in Massachusetts. DreamWorks Productions LLC also does not maintain offices, real property, employees or agents in Massachusetts.

6.    DreamWorks Distribution LLC, is a Delaware limited liability company with its principal place of business in Glendale, California. Although DreamWorks Distribution LLC delivered copies of "The Tuxedo" to theaters in Massachusetts (and elsewhere throughout the United States), it does not maintain offices, real property, employees or agents in Massachusetts.

7.    DreamWorks International Distribution LLC, is a limited liability company organized under Delaware law with its principal place of business in Glendale, California.

DreamWorks International Distribution LLC has not engaged in any activity relating to "The Tuxedo" in Massachusetts or elsewhere.

8.      Two of the other named defendants, DreamWorks Inc. and DreamWorks Films LLC, also did not play any role in the licensing, recording, selection or use of "El Mambo" or the production, licensing, broadcast or distribution of "El Mambo," "The Tuxedo" or the HBO First Look program, except that DreamWorks Inc. conveyed Canadian distribution rights to DreamWorks Distribution LLC.  Both are organized under the law of Delaware and have their principal places of business in Glendale, California.  DreamWorks Inc. is a subsidiary of DreamWorks Animation SKG Inc., an independent public company that develops and produces animated films that do not include "The Tuxedo," which is a live-action film.  DreamWorks Films LLC is the company that hired screenwriters and obtained the literary rights for "The Tuxedo" (activity not alleged to be infringing), but did not do so in Massachusetts.  Neither company maintains offices, real property, employees, or agents in Massachusetts.

9.      DreamWorks SKG is not a corporate or business entity, but rather, a trade name under which DreamWorks LLC does business.

10.     "The Tuxedo" was produced in California.

### The Licensing of "El Mambo" and Production of "The Tuxedo"

11.     By agreements dated September 27, 2002, DreamWorks Productions LLC entered into two non-exclusive licenses with Latin Music Entertainment, Inc. ("LME") for the use of approximately 34 seconds of a musical track allegedly composed and performed by Gustavo Bravetti and Marcello Castelli entitled "El Mambo" as interrupted background music in one scene of the motion picture entitled "The Tuxedo."  See Ex. A, Master Use License; Ex. B, Synchronization & Performance License.

### The Release and Distribution of "The Tuxedo"

12.    "The Tuxedo" was released in theaters across the United States on September 27, 2002.

13.    On February 25, 2003, DreamWorks LLC released "The Tuxedo" and the HBO First Look program on DVD.

### Neutone's Demands For Licensing Fees For Use of "El Mambo"

14.    Approximately one year after "The Tuxedo's " theatrical release and over six months after the film became available on DVD, between September and December 2003, Neutone began contacting "DreamWorks" and demanded that it immediately pay Neutone $80,000 plus other unspecified "royalty participation" for the use of "El Mambo," or face an injunction prohibiting the distribution of "The Tuxedo" and damages of $300,000 or more. See Ex. C, Letter from David A. Herlihy to Julie Butchko dated November 21, 2003; Ex. D, Letter from David A. Herlihy to Lenny Wohl dated December 15, 2003.

15.    In response, counsel for the DreamWorks defendants informed Neutone that "El Mambo" had been properly licensed from LME pursuant to licenses entered into on September 27, 2002.

16.    In 2004, Neutone made multiple escalating demands for a retroactive licensing fee many times greater than the license fee LME originally paid for the right to use "El Mambo." See Ex. E, Letter from David A. Herlihy to Lenny Wohl dated March 15, 2004; Ex. F, Letter from William H. Carroll to Andrew Chang dated October 27, 2004; Ex. G, Letter from William H. Carroll to Andrew Chang dated November 29, 2004.

Signed under the penalty of perjury this 27th day of July, 2005.

_____
John Ehlers, Jr.

EXHIBIT A

## MASTER USE LICENSE

This License Agreement ("License"), entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc., 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee"):

1. **Master:** "El Mambo"

   **Artist:** Bravetti & Castelli

   **Production:** The Tuxedo (motion picture)

   **Initial Theatrical Release:** September 27, 2002

   **Usage:** :34 Background Vocal (interrupted use)

   **Media:** All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (planes, ships, etc.), and a buyout of all home video formats (excluding non-linear interactive rights)

   **Territory:** Worldwide

   **Term:** Perpetuity

   **License Fee:** $1,500.00

2. Licensor hereby grants to Licensee the following non-exclusive, rights:

   (a) To record the Master in timed-relation with the Production, to make copies of such recording, to dub and edit the Master, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Master, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

   (b) To use Artist's name, and approved likeness and biography, solely in connection with the exploitation and promotion of the Production.

3.    Licensee may use the Master in all forms of clips, excerpts and/or in-context trailers in connection with advertising and promotion of the Production.

4.    Licensee shall have the right to embody the Production (including the Master) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5.    Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"
Performed by Bravetti & Castelli
Courtesy of Dimelo! Latin Dance Records
By Arrangement with Latin Music Entertainment, Inc.

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

6.    (a)    Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of all rights, including copyrights, in and to the Master, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Master as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b)    Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by Artist, and any other recording artists, performers, or producers in connection with the Master. Except as may be expressly provided herein, Licensee shall have no obligation to make payments of any kind whatsoever to any third party or parties (including, but not limited to, any and all persons performing or rendering any services in connection with the recording of the Master) with respect to Licensee's use of the Master hereunder.

3

7.     (a)     Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

(b)     Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

8.     No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter. In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

9.     Licensor's rights and remedies in the event of a breach or alleged breach of the License by Licensee shall be limited to the right to recover damages in an action at law, and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Production or future soundtrack albums of the Production.

10.     Licensee may transfer or assign this License without Licensor's consent to any third party requiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.     This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State. All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.     All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

4

13. This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and can not be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:

LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.

DREAMWORKS PRODUCTIONS L.L.C.

By:_____
an authorized signatory

By:_____
an authorized signatory

Federal I.D. # 95-4479581

EXHIBIT B

## SYNCHRONIZATION & PERFORMANCE LICENSE

This License Agreement ("License"), is entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc. d/b/a Ambiente Latino Music Publishing, 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee").

1. **Composition:** "El Mambo"

   **Written by:** Bravetti & Castelli

   **Production:** The Tuxedo (motion picture)

   **Initial Theatrical Release:** September 27, 2002

   **Usage:** :34 Background Vocal (interrupted use)

   **Media:** All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (airlines, ships, etc.) and a buyout of all home video formats (excluding non-linear interactive rights)

   **Territory:** Worldwide

   **Term:** Perpetuity

   **License Fee:** $1,500.00

2. Licensor hereby grants to Licensee the following non-exclusive, rights: to record the Composition in timed-relation with the Production, to make copies of such recordings, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Composition, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

Licensee may use the Composition in all forms of in-context clips, excerpts and/or trailers in connection with advertising and promotion of the Production.

2

3.      The right to exhibit the Production in the United States, by means of television (including by means of "free television," "pay television, "subscription television," "CATV" and "closed circuit into homes television,") is expressly conditioned upon the networks, local stations or closed circuits having valid performance licenses from the American Society of Composers, Authors and Publishers ("ASCAP") or Broadcast Music, Inc. ("BMI)" as the case may be.

Clearance by performance rights societies in such portion of the Territory as is outside the United States will be in accordance with their customary practices and the payment of their customary fees.

4.      Licensee shall have the right to embody the Production (including the Composition) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5.      The terms of this License are limited to the Usage of the Composition described herein. This License does not authorize or permit Licensee to alter the fundamental character of the music and lyrics of the Composition or to use the title or subtitle of the Composition as the title of any production.

6.      (a)      Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of the copyright in and to the Composition, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Composition as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b)      Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by the Writer. Licensee shall have no obligation to make payments of any kind whatsoever to any writers, including the Writer, with respect to Licensee's use of the Composition hereunder.

3

7.    Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"
Written by Bravetti & Castelli

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

8.    Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

9.    No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter. In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

10.    Licensee may transfer or assign this License without Licensor's consent to any third party requiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.    This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State.    All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.    All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

4

13.     This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and cannot be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:                                              LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.   DREAMWORKS PRODUCTIONS L.L.C.
d/b/a AMBIENTE LATINO MUSIC
PUBLISHING

By: _____          By: _____
        an authorized signatory                          an authorized signatory

Federal I.D. #: 95-4479581

EXHIBIT C

# DAVID A. HERLIHY

ATTORNEY AT LAW

ENTERTAINMENT
NEW MEDIA
INTERNET

14 STANIFORD STREET
NEWTON, MASSACHUSETTS 02466
PHONE (617) 964-4006
FACSIMILE (617) 964-4016
E-MAIL HERLISONG@COMCAST.NET

## VIA FAX AND US MAIL

Julie Butchko
Dreamworks SKG
1000 Flower Street
Glendale, CA 91201

November 21, 2003

## RE: TUXEDO/EL MAMBO/COPYRIGHT INFRINGEMENT

Dear Julie,

As you know, I represent Roger Mouzakis and Neutone Recordings with regard to the above-referenced matter.

This will serve to confirm that my client owns all right, title and interest, including without limitation, one hundred percent (100%) of the world-wide copyright, in and to the master recording "El Mambo" (the "Master") and fifty percent (50%) of the world-wide copyright and exclusive administration rights in and to the musical composition (the "Composition") embodied thereon (the Master and the Composition are collectively hereinafter referred to as the "Works").

Without the prior consent of my client, DreamWorks SKG synchronized the Works into the motion picture "Tuxedo" (the "Film"). Moreover, it is undisputed that the Film was released for world-wide theatrical exhibition as well as having been manufactured and distributed on DVDs.

As early as September 9, 2003, you received written confirmation from Mr. Mouzakis regarding his ownership of the Works and the unauthorized synchronization of such Works into the Film. Today, some ten (10) weeks after having received this written notice from my client with respect to the unauthorized synchronization and the subsequent manufacture, distribution and public performance of the Film, it has come to our attention that the Film is scheduled for multiple performances on HBO.

These actions by DreamWorks SKG constitute copyright infringement of my client's Works. Moreover, the upcoming HBO performances of the Film and any other subsequent exploitations of the Film may well constitute willful copyright infringement by DreamWorks SKG.

Julie Butchko
Dreamworks SKG
November 21, 2003
Page 2

As you may be aware, the Copyright Act provides that a copyright owner can sue for either actual or statutory damages, plus attorney's fees and costs, and can also seek injunctive relief. In lieu of actual damages and profits, a copyright owner can recover statutory damages under the appropriate circumstances, of up to One Hundred Fifty Thousand Dollars ($150,000.00) per work infringed plus costs and attorney's fees (Sec.17 U.S.C.§504(c)(2)).

Notwithstanding the foregoing, it remains my client's wish to settle this matter quickly and amicably.

Accordingly, I hereby request that you promptly forward to this office two (2) screener's copies of the Film (DVDs would be acceptable) as well as two (2) copies of any other materials which embody the Works (including but not limited to trailers, web sites clips, soundtrack albums, etc.) so that we may evaluate the use of the Works and negotiate an appropriate retroactive license therefor.

I also hereby request that you promptly forward a true copy of the master use license agreement and the synchronization use and performance license agreement entered into between DreamWorks SKG and the purported licensors the Works.

I have every confidence that we can work together to reach a mutually-beneficial resolution to this matter. I look forward to working with you to resolve this matter as cordially and expeditiously as possible.

The foregoing is without waiver of my client's rights or remedies in law or equity, all of which are hereby expressly reserved.

Very truly yours,

David Herlihy

DAH/me

cc Roger Mouzakis (via US Mail w/ enc.)

EXHIBIT D

Sent by: BUSINESS AFFAIRS,MUSIC;            818 693 6844;                Dec-15-03 11:08AM;            Page

# DAVID A. HERLIHY

### ATTORNEY AT LAW

14 STANIFORD STREET

NEWTON, MASSACHUSETTS 02466

PHONE (617) 964-4006

FACSIMILE (617) 964-4016

E-Mail : Herlismg@comcast.net

**RECEIVED**

DEC 15 2003

**Lenny Wohl**

**FACSIMILE**

**DATE: December 15, 2003**                                    **PAGES (including cover): 5**

**TO:**

| Recipient Name | Firm/Company | Fax | Telephone |
|---|---|---|---|
| Lenny Wohl | DreamWorks SKG<br>Music Dept. | 818.695.6844 | 818.695.6843 |
| Roger Mouzakis | Neutone Recordings | 413.294.2420 | |

**RE: TUXEDO/EL MAMBO/COPYRIGHT INFRINGEMENT**

Dear Mr. Wohl,

     Further to our conversation today, following please find a photocopy of the agreement between Neutone Recordings and Marcello Carlos Castelli Pintos and Gustavo Bravetti, dated July 1, 2001 ("Agreement") pursuant to which my client obtained all right, title and interest, including without limitation, one hundred percent (100%) of the world-wide copyright, in and to the master recording "El Mambo" (the "Master") and fifty percent (50%) of the world-wide copyright and exclusive administration rights in and to the musical composition embodied thereon (the "Composition").

     As I indicated during our telephone conversation, my client would be willing to accept a retroactive licensing fee of eighty thousand dollars ($80,000.00) for the syncronization of the Master and Composition into the Film, as well as most-favored-nations royalty participation in respect of the manufacture and distribution of DVDs.

     As part of the resolution of this matter, I would also seek a change to the cue sheets for the Film so that my client's publishing designee, Neutone Global (ASCAP) would receive its share of performance income for the public performance of the Film.

     I look forward to working with you to resolve this matter as cordially and expeditiously as possible.

Very truly yours,

David Herlihy

**RECEIVED**

DEC 15 2003

**ANDREW CHANG**

The information contained in this facsimile message and the pages following are attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone or facsimile and return the original message to us, at 14 Staniford Street, Newton, MA 02466 via the U.S. Postal Service. We will reimburse you for the expense. Thank you

EXHIBIT E

Sent by: ... ... ...

p - 1

## DAVID A. HERLIHY

ATTORNEY AT LAW

14 STANFORD STREET

NEWTON, MASSACHUSETTS 02466

PHONE (617) 964-4006

FACSIMILE (617) 964-4016

E-Mail : Herlisong@comcast.net

**RECEIVED**

MAR 1 5 2004

**Lenny Wohl**

FACSIMILE

DATE: March 15, 2004                     PAGES (including cover): 7

TO:

| Recipient Name | Firm/Company | Fax | Telephone |
|---|---|---|---|
| Lenny Wohl | DreamWorks SKG Music Dept. | 818.695.6844 | 818.695.6843 |
| Roger Mouzakis | Neutone Recordings | 413.294.2420 | |

## RE: TUXEDO/EL MAMBO/COPYRIGHT INFRINGEMENT

Dear Mr. Wohl,

In connection with the above-referenced matter, it is my understanding that LME was going to forward Dreamworks an "original non-exclusive agreement" ("Agreement") purportedly affecting the El Mambo Works, and that I would receive a photocopy of the Agreement upon your receipt thereof. To date, since I have not received a copy of the Agreement, I can only assume that LME has failed to provide it to you.

As part of this office's preparation for litigation, we have obtained, and enclose herewith, a photocopy of a certain performer's contract, between Gustavo Bravetti (one of the authors and producers of El Mambo) and Oscar Jose Valdez, entered into on November 25, 1997 "Performer's Contract"), as well as a translation of the Performer's Contract, commissioned by this office. It is my understanding that the Performer's Contract is the only agreement between Mr. Bravetti and Mr. Valdez.

It is also my understanding that Mr. Valdez did, in fact, enter into a deal with LME, however, any such deal between Mr. Valdez and LME did not include El Mambo.

Although the Performer's Agreement is very poorly-drafted, you will note, however, that El Mambo is not among the titles listed in the Performer's Contract (i.e., Latina, It's up to you, Hopeless, El vacilón, Spacy Funk, Just a fell it, and Mi Guajira), nor do any of such tracks contain any portion of El Mambo. Moreover, El Mambo was completely written and recorded by Marcello Carlos Castelli Pintos and Gustavo Bravetti in 1995; before the effective date of the Performer's Contract.

The information contained in this facsimile message and the pages following are attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone or facsimile and return the original message to us, at 14 Staniford Street, Newton, MA 02466 via the U.S. Postal Service. We will reimburse you for the expense. Thank you

P.2

Lenny Wohl
DreamWorks SKG
March 15, 2004
Page 2

At this juncture, my client would be willing to accept a retroactive licensing fee of one hundred twenty five thousand dollars ($125,000.00) for the syncronization of the Master and Composition into the Film, as well as most-favored-nations royalty participation in respect of the manufacture and distribution of DVDs. In addition, I would also seek a change to the cue sheets for the Film so that my client's publishing designee, Neutone Global (ASCAP) would receive its share of performance income for the public performance of the Film.

The foregoing offer is for settlement purposes only, and shall not be admissible as evidence in any proceeding. Nothing herein shall be deemed a waiver of my client's rights at law and in equity, all of which are hereby expressly reserved.

Unless I have received a good faith settlement offer from Dreamworks on or before March 29, 2004, my client will be forced to take legal action against Dreamworks and LME.

Very truly yours,

David Herlihy

EXHIBIT F

WILLIAM H. CARROLL
ATTORNEY AT LAW
48 FOREST STREET
WAKEFIELD, MASSACHUSETTS 01880

TELEPHONE (781) 621-8258
FAX (781) 245- 6969
Email: bcarroll518@yahoo.com

October 27, 2004

Andrew Chang
DreamWorks SKG
1000 Flower Street
Glendale, CA 91201

Nissim J. Baly
Executive Officer
Latin Entertainment Music Inc.
10835 Chandler Boulevard
North Hollywood CA 91601-2938

Re: **Neutone Recordings/El Mambo**

Gentlemen:

Thank you for your correspondence of September 24th and September 27th, respectively.
A careful review of the documentation accompanying the correspondence does nothing to
change our client's position.

A review of the materials and the case file confirms the following:

DJ Music sold LME a bad bill of goods. The original agreement between DJ Music and
Gustavo Bravetti ("Agreement") was solely for seven (7) recordings. The Agreement did
not include the Master "El Mambo". Moreover, the Agreement makes no reference
whatsoever to publishing rights, nor is Mr. Castelli, the co-author, a party to the contract.

LME never obtained the rights that it purported to convey to DreamWorks. The contract
between DJ Music Productions Inc. and Latin Music Entertainment may well list El

Mambo, but neither DJ Music Productions Inc. nor Oscar Jose Valdez were granted, assigned or had purchased any valid rights in the El Mambo masters or compositions. Because LME never obtained the rights for El Mambo, DreamWorks never received a valid license to use the El Mambo works. This remains a very basic, uncomplicated issue. Neither DJ Music nor Oscar Jose Valdez ever acquired any rights to the sound recording or composition "El Mambo." Therefore, LME never acquired any legal rights from their contract with DJ Music. Subsequently, any deal between LME and DreamWorks could not convey any valid rights.

- The Agreement is only between Bravetti and DJ Music. Castelli, the co-author of both the sound recording and the composition is not a party to the contract.
- The Agreement does not include the recording, "El Mambo."
- The Agreement is wholly silent regarding publishing.
- DreamWorks and LME are jointly and severally liable for all infringements of "El Mambo."

Again, DreamWorks has been on notice of the infringements since at least September 9, 2003 when Roger Mouzakis of Neutone notified Julie Butchko of DreamWorks in writing. The memo alludes to previous phone conversations between Roger and Julie regarding the infringements. Attorney Herlihy in his letter of November 21, 2003 set forth in detail to Julie Butchko the full scope of the infringements.

Mr. Chang in his letter of September 24th, says Neutone made no effort to contact Latin Music Entertainment despite the urgings by DreamWorks. Why should Neutone contact LME? Neutone had no idea who or what Latin Music Entertainment was or what claim they may have to sell the rights to El Mambo. DreamWorks and its subsidiaries are the entities that substantially benefited from the unauthorized copying, distribution, and public performance of the El Mambo sound recording and composition.

Despite DreamWorks' assertion that "we notified Latin Music Entertainment of your claim, they informed us that they had a license that predates the grant your client appears to rely on," Neutone had no evidence what the agreement was between LME and DreamWorks. Perhaps I am old fashion, but when dealing with written contract disputes

isn't it more prudent, and certainly more reliable evidence, to view the actual written contract that a party pronounces exists and is relying upon for its position in that dispute? What DreamWorks seems to have overlooked or intentionally disregarded is Attorney Herlihy's facsimile of March 15, 2004 addressed to Lenny Wohl at DreamWorks, (a copy of which is enclosed) with a hand written note at the top indicating stating "For cc Andrew Chang-LAW." Attorney Herlihy's facsimile of March 15, 2004 to Lenny Wohl states:

> "In connection with the above-referenced matter, it is my understanding that LME was going to forward DreamWorks an "original non-exclusive agreement" ("Agreement") purportedly affecting the El Mambo Works, and that I would receive a photocopy of the Agreement upon your receipt thereof. To date, since I have not received a copy of the Agreement, I can only assume that LME has failed to provide it to you."

What has been "consistent with my client's interest" is that it was not until Mr. Baly's letter of September 27th that we received a copy of the Agreement that "LME was going to forward [to] DreamWorks" sometime prior to March 15th.

The Agreement between Latin Music Entertainment and D. J. Music Producciones and/or Oscar Valdez may list El Mambo in Schedule A, but the contract between Gustavo Bravetti and D.J. Music never mentions the granting of any rights to El Mambo.

As of March 15, 2004 Attorney Herlihy had provided DreamWorks with a copy of that agreement along with a translation.

> As part of this office's preparation for litigation, we have obtained, and enclose herewith, a photocopy of a certain performer's contract, between Gustavo Bravetti (one of the authors and producers of El Mambo) and Oscar Jose Valdez, entered into on November 25, 1997 "Performer's Contract"), as well as a translation of the Performer's Contract, commissioned by this office. It is my understanding that the Performer's Contract is the only agreement between Mr. Bravetti and Mr. Valdez.

Neutone's position was further substantiated when Attorney Herlihy stated in that same facsimile;

> "It is also my understanding that Mr. Valdez did, in fact, enter into a deal with LME, however, any such deal between Mr. Valdez and LME did not include El Mambo."

But it is the next portion of Attorney Herlihy's facsimile that undermines DreamWorks' assertion that merely because LME "said" it had a license that DreamWorks "believe[s] we have acted reasonably in light of these facts."

> "Although the Performer's Agreement is very poorly-drafted, you will note, however, that El Mambo is **not** among the titles listed in the Performer's Contract (i.e., Latina, It's up to you, Hopeless, El vacilón, Spacy Funk, Just a fell it, and Mi Guajira), nor do any of such tracks contain any portion of El Mambo. Moreover, El Mambo was completely written and recorded by Marcello Carlos Castelli Pintos and Gustavo Bravetti in 1995; before the effective date of the Performer's Contract."

In light of this facsimile a "reasonable person" may conclude that DreamWorks acted with willful disregard of the legitimate issue of the validity of the rights they had contracted for. Moreover, according to *Nimmer on Copyright* a defendant may reduce a judgment "if he proves not only that his infringing conduct was made in a good faith belief of the innocence of his conduct, but also that he was *reasonable* in holding that good faith belief." How, in light of the March 15th facsimile and the attached agreement between Gustavo Bravetti and Oscar Jose Valdez, can DreamWorks assert that LME "has confirmed its superior rights in the work" and that reliance was reasonable? Wishing does not make it so.

The continuance of this dialogue would prove beneficial if there exists any further documentation not yet produced or some legitimate defense that would impact Neutone's claim. Otherwise, we should look to the damages aspect of the infringements.

For months there has been, and continues to be, a dismissive and cavalier attitude toward Neutone's exclusive rights despite Neutone producing full documentation of such rights. I believe this will be a significant factor during the damages stage of a trial.

Multiple DreamWorks entities have engaged in infringement of Neutone's exclusive rights in both the "El Mambo" sound recording and the "El Mambo" composition. Moreover, individual DreamWorks entities are liable for separate and distinct infringements which may have their own set of damages. As you will note from the draft Complaint that was forwarded to DreamWorks as a courtesy, Neutone intends to exercise its rights and pursue claims against each individual DreamWorks entity that may be involved in the infringements. By availing itself of corporate subsidiary liability protection, DreamWorks has also opened each entity up to separate infringement claims. This is especially true in DreamWorks' case since separate entities are used for each stage of getting a film to market and then exploiting the content across many media and formats.

Further, Neutone plans to notify HBO, Cinemax, HBO Asia, and any other cable, satellite, or broadcast network that has aired, or plans to air, "The Tuxedo," that by doing so, such network has or will infringe the exclusive rights of Neutone. At this stage Neutone is reviewing options regarding naming HBO and other cable, satellite, and broadcast companies as defendants in any civil action that Neutone may file.

Any infringements that have occurred or continue to occur implicate Neutone's rights in both the sound recording and underlying composition of "El Mambo." There have been numerous exploitations through various media such as theatrical distribution, videograms, and all world-wide television, including cablecast, satellite, and broadcast. There also exists the issue of the incorrect screen credits which erroneously list LME as the music publisher for El Mambo. Moreover, the cue sheets for the public performance of the composition need to be changed so that our client may receive its rightful public performance income from the public performance of El Mambo.

Neutone has been deprived of substantial world-wide public performance income, and we would seek the disgorgement of any and all fees which have been heretofore been paid to LME through the applicable performance rights organizations.

El Mambo is an integral component of The Tuxedo. The song, and the title of the song, were used for a special purpose in the film. The appearance of the word "Mambo" on Jackie Chan's watch demonstrates that the song was chosen specifically to drive the scene. The use of El Mambo propels the story through that scene. El Mambo is essential to the material, not just filler.

Our experience in the entertainment industry and recent research into relevant trade publications substantiates the following assessments as realistic damages values:

- Synchronized composition                                    $25,000
- Master use                                                  $30,000
- Video buy-out (or a figure per DVD sold)                    $15,000
- Broadcast and cable buy-out (excluding performance)         $15,000
- Screen credit                                               $10,000

Total: $95,000

I would suggest that Mr. Chang, Mr. Baly, Attorney Herlihy and I confer via telephone conference sometime within the week to explore the possibility settling this matter without having to resort to litigation. Attorney Herlihy and I can be available this Thursday afternoon, the 28th after 2:30 (EST) or next Tuesday, the 2nd. Unless we are able to confer Neutone will be left with no choice but to commence an action against the DreamWorks entities and LME for the infringements. It appears now that the focal point would be on the assessment of damages and the question of willfulness. Please contact us regarding your availability.

Very truly yours,

# William H. Carroll
Digitally signed by William H. Carroll
DN: CN = William H. Carroll, C = US
Date: 2004.10.27 12:44:16 -04'00'

William H. Carroll

cc: Ken Wennegren, Esq. via email and US Mail
enclosure

EXHIBIT G

WILLIAM H. CARROLL
ATTORNEY AT LAW
48 FOREST STREET
WAKEFIELD, MASSACHUSETTS 01880

TELEPHONE (781) 621-8258
FAX (781) 245-6969
e-mail bcarroll518@yahoo.com

November 29, 2004

Andrew Chang
DreamWorks SKG
1000 Flower Street
Glendale, CA 91201

Ken Wennegren
1663 Sawtelle Boulevard, Suite 230
Los Angeles, California 90025

Re: **Neutone Recordings/El Mambo**

Gentlemen:

With the mutual understanding that the recent correspondence and telephone conferences merely constitute possible settlement discussions and do not constitute any admission or acknowledgement by any of the parties involved, we have yet to see any evidence that DJ Music Productions Inc. properly contracted for any rights to El Mambo. Therefore, the chain of contracts is contaminated and the use of the composition and sound recording constitutes multiple infringements.

From Neutone's perspective that means contemplating the extent of its remedies. Statutory damages with the real possibility of a Court determining that it was wilful in nature appear viable at this point. Neutone can prove wilful infringement by demonstrating that DreamWorks knew or recklessly disregarded the possibility that its action was an infringement. Fitzgerald Publishing Co. v. Baylor Publishing Co., 807 F.2d 1110, 1115 (2nd Cir. 1986); Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir.1993). Neutone can substantiate that allegation by merely showing that an employee or agent of the DreamWorks knew of or disregarded the infringement.

(i.e., Roger Mouzakis of Neutone Records letter of September 9, 2003 and Attorney Herlihy's letter of November 21, 2003) Failure to take any action in response to these notices and simply state "we were operating in good faith," seems actionable. According to *Nimmer*, the Second Circuit noted in a recent case, although the defendant "testified that it was unaware of [the plaintiff's] copyrights ... the jury was free to discredit that testimony or to find that [defendant's] ignorance was due to recklessness." Yurman Design Inc. v. PAJ, Inc., 262 F.3d 101, 113 (2nd Cir. 2001). The Yurman decision emphasized that the court must give "'particular deference to [juries'] determinations regarding witness credibility' when reviewing a wilfulness determination." *Nimmer* goes on to state further, "But one who "recklessly disregards" a copyright holder's rights, even if lacking actual knowledge of infringement, may be subject to enhanced damages."

Again, I realize we will most likely not agree on this issue, which ultimately may require the filing of suit, but there is genuine exposure regarding statutory damages, along with attorney's fees. But in terms of arriving at a settlement number, if Neutone were to elect to take actual damages/profits and the profits attributable to the infringements that would also be a substantial number. Section 504(b) specifies that the copyright owner who prevails in an infringement action "is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and* any profits of the infringer that are attributable to the infringement. ..." "Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act." This moves us well beyond Ken's focus on the amount paid to LME for the license. I have yet to see any case law where the amount paid for an infringed work was the basis for a damage award.

According to Three Boys Music Corp. v. Bolton, 212 F.3d 477 9th Cir. A successful copyright plaintiff is allowed to recover only those profits that are "attributable to infringement." 17 U.S.C. § 504 (b) (1994). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. See also Cream Records, Inc. v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828 (9th Cir. 1985) (holding that when all profits do not clearly derive from the infringing material, the copyright owner is not

entitled to recover all of the profits); Gaste, 863 F.2d at 1070 (finding that where there is "imprecision in the computation of expenses, a court should err on the side of guaranteeing the plaintiff a full recovery").

We took a look at the numbers we were able to find regarding rough grosses for The Tuxedo. This includes only the theatrical revenues and does not included DVD/VHS sales, rentals or any cablecast/broadcast/on-demand delivery deals. We deducted production costs and marketing costs. That would, of course, be DreamWorks's burden during litigation. The rough numbers are as follows

Worldwide Theatrical Grosses = $104,391,623
Production and Marketing Costs = $85,000,000
$104,391,623
-$85,000,000

=$19,391,623 Gross Profits

Duration of The Tuxedo = 99 minutes

$19,391,623 /99 minutes
=$195,874.98 Profit per Minute
$3264.58 Profit per Second

$101,201.98 Profit for 31 Seconds (length of El Mambo use)

A number of factors can be also taken into consideration, such as the unaccounted for additional gross revenues mentioned that will be subject to discovery if suit is filed. It does not include its use in the "making of film." We have yet to retain an expert regarding damages. But, based on an informal unscientific poll taken over the Thanksgiving weekend of sons, nieces and nephews who have seen the movie, Dave Herlihy's assertion that the song "drives" the scene is correct. They all remembered that the song is written on the watch. Everyone remembers that Jackie Chan dances around to the song. And, Jennifer Love Hewitt's role in that scene aside, El Mambo is an important element in that portion of the film. That demographic is assuredly a substantial share of the gross revenues that we do know about.

A review of, <u>Terrence Burns, M.D., Et Al., v. Imagine Films Entertainment, Inc., Et Al.,</u> <u>Defendants.</u> 92-CV-243s United States District Court For The Western District Of New York 2001 U.S. Dist. Lexis 24653; Copy. L. Rep. (CCH) P28, 516 supports the assessment set forth above. Granted these are very rough numbers and clearly not inclusive of all gross revenues that will be part of the calculation, but I am seriously starting to think that our present demand may be too low a figure.

Again, we would like the opportunity to discuss this matter further with you tomorrow. Please let us know. Thank you.

Very truly yours,


William H. Carroll