UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| NEUTONE RECORDINGS,<br><br>               Plaintiff,<br><br>v.<br><br>DREAMWORKS SKG,<br>DREAMWORKS, INC.,<br>DREAMWORKS DISTRIBUTION, LLC,<br>DREAMWORKS PRODUCTIONS, LLC,<br>DREAMWORKS INTERNATIONAL<br>   DISTRIBUTION, LLC,<br>DREAMWORKS, LLC,<br>DREAMWORKS FILMS, LLC,<br>HOME BOX OFFICE, INC.,<br>LATIN MUSIC ENTERTAINMENT,<br>and DIMELO! RECORDS,<br><br>               Defendants. | CIVIL ACTION No. 05-CV-10807 NG |

## DECLARATION OF NISSIM J. BALY

I, Nissim J. Baly, hereby swear under the pains and penalties of perjury as follows:

1.      I am a citizen of the State of California, am over eighteen years of age, and make this Declaration on the basis of my personal knowledge.

2.      I am the owner and President of Latin Music Entertainment ("LME"), which is a California corporation with principal offices in North Hollywood, California.  LME has no offices, real property, agents, or employees in Massachusetts.

3.      Dimelo! Records ("Dimelo!") is a music imprint of LME with principal offices in North Hollywood, California.  It is not a separate legal entity.   It has no offices, real property, agents, or employees in Massachusetts.

4.      LME and Dimelo! produce, promote and distribute music by Latin artists in the United States.  Music under management with LME and Dimelo! has appeared in such popular

motion pictures and television programs as "A Man Apart," "Resurrection Blvd," and "The O.C."

5.      In early 1998, I attended MIDEM in Miami, Florida. MIDEM is the world's largest trade show in the music business, and is attended by thousands of music publishers, record labels (both independent and major), online and traditional distributors, live music professionals, producers, and other people in the music business. (The term "record label" is still often used for any company in the business of making and selling copies of recorded music, even though most recorded music is now sold in CD form rather than "records.") MIDEM is a convention where many music deals are made or initiated.

6.      At the MIDEM convention in Miami I met Sybila Trabal, a representative of a Uruguayan company that does business under the names "Dee Jay Productions," "Dee Jay Music," "D.J. Music Producciones," and "REMIX Records." (I will refer to it here as "Dee Jay.") Dee Jay is a record label with its offices in Montevideo, Uruguay. It is my information and belief that its principal is a man named Oscar José Valdez ("Valdez"), who is a citizen of Uruguay. However, to the best of my knowledge Mr. Valdez was not at the MIDEM convention, and Dee Jay was represented solely by Ms. Trabal.

7.      Ms. Trabal acquainted me with Dee Jay's product line, which included various CD's such as Dee Jay Music Greatest Hits, Vols. 1 through 4. Volumes 1, 2 and 4 of these "Greatest Hits" CDs contained music by Gustavo Bravetti ("Bravetti"), who, as I understand it, is a musician and disk jockey located in Montevideo, Uruguay. Volumes 1 and 2 had been released in 1994, and Volume 4 in 1995 or 1996.

8.      Ms. Trabal gave me copies of these and other Dee Jay CDs, including a "REMIX Advance Release" CD, which contained the song at issue in this case, "El Mambo." Ms. Trabal

informed me that all of the songs on the CDs she gave me, including the Advance Release CD, were available for licensing.

9.    In or about the first quarter of 1999, I contacted Trabal to discuss licensing the rights to promote and commercialize certain Dee Jay music, including "El Mambo." Over the next few months we had various communications on this topic. See, for example, Exhibit A to this Declaration, which is a copy of an email that she sent me regarding payment procedures.

10.    On June 29, 1999, I memorialized the terms of the proposed license and identified fourteen (14) tracks for license to LME that included "El Mambo ." Exhibit B to this Declaration is a copy of the fax that I sent to Trabal on that date.

11.    These terms were accepted by Dee Jay, and we subsequently agreed on the addition of some additional tracks. By agreement dated as of June 29, 1999, but actually executed in September, 1999, Dee Jay and LME entered into a non-exclusive license for the right to publish "El Mambo" and twenty-four other tracks. A copy of that agreement is attached hereto as Exhibit C.

12.    In or about the third quarter of 1999, LME and Dimelo! released a CD entitled "Dance Remix En Tu Idioma Vol. 2" ("Dance Remix CD") that contained, among other tracks, "El Mambo."

13.    Between late 1999 and early 2000, Bravetti contacted me at LME's offices in California by telephone to ask for copies of the Dance Remix CD. During the telephone discussion, Bravetti expressed gratitude for LME's decision to commercialize Bravetti's music, including "El Mambo," and asked whether LME would be interested in licensing additional musical tracks. At no time did he say anything to protest my release of "El Mambo," assert that he had any rights in "El Mambo," or request compensation from me for our use of "El Mambo."

14.    LME and Dimelo have sold approximately 1,520 copies of the Dance Remix CD in southern California. Sales of the Dance Remix CD were less than $2,000. As a result of the disappointing returns, the Dance Remix CD was discontinued entirely in or about the third quarter of 2003.

15.    LME and Dimelo sell CDs only to distributors. We had and have no distributors in Massachusetts, and therefore sold no copies of the Dance Remix CD into Massachusetts.

16.    At some time in the summer or early fall of 2002, I received an inquiry from Billy Gottlieb, of Playback Music, in Los Angeles, about using "El Mambo" in a film to be produced by his client Dreamworks Productions LLC. Mr. Gottlieb offered me a "take it or leave it" price of $3,000 for approximately 34 seconds of synchronization of the music and the recording. I decided to accept his offer, and on September 27, 2002, LME and defendant DreamWorks Productions LLC entered into two non-exclusive licenses for the use of "El Mambo" in the motion picture "The Tuxedo." Copies of these are attached hereto as Exhibits D and E.

17.    Immediately after the release of "The Tuxedo," Bravetti contacted me by telephone to request free copies of the movie. (I did not have any copies available to give him.) Bravetti did not make any complaints about the use of "El Mambo" in the movie, assert any rights in "El Mambo," or demand any compensation for use of "El Mambo" in the movie.

Signed under the pains and penalty of perjury under the laws of the United States, this 27th day of July, 2005.

_N.S.Baly_

Nissim J. Baly

# EXHIBIT A

**Nissim J. Baly**

**From:**    sibyla [sibyla@cybermix.com.uy]

**Sent:**    Tuesday, June 22, 1999 12:05 PM

**To:**    Nissim J. Baly

**Subject:** information you need

ESTIMADO NISSIM:

En respuesta a vuestro fax aqui le envio la informacion solicitada:

1) Details for the CONTRACT
 - Licensing Company Name - D.J MUSIC PRODUCCIONES
 - Licensing Contact for Company - OSCAR VALDEZ
 - Licensing Company Address and Tel/Fax - Luis Alberto de Herrera 2092
   Montevideo - Uruguay   Telefax 480 3039.
(Si prefieres, puedes seguir utilizando la direccion y Tel  de REMIX
 Av. Uruguay 983   Tel 900 0040  Fax 900 6731)
- Licensing Company Bank Name: Mrs PATRICIA QUINTEIRO (Valdez´s wife)
    BANCO REPUBLICA - Suc. AGUADA
    Address: Av. Gral Rondeau 1754  - Montevideo - Uruguay
    Tel . 598 2 924 0602
    Account # 1810032191       (avisame si necesitas el Wire routing, pues no
me lo pasaron?)

2) Le envio el tracklisting de los temas que NO estan disponibles. (puedes escoger
cualquier otro que "NO" este en esta lista)

- October - TRANSFORM
- Turn me on - HOUSE II HOUSE
- My mind it´s over - JAY BEE
- Another sunrise - MYSTIQUE SOUL
- Let´s party - THE DRAG QUEENS
- A cool piano - DJ MUSIC
- Belle dance - CHECHENYAS DANCE
- Green & Black - GREEN & BLACK
- Mad - AFTERHOUR TRIBE
- Disco up -. DJ LIGHT
- Sun - MYSTYCO
- Space is a dream - EMIL MONTGOMERY
(Basicamente pertenecen al DEE JAY Vol 3 y 4).

Sin otro particular me despido muy atte, quedando a vuestra disposicion por cualquier
consulta.

Sibyla Trabal
By REMIX

7/7/99

EXHIBIT B



LATIN MUSIC ENTERTAINMENT, INC.
9811 OWENSMOUTH AVE SUITE # 3
CHATSWORTH, CA 91311-3800 USA
TEL: (818) 882-5693 - FAX: (818) 882-5793

HTTP://WWW.LMEONLINE.COM

Ms. Sibyla Trabal
REMIX SRL
Tel: 011-598-2-900-0040
Fax: 011-598-2-900-6731 FAX
Remixc@multi.com.uy

Dear Sibyla:

As per our conversation at the MIDEM Conference, please find attached a proposed label copy for our up-coming release **"DANCE REMIX EN TU IDIOMA VOL. 2" (DCD-9008-2/4)**. I have chosen 11 tracks from your repertoire. Because our release date is near, I would appreciate you prompt response to our request via FAX.

The proposed terms and conditions are as follows:

| | |
|---|---|
| Selection(s): | **11 (attached on following page)** |
| Release Date: | **4th qtr 99** |
| Suggested retail price: | **$13.98 (CD) / $5.98 (CASS)** |
| Advance: | **$1,000.00** |
| Royalty: | **$.04 (CD) / $.02 (CASS) per track** |
| Term: | **5 years - non-exclusive** |
| Territory: | **USA with world wide exports** |

Kindest regards,

Nissim J. Baly
Executive Director
Latin Music Entertainment, Inc.

*Formal papers will follow.*

C:\WEBSITE Documents\remix uruguay (2).doc

Agreed and accepted by:

An Authorized Signatory
Dario Diaz
REMIX Records - Uruguay

*THE Best IN LATIN MUSIC*

LME-9008

LATIN MUSIC ENTERTAINMENT, INC.
DIMELO LATIN DANCE RECORDS
DANCE REMIX EN TU IDIOMA VOL. 2
VARIOS ARTISTAS

| TRACK | ARTIST | LABEL |
|---|---|---|
| INTRO - OYE SOUND BITE (989-016) | | |
| 1. SUENALO (LA HOUSE DE ME VIEJO MIX) | DJ ASERE | DIMELO |
| 2. LA MAGIA DE LA NOCHE | LATINA | REMIX SRL • |
| 3. SEXTRAIN INTRO / FEELING THE DRUMS | DEE JAY MUSIC | REMIX SRL • |
| 4. ENJOY | LA CUBANA | REMIX SRL • |
| 5. MR. CHOLITO | ONE WAY | REMIX SRL • |
| 6. LATIN RUMBA | LA CUBANA | REMIX SRL • |
| 7. EL GUATEQUE (EASY MIX) ?OG | LOS BALSEROS | REMIX SRL • |
| 8. MARCHA | N-JOY | REMIX SRL • |
| 9. LATIN RUMBA (PART 2) | LA CUBANA | REMIX SRL • |
| 10. QUE TE BAILO (SAO PAULO VERSION) | LATINA | REMIX SRL • |
| 11. I'M COMMIN' 2 U'R CASA (LATIN HOUSE EDIT) | CHULY | DIMELO |
| 12. EL MAMBO | BRAVETTI | REMIX SRL • |
| 13. HOUSEDOMBE | CASTELLI SOUND | REMIX SRL • |
| 14. DIMELO ASERE | DJ ASERE | DIMELO |

EXHIBIT C

09/27/2004 11:36 FAX  8188825793          LATIN MUSIC ENT, INC                          @0002/010



## E N T E R T A I N M E N T

9811 Owensmouth Avenue Suite # 3 · Chatsworth, CA 91311-3800 USA
Tel: (818) 882-5693 · Fax: (818) 882-5793
Internet: http://www.LMEonline.com

### MASTER RECORDING LICENSE AGREEMENT

This License Agreement ("Agreement") is between:

D.J. MUSIC PRODUCCIONES AND OR OSCAR VALDEZ, hereinafter referred to as
("Owner"), Luis Alberto de Herrara 2092 Montevideo, Uruguay, TEL/FAX: 011-598-
2-480-3039, and **Latin Music Entertainment, Inc.** hereinafter referred to as
"Licensee") and is entered into as of the 29th day of June, 1999.

**WITNESSETH:**

**WHEREAS**, Owner owns a collection of Master Recordings (hereinafter as the
("Masters") described on Schedule "A" attached hereto and herein by this
reference.

**WHEREAS**, Licensee is in a position to provide manufacturing and/or
marketing facilities for phonograph records comprised of the Masters in the
Territory.

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual
covenants and promises hereinafter set forth it is agreed:

1. **License of Master Recordings:** Owner hereby licenses to Licensee, and
Licensee hereby accepts from Owner for the term of this Agreement and for the
Territory only, each and every Master recording presently owned or controlled
by Owner, as set forth on Schedule "A" attached hereto for the purpose of
manufacturing, distributing and selling phonograph records of albums in the
Territory. Except as expressly provided for in this Agreement, all rights of
any nature whatsoever in the aforementioned Masters are reserved by Owner.
Licensee undertakes to use such efforts, skills and ability in its manufacture,
distribution and sale of phonograph records hereunder as it deems appropriate
in its sole discretion. Owner represents and warrants that Owner owns or
controls all rights in the Masters granted to Licensee hereunder.

2. **Territory:** World Wide

3. **Term:** The Term for each Master licensed hereunder shall commence upon the
initial release of an album containing said Master, and shall continue for a
period of Five (5) years. Owner hereby grants Licensee three (3) separate,
irrevocable options, each to renew this Agreement for a period of one (1)
year, said option periods to run consecutively beginning at the expiration of
the Term, and each successive option period, upon the same terms and conditions
applicable to the initial Term, except there shall be no further advances. Each
option may be exercised by Licensee by giving Owner written notice to such
effect at least thirty (30) days prior to commencement of the renewal period
for which the option is exercised.

1

05/27/2004 11:37 FAX  8188825793          LATIN MUSIC ENT, INC                    @003/010

4. **Royalties:**

a. In consideration for this Agreement and the rights licensed hereunder, Licensee shall pay Licensor a royalty of four cents ($0.04) for each track embodying a Master licensed hereunder on each compact disc record manufactured and sold hereunder by Licensee, and a royalty of two cents ($0.02) for each track embodying a Master licensed hereunder on each cassette tape record manufactured and sold hereunder by Licensee less any returns and any credits for exchange.

b. As used herein "net sales" shall mean all gross sales in dollars for records manufactured and sold hereunder less any returns and any credits for exchange. Licensee shall not, in the computation of the royalties, deduct for packaging costs, distribution costs, or free giveaways.

5. **Other Income:** Licensee shall pay Owner ten percent (10 %) of any income derived from exploitation of the Masters for uses not described in paragraph 7. below.

6. **Recoupable Advance:** Licensee shall pay to Owner an advance, recoupable against all royalties payable to Owner hereunder, of Ninety Six Dollars and 15 cents ($96.15) per track for a total of, Two Thousand Five Hundred Dollars ($2,500.00),(26 Tracks), upon delivery by Owner to Licensee of digital audio tapes of the Masters, all artwork associated with the Masters, and any other items, documents, or releases reasonably requested by Licensee.

7. **Rights Granted:** Owner hereby grants to Licensee the following rights:

a. The right to manufacture, distribute, sell, advertise, publicly perform and broadcast in the Territory Phonorecords containing the performances embodied in the Masters licensed hereunder, it being understood that such right to manufacture, distribute, sell and advertise shall be non-exclusive during the term hereof.

b. The right to use in the Territory the name, likeness and biography of the artists whose performances are embodied in the Masters in connection with the advertising, publicizing or sale of records manufactured therefrom.

c. Licensee shall have the right to couple selections from the Masters with other master recordings. If any selections from the Masters are coupled with other master recordings in compilations, then the royalty' on such coupled projects shall be the royalty provided in subparagraph 4. a. above.

d. Owner shall not grant and has not granted to any third parties any rights in the Territory which are inconsistent with the rights granted to Licensee hereunder.

8. **Controlled Compositions:** Each composition recorded hereunder and controlled in whole or in part by Owner, or an affiliate of Owner, shall be administered by licensees affiliated publishing company for the term of this contract and in the territories governed by this contract. In consideration of assignment of rights by owner, licensee agrees to collect and receive all payments made under such licenses, and to acknowledge receipt therefor. It is understood that such payments received by licensee on behalf of the owner shall be distributed as

2

soon as practicable to the owner without the payment of any interest thereon. For licensee services rendered pursuant hereto, licensee shall have the right to deduct and retain licensees normal commission which shall be equal to a percentage of all payments collected for the owners account under such licenses. Such percentage shall not exceed 50% of total monies collected. Notwithstanding the above, all mechanical licenses obtained by licensee and its distributed labels will be licensed at the royalty rate equal to 100% off of the then current minimum compulsory license rate applicable under the copyright law of the country concerned at the time of recording.

9. **Royalty Statements, Payments:** Statements as to royalties and other income due hereunder shall be sent by Licensee to Owner on or before the forty-fifth day following the end of each calendar quarter together with payment of accrued amounts of all sums due to Owner during that quarter. Owner shall be deemed to have consented to all royalty' statements and all other accounts rendered by Licensee to Owner, and said statements and other accounts shall be binding upon Owner and not subject to any objection for any reason unless specific objection in writing, stating the basis thereof, is given to Licensee within one (1) year from the date such statement or account was delivered by Licensee to Owner.

10. **Promotional Copies:** Licensee shall provide Owner with ten (10) free copies of each compact disc and cassette released by it.

11. **Performances, Names & Likenesses and Artwork;Release:** Owner represents and warrants that it has the right to grant to Licensee the use of the performances, names and likenesses, of all musicians and performers embodied in the Masters and artwork provided by Owner in connection with the exploitation of the Masters by Licensee as provided for herein. Owner shall indemnify, defend and hold Licensee harmless against any adverse claim asserted against Licensee by any third party in the territory as a result of Licensee's use of the performances, names, likenesses or artwork under this Agreement.

12. **Third Party Royalties:**

a. With respect to records which embody copyrighted musical material, Licensee shall obtain all necessary licenses and pay or cause to be paid directly to the copyright proprietors of such material, or to their duly authorized agents, all mechanical royalties which may be due or become due under and in accordance with said licenses or the applicable laws, and shall indemnify Owner against and hold Owner free and harmless from all claims with respect thereto.

b. Owner shall pay all royalties which may become due to artists and producers and all other royalties (except under mechanical licenses) or amounts for which Owner is or may be obligated with respect to records manufactured and sold hereunder, including, but not limited to, any union, pension, or reuse fees, and shall hold Licensee free and harmless from all claims with respect thereto.

13. **Books and Records:** Licensee shall keep true and correct accounts of sales of records produced from the Masters. Owner shall have the right from time to time to appoint an independent, duly qualified accountant to inspect and make extracts of the books and records of Licensee, wherever same may be, insofar as said books and records pertain to the exercise by Licensee of any rights granted to Licensee hereunder. Such inspections shall be made on not less than ten (10) days' written notice, by such accountants or auditors as are chosen by Owner, during normal business hours of normal business days not more than once during any twelve month period, and shall be at Owner's expense. Such right of

3

09/27/2004 11:38 FAX 8186625783          LATIN MUSIC ENT, INC          @003/010

inspection shall not extend beyond a period of one year from the date of the report or account in question.

16. **Ownership of Licensed Property:** All tapes, acetates, stampers, mothers or duplicates thereof, of Masters hereunder and all copyrights, ownerships and rights in and to the Masters, shall remain the sole and exclusive property of Owner, subject, however, to the rights of Licensee under this Agreement. In the event Licensee improves the technical quality of the Masters through digital enhancement, "clean-up" or otherwise, Owner agrees that it shall not utilize nor authorize others to utilize said improved Masters, without first paying to Licensee Licensee's actual costs incurred in improving the Masters.

16. **Rights of Termination of Owner :** In the event Licensee shall fail to make payments within ten (10) days of their due dates, or shall fail to perform any other of its material obligations required of it hereunder, and Owner shall have notified Licensee in writing of such failure and Licensee shall not have cured such failure within thirty' (30) days after such written notification (or ten (10) days in the case of payments) then and in any of such events, Owner may, in addition to all of its other rights and remedies at law or otherwise, at its option, terminate this Agreement on written notice to Licensee, without prejudice to any rights or claims which Owner may have.

17. **Rights of Termination of Licensee:** In the event Owner shall fail to perform any of its material obligations hereunder, and Licensee shall have notified Owner in writing of such failure and Owner shall not have cured such failure within thirty (30) days after such written notification, then Licensee may, in addition to all of its other rights and remedies at law or otherwise, at its option, terminate this Agreement on giving written notice to Owner, without prejudice to any rights or claims which Licensee may have.

18. **Insolvency:** In the event Licensee or Owner shall make any assignment for the benefit of creditors or make any compositions with creditors, or any action or proceeding under any bankruptcy or insolvency law is taken by or against Licensee or Owner, which is not discharged within one hundred twenty (120) days after it is commenced, then in any of such events the other party may, in addition to all of its other rights and remedies at law or otherwise, at its option, terminate this Agreement upon giving not less than ten (10) days' written notice.

19. **Non-Assignability:** No party hereto during the term hereof shall, without the other party's prior written consent, transfer or assign this Agreement or any part thereof or any right acquired thereunder to any other person, firm or corporation (except to a subsidiary, parent or associated company within the same corporate structure or to any entity with which such party shall merge or consolidate, or to any entity acquiring the stock or substantially all the assets of such party or to any entity under a cross or reciprocal distribution arrangement). In the event of any assignment by any party in violation of the provisions of this paragraph, the other party shall have the right to terminate this Agreement by notice in writing. Notwithstanding the foregoing, Licensee shall have the right to utilize its parent company and its affiliated companies, if any, to manufacture and distribute phonograph records hereunder, it being expressly understood, however, that by so doing Licensee shall not be relieved of any of its obligations hereunder.

4

800/400@          LATIN MUSIC ENT, INC          8186625783 FAX 10:40 2004/27/80

**20. Effect of Expiration or Termination:**

a. Upon the expiration or termination of this Agreement, Licensee shall not manufacture any further records from the Masters licensed hereunder. All Masters and all derivatives thereof and any other material in Licensee's possession or control used in the manufacture of records hereunder (including, but not limited to, tapes, mothers, and stampers) shall promptly, at the option of Owner and upon its written instructions, either:

i. In the case only of material originally supplied by Owner, be transferred by Licensee to Owner or Owners designee at Owner's cost; or

ii. Be destroyed by Licensee under the supervision of Owner or Owner's designee, or, at Owner's written request, destroyed by Licensee without such supervision provided Licensee provides Owner with an affidavit of such fact, sworn to by a principal officer of Licensee.

b. Upon the expiration of this Agreement, by reason of passage of time and not by reason of any termination by Owner, Licensee shall continue to have the right to sell the then remaining copies of said records, on a non-exclusive basis. Licensee's right to sell said remaining copies of said records shall terminate one hundred and eighty (180) days after the expiration of this Agreement.

c. All sales of records by Licensee subsequent to the expiration of this Agreement shall, except as otherwise provided herein, be in accordance with the terms and provisions hereof applicable to the sale of records during the term hereof. Without limiting the generality of the foregoing, such sales shall be in Licensee's normal course of business and at prices not less than the normal wholesale prices of such records during the term hereof. Such sales shall be subject to the payment of royalties by Licensee under the terms of this Agreement. Upon the expiration of the six month period referred to in subparagraph b. above, Licensee shall destroy all the then remaining records under the supervision of Owner or Owner's designee or, at Owner's written request, Licensee shall destroy said records without such supervision provided that Licensee provides Owner with an affidavit of such fact, sworn to by an officer of Licensee.

**21. Indemnity:** Each party' hereto agrees to defend, indemnify and hold the other harmless against any and all liability, loss, damage, cost or expense, including reasonable attorneys' fees, paid or incurred by reason of any breach by that party of any covenants, warranties or representations hereunder The indemnitor shall be given prompt written notice of any claim or action to which the indemnity applies and shall be given the reasonable opportunity to defend against said claim or action, at its expense. The indemnified party shall not settle any such claim or action without the prior written consent of the indemnitor, which consent shall not be unreasonably withheld.

**22. Definition of Record and Phonograph Record:** For the purposes of this Agreement, the term "record" or "phonograph record" shall mean any disc record of any material and revolving at any speed, or any other device or contrivance of any type, character or description, including tape, whether in reel-reel, cassette or cartridge form, whether now or hereafter known, for the reproduction of sound, manufactured or sold primarily for home or travel conveyance entertainment.

5

09/27/2004 11:39 FAX  8188826793          LATIN MUSIC ENT, INC                    ☒007/010

**23. Notices:** All statements, royalties and other payments to be given to Owner hereunder shall be addressed to Owner as hereinafter provided. All notices to be given by any party' hereto shall be in writing and shall be delivered either personally to an officer of the addressee or by express or special delivery air mail (registered, postage prepaid) or by telefax or cable (charges prepaid). Any notice which is so mailed, telefaxed or cabled shall be conclusively deemed to have been given seventy-two (72) hours after the date of mailing or on the date of delivery to the cable company, or on telefaxing provided proof of receipt is obtained. The addresses of the parties, until further written notice to the contrary, are set forth on the signature page hereof.

**24. Income Tax Provisions:** In the event Licensee shall be obliged by the laws of any country in the Territory to deduct and withhold income or other similar tax from royalties payable hereunder, Licensee must supply Owner a certificate setting forth the amount of tax which shall have been withheld, the rate of tax and any other information which may assist Owner upon presentation of such certificate, to obtain income tax credit from the United States Internal Revenue Service for the tax so withheld.

**25. Miscellaneous:**

a. The covenants hereunder are subject to applicable laws and treaties. This Agreement, its validity, construction and effect shall be governed and construed under the laws of the State of California applicable to contracts executed therein and wholly to be performed therein, with jurisdiction and venue in the County of Los Angeles.

b. If any part of this Agreement shall be declared invalid or unenforceable by a court of competent jurisdiction, it shall not affect the validity of the balance of this Agreement.

c. This Agreement may not be modified orally; no waiver, amendment or modification shall be binding or effective unless in writing and signed by the party' sought to be bound.

d. Paragraph headings used herein are for convenience only and are not part of this Agreement and shall not be used in construing it.

e. This Agreement shall inure to the benefit of and be binding upon Owner and its permitted successors and assigns and Licensee and any permitted successors and assigns.

f. In the event any payments due Owner are delayed or prohibited by currency restrictions or other governmental regulations, Owner shall be entitled to designate a local depository in the particular country or countries of the Territory in which Licensee, at the direction of Owner, shall deposit such monies to the credit of Owner subject to the laws of such country or countries.

6

08/27/2004 10:42 FAX 8188826793          LATIN MUSIC ENT, INC                    ☒008/008

g. No party shall have liability for damages, non-performance or delayed performance under this Agreement due to fire, earthquake, explosion, strikes or labor disputes, water, acts of God, war, civil disturbances, acts of civil or military authorities or the public enemy, transportation, facilities, labor, fuel or energy shortages, or other causes beyond that party's control provided however that if any such non-performance or delayed performance persists for more than six months, the other party shall have the right to terminate the agreement with the same effect as if the agreement expired by the passage of time.

h. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed effective the 29th day of June, 1999.


"OWNER"
D.J. MUSIC PRODUCCIONES AND OR OSCAR VALDEZ

By:_____

Title:_____
An Authorized Signatory


"LICENSEE"
LATIN MUSIC ENTERTAINMENT, INC.
A California Corporation

By:_____
Nissim J. Baly, President


7

09/27/2004 11:40 FAX  8188825793    LATIN MUSIC ENT, INC    ☒009/010

FROM : R.VALDEZ LA IMAGEN PROFESIONAL PHON. ... : 480 3429    Jul. 13 1999 01:53PM P1

FROM : REMIX SRL    PHONE NO. : 5982 908045    JUL. 13 1999 11:08AM P3

a. No party shall have liability for damage, nonperformance or delayed performance under this Agreement due to strikes, earthquakes, explosion, riots or labor disputes, fires, acts of God, wars, civil disturbances, acts of civil or military authorities to the public safety, transportation facilities, labor, fuel or energy shortages, or other causes beyond that party's control; provided however that if any such non-performance or delayed performance persists for more than six months, the other party shall have the right to terminate the agreement with the same effect as if the agreement expired by the passage of time.

b. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed effective the 29th day of June, 1999.

"OWNER"
D. J. MUSIC PRODUCCIONES AND OR OSCAR VALDEZ

By: _____

Title: Director
An Authorized Signatory

"LICENSEE"
LATIN MUSIC ENTERTAINMENT, INC.
A California Corporation

By: _____
Mission J. Ealy, President

JUL. 12 1999 06:51PM P2    PHONE NO. : 5982 908045    FROM : REMIX SRL

09/27/2004 10:43 FAX 8188825793    LATIN MUSIC ENT, INC    ☒008/008

## SCHEDULE "A"

| TITLE | AS PERFORMED BY |
|---|---|
| A MAGIA DE LA NOCHE | LATINA |
| SEXTRAIN INTRO / FEELING THE DRUMS | DEE JAY MUSIC |
| ENJOY | LA CUBANA |
| MR. CHOLITO | ONE WAY |
| LATIN RUMBA | LA CUBANA |
| EL GUATEQUE | LOS BALSEROS |
| MARCHA | N-JOY |
| LATIN RUMBA (PART 2) | LA CUBANA |
| QUE TE BAILO | LATINA |
| EL MAMBO | BRAVETI-CASTELLI |
| SPACYFUNK | IT'S UP TO YOU |
|  |  |
| U CAN'T BE LOVE | COMING TO NY |
| WERK IT ME | HOUSE II HOUSE |
| GIVE ME YOUR LOVE | DEEPER CLUB |
| 10 IN | THE DEEP |
| TAKE ME TO THE TOP | PATTY SISTER |
| CITY 2000 | HOUSE II HOUSE |
| FIND YOUR VOICE | HOUSE-O-LUTION |
| JAY FEEL | COMING TO NY |
| JUST A FEEL IT | HOPELESS |
| BARRABAZ | DEE JAY MUSIC |
| THE LAB | DEE JAY MUSIC |
| NOISE | BRAVETTI |
| MUSIC FOR A FOUND HARMONIUM | BLUE FEELING |
| LOVE (YEAH BABY) | D-VINE |

8

EXHIBIT D

## MASTER USE LICENSE

This License Agreement ("License"), entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc., 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee"):

1. **Master:**  "El Mambo"

   **Artist:**  Bravetti & Castelli

   **Production:**  The Tuxedo (motion picture)

   **Initial Theatrical Release:**  September 27, 2002

   **Usage:**  :34 Background Vocal (interrupted use)

   **Media:**  All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (planes, ships, etc.), and a buyout of all home video formats (excluding non-linear interactive rights)

   **Territory:**  Worldwide

   **Term:**  Perpetuity

   **License Fee:**  $1,500.00

2. Licensor hereby grants to Licensee the following non-exclusive, rights:

    (a) To record the Master in timed-relation with the Production, to make copies of such recording, to dub and edit the Master, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Master, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

    (b) To use Artist's name, and approved likeness and biography, solely in connection with the exploitation and promotion of the Production.

3. Licensee may use the Master in all forms of clips, excerpts and/or in-context trailers in connection with advertising and promotion of the Production.

4. Licensee shall have the right to embody the Production (including the Master) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5. Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"
Performed by Bravetti & Castelli
Courtesy of Dimelo! Latin Dance Records
By Arrangement with Latin Music Entertainment, Inc.

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

6. (a) Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of all rights, including copyrights, in and to the Master, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Master as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b) Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by Artist, and any other recording artists, performers, or producers in connection with the Master. Except as may be expressly provided herein, Licensee shall have no obligation to make payments of any kind whatsoever to any third party or parties (including, but not limited to, any and all persons performing or rendering any services in connection with the recording of the Master) with respect to Licensee's use of the Master hereunder.

3

7.     (a)     Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

(b)     Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

8.     No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter. In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

9.     Licensor's rights and remedies in the event of a breach or alleged breach of the License by Licensee shall be limited to the right to recover damages in an action at law, and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Production or future soundtrack albums of the Production.

10.     Licensee may transfer or assign this License without Licensor's consent to any third party requiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.     This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State. All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.     All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

4

13. This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and can not be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:                                    LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.              DREAMWORKS PRODUCTIONS L.L.C.

By:_____                   By:_____
an authorized signatory                          an authorized signatory

Federal I.D. # 95-4479581

EXHIBIT E

## Synchronization & Performance License

This License Agreement ("License"), is entered into as of the 27th day of September, 2002, by and between Latin Music Entertainment, Inc. d/b/a Ambiente Latino Music Publishing, 9811 Owensmouth Avenue, Suite 3, Chatsworth, California 91311-3800 ("Licensor"), and DreamWorks Productions L.L.C., at 1000 Flower Street, Glendale, California 91201 ("Licensee").

1.   **Composition:**        "El Mambo"

     **Written by:**         Bravetti & Castelli

     **Production:**         The Tuxedo (motion picture)

     **Initial Theatrical Release:**     September 27, 2002

     **Usage:**            :34 Background Vocal (interrupted use)

     **Media:**            All Media Broad rights, whether now known or hereafter devised (including, but not limited to, theatrical exhibition, all forms of television, broadcast and transmission, [free, pay/basic cable, subscription or closed circuit into homes or hotels/motels television stations and systems], common carriers (airlines, ships, etc.) and a buyout of all home video formats (excluding non-linear interactive rights)

     **Territory:**          Worldwide

     **Term:**             Perpetuity

     **License Fee:**        $1,500.00

2.   Licensor hereby grants to Licensee the following non-exclusive, rights: to record the Composition in timed-relation with the Production, to make copies of such recordings, and to exhibit, distribute, exploit, market, broadcast, transmit, and perform the Composition, as synchronized in the Production, in accordance with the terms, conditions, and limitations hereof.

     Licensee may use the Composition in all forms of in-context clips, excerpts and/or trailers in connection with advertising and promotion of the Production.

2

3.      The right to exhibit the Production in the United States, by means of television (including by means of "free television," "pay television, "subscription television," "CATV" and "closed circuit into homes television,") is expressly conditioned upon the networks, local stations or closed circuits having valid performance licenses from the American Society of Composers, Authors and Publishers ("ASCAP") or Broadcast Music, Inc. ("BMI)" as the case may be.

Clearance by performance rights societies in such portion of the Territory as is outside the United States will be in accordance with their customary practices and the payment of their customary fees.

4.      Licensee shall have the right to embody the Production (including the Composition) in all forms of home video devices, whether now known or hereafter devised, including, but not limited to, videocassettes, video tapes, video discs and similar audio-visual devices intended primarily for home use, and to manufacture, release, rent, sell and otherwise distribute such video devices to the public within the Territory during the Term.

5.      The terms of this License are limited to the Usage of the Composition described herein. This License does not authorize or permit Licensee to alter the fundamental character of the music and lyrics of the Composition or to use the title or subtitle of the Composition as the title of any production.

6.      (a)      Licensor warrants and represents that (i) it owns and controls one hundred percent (100%) of the copyright in and to the Composition, (ii) it has the full right, power, and authority to enter into this License, and to grant all of the rights granted herein, (iii) the rights granted herein shall endure for the Term, except as may be expressly provided otherwise, (iv) the consent of no other person, firm or corporation is required to grant the rights granted herein, (v) there are no liens, encumbrances or security interests, nor any claims or litigation, either existing or threatened, which may in any way interfere with, impair, or be in derogation of, the rights herein granted to Licensee, and (vi) Licensee's use of the Composition as contemplated hereunder will not infringe the rights of any person, firm or corporation.

(b)      Licensor shall be solely responsible for obtaining and paying for any requisite consents to this License by the Writer. Licensee shall have no obligation to make payments of any kind whatsoever to any writers, including the Writer, with respect to Licensee's use of the Composition hereunder.

3

7.    Licensee shall accord credit in the end titles of the Production in substantially the following form:

"El Mambo"
Written by Bravetti & Castelli

No casual or inadvertent failure by Licensee or any third parties to comply with the provisions of this paragraph shall constitute a breach of this License.

8.    Licensor shall indemnify and hold Licensee harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensee in connection with any breach by Licensor of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

Licensee shall indemnify and hold Licensor harmless from and against any and all loss, damage or expense (including court costs and reasonable attorney's fees) incurred by Licensor in connection with any breach by Licensee of this License or of any of its respective representations or warranties herein, resulting in a final, non-appealable adverse judgment by a court of competent jurisdiction.

9.    No failure by Licensee to perform any of its obligations hereunder shall be deemed a breach hereof unless Licensor has given written notice of such failure to Licensee, and Licensee does not cure such nonperformance within thirty (30) days after receipt of such notice; or, if incapable of cure within thirty (30) days, if Licensee does not commence to cure such nonperformance within thirty (30) days after receipt of such notice, and diligently continue to cure thereafter. In no event shall Licensor be entitled to seek injunctive or any other equitable relief for any breach or non-compliance with any provision of this License.

10.    Licensee may transfer or assign this License without Licensor's consent to any third party requiring the rights granted hereunder in connection with the marketing, promotion or exploitation of the Production.

11.    This License shall be governed by and subject to the laws of the State of California applicable to agreements made and to be wholly performed within such State.    All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this License shall be submitted exclusively to the jurisdiction of the State or Federal courts located in the State of California, County of Los Angeles.

12.    All notices required to be given to Licensee hereunder, and all notices, payments and royalties required to be given or paid to Licensor hereunder, shall be sent to Licensee or Licensor, as applicable, at the address therefore written above, or to such other address as Licensee or Licensor may hereafter designate.

13.     This License constitutes the entire agreement between Licensee and Licensor with respect to the subject matter hereof, and cannot be changed or modified, or any covenant, representation, warranty or provision hereof waived, except by an agreement in writing signed by both parties.

LICENSOR:                                     LICENSEE:

LATIN MUSIC ENTERTAINMENT, INC.   DREAMWORKS PRODUCTIONS L.L.C.
d/b/a AMBIENTE LATINO MUSIC
PUBLISHING

By: _____          By: _____
    an authorized signatory               an authorized signatory

Federal I.D. #: 95-4479581