UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| NEUTONE RECORDINGS,<br><br>   Plaintiff,<br><br>v.<br><br>DREAMWORKS SKG,<br>DREAMWORKS, INC.,<br>DREAMWORKS DISTRIBUTION, LLC,<br>DREAMWORKS PRODUCTIONS, LLC,<br>DREAMWORKS INTERNATIONAL<br> DISTRIBUTION, LLC,<br>DREAMWORKS, LLC,<br>DREAMWORKS FILMS, LLC,<br>HOME BOX OFFICE, INC.,<br>LATIN MUSIC ENTERTAINMENT,<br>and DIMELO! RECORDS,<br><br>   Defendants. | CIVIL ACTION No. 05-CV-10807 NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

William S. Strong (BBO #483520)
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, Massachusetts 02114
(617) 227-7031

John A. Shope (BBO #562056)
Gabriel M. Helmer (BBO #652640)
Michael C. Martin (BBO #653876)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
(617) 832-1000

## Introduction

Pursuant to Fed. R. Civ. P. 12(b)(2), defendants DreamWorks Productions, LLC, DreamWorks International Distribution, LLC (collectively, the "DreamWorks defendants"), Latin Music Entertainment, Inc. ("LME") and Dimelo! Records respectfully submit this memorandum in support of their motion to dismiss the complaint for lack of personal jurisdiction. Following voluntary dismissals, plaintiff Neutone Recordings now names seven defendants, all but one of which are based in California. But four of the remaining defendants, companies operating almost exclusively in California, do not have any, let alone sufficient, relevant contacts with Massachusetts to subject them to personal jurisdiction. These four defendants should be dismissed because:

1. DreamWorks Productions, LLC was responsible for the licensing and production of the allegedly infringing film "The Tuxedo," but all of its business activities in the United States took place in California, not Massachusetts, with which it otherwise does not possess "minimum contacts."

2. DreamWorks International Distribution, LLC is a California company that had no contacts with Massachusetts in connection with "The Tuxedo."

3. LME and Dimelo! Records are not subject to the personal jurisdiction of this Court because their actions of which Neutone complains took place entirely in California and they have no relevant contacts with Massachusetts.

For these reasons and those detailed more fully below, the Court should dismiss the complaint for lack of personal jurisdiction over each of the named defendants.

## Factual Background

**I.   THE PARTIES**

According the Complaint and Neutone's own promotional materials, Neutone is a general partnership and start-up record label formed in 2001 in Atkinson, New Hampshire, and currently located in Grafton, Massachusetts. Complaint (Court Dkt. No. 1), ¶ 1; Affidavit of John A. Shope ("Shope Aff."), Ex. H, Neutone License. Neutone has filed the present suit seeking a

declaration that it is the owner of two copyrights (composition and sound recording) in a musical track entitled "El Mambo" and seeking damages for infringement of those copyrights when "El Mambo" was distributed in whole on a compilation CD entitled "Dance Remix En Tu Idioma Vol. 2" and synchronized in part into one scene in the motion picture entitled "The Tuxedo," as well as the cable television promotional feature for "The Tuxedo" entitled "HBO First Look: Tailor Made For Jackie Chan."  Complaint ¶¶ 33-141.

DreamWorks Productions, LLC is a limited liability company organized under Delaware law, and has its principal offices in Glendale, California.  Affidavit of John Ehlers, Jr. ("Ehlers Aff.") ¶ 5.  DreamWorks Productions, LLC is the motion picture production company that produced "The Tuxedo" and that was responsible for the licensing "El Mambo" for use in "The Tuxedo."  Id.  "The Tuxedo" was produced in California, not Massachusetts.  Id. ¶¶ 5, 10.  DreamWorks Productions, LLC played no role in the distribution of either the film or the television program in Massachusetts.  Id. ¶ 5.

Defendant DreamWorks International Distribution, LLC is a limited liability company organized under Delaware law, and has its principal offices in Glendale, California.  Ehlers Aff. ¶ 7.  DreamWorks International Distribution, LLC, has not engaged in any activity relating to "The Tuxedo" in Massachusetts or elsewhere.  Id.

Defendant Latin Music Entertainment, Inc. ("LME") is a California corporation with principal offices in North Hollywood, California.  Affidavit of Nissim J. Baly ("Baly Aff.") ¶ 2.  Dimelo! Records is a music imprint of LME with principal offices in North Hollywood, California.  Id. at 3.  Dimelo! is not a separate legal entity (and should be dismissed on that basis as well).  Id.  LME and Dimelo! produce, promote and distribute music by Latin artists in the United States.  Id.  ¶ 4.  LME and Dimelo! produced and distributed the Dance Remix CD

containing "El Mambo" and licensed "El Mambo" to DreamWorks Productions LLC for use in "The Tuxedo." Id. ¶¶ 12, 16. Neither LME nor Dimelo! maintain offices, real property, agents, or employees in Massachusetts. Id. ¶¶ 2-3.

## II.    EVENTS UNDERLYING THE ALLEGED INFRINGEMENT

### A.    Bravetti and Castelli produce "El Mambo" in Uruguay.

Gustavo Bravetti and Marcelo Castelli, residents of Montevideo, Uruguay, are alleged to be the co-authors of both and co-owners of one of the copyrights to the composition and sound recording of "El Mambo," the copyrights at issue in this case. At least as early as 1994, Bravetti had begun licensing music to a Uruguayan music producer doing business as Dee Jay Productions / Dee Jay Music / D.J. Music Producciones / REMIX Records (collectively, "Dee Jay"), which was also located in Montevideo, Uruguay. Baly Aff. ¶¶ 6-7.

Neutone currently alleges that in 1995, Bravetti and Castelli wrote and recorded "El Mambo." Ehlers Aff., Ex. E, Letter dated March 15, 2004. In its registration of copyright with the U.S. Copyright Office, however, Neutone asserted that the composition and recording were both completed in 1999. Shope Aff., Exs. E & F.

### B.    Bravetti licenses rights to his music, including "El Mambo," to Dee Jay for promotion and commercialization in Uruguay and other countries.

On November 25, 1997, Bravetti entered into an agreement with Dee Jay ("Dee Jay License") that conveyed "complete and absolute exclusivity to [Bravetti's] performances in phonorecords" as well as "whatever support materials [Bravetti] might produce, such as masters, tapes, records, and, in general, any material required for their reproduction." Shope Aff., Ex. G, Dee Jay License. This agreement, which Neutone's counsel concedes was made with the knowledge of Castelli, also authorized Dee Jay "to commercialize this contract freely with any recording studio" and contemplated that Dee Jay's promotion efforts would ultimately lead to the

publication of both "phonorecords and videograms" (that is, DVDs) incorporating Bravetti's music.  Id.  After Dee Jay and Bravetti entered into this agreement, Dee Jay began promoting Bravetti's music to Nissim J. Baly, principal of defendant LME.  Baly Aff. ¶¶ 5-10.

### C. Dee Jay and Valdez licensed "El Mambo" to LME and Dimelo! in California for commercialization in the United States.

In 1998, Baly met Sibyla Trabal, Bravetti's girlfriend and a Dee Jay representative, at MIDEM, a Latin American music convention in Miami.  Baly Aff. ¶ 6.  In the course of promoting Bravetti's music managed by Dee Jay, Trabal provided LME with a CD containing, among other tracks, Bravetti's and Castelli's "El Mambo."  Id. ¶ 8.  Baly and Trabal corresponded (between California and Uruguay) in the effort to negotiate a license to several tracks, including "El Mambo.'  Id. ¶¶ 9-10.  By agreement dated as of June 29, 1999, Dee Jay and LME entered into a non-exclusive license for the right to publish "El Mambo," along with numerous other musical tracks by Bravetti and other Dee Jay artists.  Id. ¶¶ 11, Ex. C, LME License.  In 1999, LME and Dimelo! released a CD entitled "Dance Remix En Tu Idioma Vol. 2" which contained, among other tracks, "El Mambo."  Id. ¶ 12.

### D. Neutone licensed "El Mambo" from Bravetti and Castelli in New Hampshire.

Notwithstanding the licensing and release of "El Mambo" between 1995 and 1999, on July 1, 2001, Bravetti and Castelli apparently entered into a written agreement with Neutone in Atkinson, New Hampshire (the "Neutone License").  The Neutone License purported to grant Neutone "a fifty percent (50%) interest in the Copyright of all compositions embodied in the [sound] Recording released [as 'El Mambo']" as well as "the exclusive rights and ownership throughout the World . . . of the Master Recording(s) entitled 'El Mambo.'"  Shope Aff., Ex. H, Neutone License ¶¶ 2,7; Complaint, ¶ 4.  Bravetti and Castelli retained for themselves a 50% ownership interest in "the Copyright of all compositions embodied in the [sound] Recording,"

- 4 -

but apparently granted all rights of "administration and control" to Neutone.  Shope Aff., Ex. H, Neutone License, ¶ 7.

### E.  LME licenses "El Mambo" to DreamWorks in California for $3,000 for use as background music in the motion picture "The Tuxedo."

On September 27, 2002, unaware of any license to Neutone, DreamWorks Productions, LLC entered into two non-exclusive licenses with LME (the "DreamWorks Licenses") for the use of approximately 34 seconds of "El Mambo" as interrupted background music in a brief scene of the motion picture "The Tuxedo."  Ehlers Aff. ¶ 11; Ex. A, Master Use License ¶ 1; Ex. B, Synchronization & Performance License ¶ 1.  In exchange for the right to use both the recording and the composition of "El Mambo," DreamWorks Productions LLC paid LME the sum of $3,000, as a flat, upfront royalty fee, without right to future royalty payments.  Ex. A, Master Use License ¶ 1; Ex. B, Synchronization & Performance License ¶ 1.

DreamWorks Distribution released "The Tuxedo" for showing in theaters in the United States on September 27, 2002.  Ehlers Aff. ¶ 12.  Shortly after the movie's release, Bravetti contacted LME in Los Angeles to request copies of the movie.  Baly Aff. ¶ 17.  After "The Tuxedo" finished its worldwide theatrical run, on February 25, 2003, DreamWorks LLC released "The Tuxedo" and the HBO First Look program on DVD.  Ehlers Aff. ¶ 13.

### F.  Neutone asserts a claim and files the present lawsuit.

In late 2003, Neutone began threatening the DreamWorks defendants with legal action unless they immediately licensed "El Mambo" for an amount many time greater that the licensing fee DreamWorks initially paid LME.  Ehlers Aff. ¶ 14.  In November 2003, defendant HBO began broadcasting "The Tuxedo" and the HBO First Look program to its cable television subscribers.  Complaint ¶ 28.  The same month, Neutone for the first time submitted applications for copyright registration for both the musical composition and sound recording of "El Mambo,"

claiming on each application that "El Mambo" had been created in 1999 but providing no date for any prior publication. Shope Aff., Exs. E & F. The United States Copyright Office issued registrations for copyrights to the musical composition (Reg. No. PAu-2-829-551) and sound recording (Reg. No. SRu-531-993). Shope Aff., Exs. E & F.

When the defendants failed to comply with Neutone's escalating demands for payment, on April 22, 2005, Neutone filed the present complaint, asserting forty-six (46) causes of action against eight DreamWorks entities, LME, Dimelo! and HBO, all of which are non-exclusive sub-licensees of Bravetti's co-ownership in "El Mambo."

## Discussion

Neutone filed the present Complaint naming ten out-of-state companies that are located in California and New York. While Neutone has purportedly agreed to dismiss those DreamWorks entities that admittedly played no part in the allegedly infringing activities, Neutone remains unable to demonstrate even the basic facts necessary to exercise jurisdiction in Massachusetts over four of the seven remaining defendants.

**I.   NEUTONE CANNOT MEET ITS BURDEN TO DEMONSTRATE PERSONAL JURISDICTION.**

Neutone cannot meet its burden of establishing facts necessary to support the Court's exercise of personal jurisdiction as to each defendant. "It is the plaintiff's burden to establish that the forum court has jurisdiction over the person of the sued defendant." Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). "The prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. The 'plaintiff must go beyond the pleadings and make affirmative proof.'" Noonan v. Winston Co., 902 F. Supp. 298, 302 (D. Mass. 1995) (quoting Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). In this case, Neutone must present evidence of all necessary jurisdictional facts. The

Court is not required to "credit conclusory allegations or draw farfetched inferences." Mass. Sch. of Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998).

The Court's jurisdictional analysis is two-fold: first, Neutone must demonstrate that the Court is authorized to exercise jurisdiction over each defendant by the Massachusetts long-arm statute; and, second, Neutone must establish that the Court's exercise of jurisdiction over each defendant does not offend constitutional due process. See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1086 (1st Cir. 1992); Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 981 (1st Cir. 1986).[1]

### A.     Neutone cannot establish that jurisdiction is proper under § 3(c) of the Massachusetts long-arm statute.

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, §3, allows a court to exercise personal jurisdiction over an out-of-state defendant under a variety of circumstances. Neutone, however, relies upon only one ground for personal jurisdiction. It alleges that "each of the Defendants, have engaged in and committed acts herein complained of in the State of Massachusetts and in this District." Complaint, ¶ 3. In this regard, Neutone's only allegation is that the defendants are subject to the Court's personal jurisdiction because Neutone's cause of action arises out of the defendants' acts in "causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws c. 223A, § 3(c). "To establish jurisdiction under section 3(c), it must be demonstrated that the alleged tortious injury occurred in Massachusetts." Mass. Sch. of Law at Andover v. American Bar Assoc., 959 F.Supp. 36, 39 (D. Mass. 1997), aff'd, 142

---

[1] Neutone apparently asserts that this Court possesses subject matter jurisdiction under both diversity jurisdiction (28 U.S.C. § 1332) and federal question jurisdiction (28 U.S.C. §§ 1331, 1338(a)). As the Copyright Act does not provide for nationwide service of process, the Court's exercise of personal jurisdiction is governed by Massachusetts law and the Due Process Clause of the Fourteenth Amendment. See Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719-20 (1st Cir. 1991).

F.3d 26 (1st Cir. 1998) (finding that defendants' activity in Massachusetts did not include any of the alleged tortious activity and dismissing for lack of personal jurisdiction as to those defendants).

Neutone cannot demonstrate that these defendants committed any of the acts alleged to be copyright infringement in Massachusetts. It is insufficient under § 3(c) merely to assert that the harm of some out-of-state activity was felt in Massachusetts because the statute itself requires, in addition to an in-state injury, "an act or omission in this commonwealth." Indeed, to establish jurisdiction under § 3(c), Neutone must establish that each defendant actually produced unauthorized copies or offered the allegedly infringing products for sale (*i.e.*, infringed the copyright) in Massachusetts. See High Country Investor, Inc. v. McAdams, Inc., 221 F. Supp. 2d 99, 102 (D. Mass. 2002) (trademark infringement occurred in the forum where allegedly infringing articles were produced and offered for sale to local distributors, not where articles ended up in the stream of commerce).

To the extent that Neutone has claimed that the tort involved the licensing, production and distribution of the Dance Remix CD, "The Tuxedo," and the HBO First Look program, DreamWorks Productions, DreamWorks International Distribution, LME and Dimelo! have not committed any such acts in Massachusetts. Ehlers Aff. ¶¶ 5, 7; Baly Aff. ¶¶ 2-3. LME and Dimelo!, for instance, have sold approximately 1,520 copies of the allegedly infringing CD in southern California, but did not sell any copies to anyone in Massachusetts. Baly Aff. ¶¶ 14-15. DreamWorks Productions, LLC, produced "The Tuxedo" in California, not Massachusetts. Ehlers Aff. ¶¶ 5, 10. DreamWorks International Distribution, LLC, did not engage in any activity relating to "The Tuxedo" in Massachusetts or elsewhere. Id. ¶ 7. In consequence, Neutone cannot establish that any of these defendants, let alone all of them, committed a tortious

act in the Commonwealth. Under these circumstances, the Complaint must be dismissed as to all defendants except DreamWorks LLC, DreamWorks Distribution, LLC and HBO.

      **B.**      **The exercise of jurisdiction over these defendants does not meet the constitutional requirements.**

Even if jurisdiction could be had under ch. 223A, § 3(c), the federal constitution's Due Process clause requires Neutone to establish that the defendants, which are foreign companies with no offices, property, or employees in Massachusetts, "possess sufficient contacts with the forum state so that subjecting him, or it, to the forum's jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" United Elec., 960 F.2d at 1087 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This "minimum contacts" analysis recognizes both general and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & nn. 8-9 (1984) (distinguishing between the constitutional requirements for "general" and "specific" jurisdiction).

      **1.**      **None of these defendants possess sufficient contacts with Massachusetts to be subject to general jurisdiction here.**

"General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" Mass. Sch. of Law, 142 F.3d at 34 (quoting United Elec., 960 F.2d at 1088). To demonstrate general jurisdiction, Neutone must establish that each defendant engaged in "continuous and systematic general business contacts" in the District of Massachusetts and that "the exercise of jurisdiction would be reasonable." U.S. v. Swiss Am. Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001). "The standard for evaluating whether these contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions." Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (quotation marks omitted). Indeed, significant contacts with Massachusetts have

- 9 -

been held insufficient to render a foreign defendant subject to the federal court's general jurisdiction.  See, e.g., Swiss Am. Bank, 274 F.3d at 619-20 (foreign bank not subject to general jurisdiction despite advertising, entering contracts and joint business ventures, engaging in litigation, loaning $350,000 to local business); Noonan, 135 F.3d at 93 (foreign company not subject to general jurisdiction despite sending employee to Massachusetts and soliciting over $500,000 in business).

Even were the Court to presume that the long-arm statute was satisfied, which it is not in this case, none of these California companies maintain any offices, property, employees or other contacts with Massachusetts, let alone the kind of "continuous and systematic" activity sufficient to subject them to the Court's general jurisdiction.  See, e.g., Helicopteros, 466 U.S. at 418 (regular purchases of equipment and services within state insufficient to warrant assertion of general jurisdiction); Glater v. Eli Lilly & Co., 744 F.2d 213, 214-15, 217 (1st Cir. 1984) (no general jurisdiction over defendant that advertised in journals which circulate in forum and employed eight sales representatives to solicit orders, including two residents, within the forum).

### 2.  None of these defendants possess sufficient contacts with Massachusetts to be subject to are subject to specific jurisdiction here.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities," such as when the litigation itself arises directly out of those activities.  Swiss Am. Bank, 274 F.3d at 618 (quoting Mass. Sch. of Law, 142 F.3d at 34).  The First Circuit has set forth a "tripartite analysis" to determine whether the appropriate nexus exists.  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  Under this analysis, Neutone must demonstrate that (1) its claims relate to or arise out of the defendants' contacts with Massachusetts, (2) those contacts constitute purposeful availment of the benefits and protections afforded by Massachusetts law, and (3) the exercise of jurisdiction

is reasonable after consideration of the traditional gestalt factors. Id. at 287. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Id. Courts considering the constitutional requirements necessary for specific jurisdiction "steadfastly reject the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." United Elec., 960 F.2d at 1089.

Neutone has not alleged a fact or event that demonstrates any contact between any of the defendants and Massachusetts. Indeed, the accompanying affidavits demonstrate the contrary: that the allegedly infringing activity occurred in California, not Massachusetts. It is not sufficient to demonstrate "minimum contacts" that Neutone may claim that one or more of the defendants produced works that arrived in Massachusetts through the stream of commerce. The First Circuit has "declined to adopt the 'stream of commerce' theory of personal jurisdiction" in view of "the Supreme Court's rejection of the claim that a commercial enterprise should be subject to personal jurisdiction wherever its conduct foreseeably causes injury, regardless of whether the defendant directed its conduct toward the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1393 (1st Cir. 1995). See also Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State").

DreamWorks Productions LLC, DreamWorks LLC, LME, and Dimelo! are -- to varying degrees -- the companies responsible for licensing, producing and distributing "El Mambo" in an allegedly infringing compilation CD (LME and Dimelo!) and producing and distributing "The Tuxedo" in the United States and abroad (the DreamWorks entities). LME/Dimelo! produced a limited number of allegedly infringing CDs and distributed them solely in California. Baly Aff.

¶¶ 14-15.  Neutone has asserted no related contacts whatsoever between LME/Dimelo! and Massachusetts because there are none.

DreamWorks Productions and DreamWorks International Distribution are accused of licensing, producing and distributing "The Tuxedo" and contributing to the production and broadcast of the HBO First Look program, but Neutone has no support for the claim that any of this activity actually occurred in Massachusetts.  To the contrary, the hub of any infringement was California.  The movie was produced in California.  Ehlers Aff. ¶ 10.   The story of the movie is set in California, does not concern subjects of any relevance to Massachusetts, and cannot be said to be targeted in any way to a Massachusetts audience.  Neutone has not, and cannot, establish that these defendants have any direct contact with Massachusetts, let alone sufficient aggregate contacts to subject them to personal jurisdiction in Massachusetts

### 3. Exercise of jurisdiction in this case would not be reasonable.

In addition to demonstrating that sufficient purposeful contacts exist between each of the five defendants, Neutone bears the further burden of establishing that the exercise of jurisdiction in this case would be reasonable.  Neutone will not be able to make this showing.  Courts typically assess the fairness and reasonableness of an assertion of jurisdiction over a defendant by considering: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Noonan v. Winston Co., 135 F.3d 85, 94 n.2 (1st Cir. 1998).  Moreover, the reasonableness analysis has been described by the First Circuit as a "sliding scale" because "the weaker the plaintiff's showings on the first two prongs (relatedness and purposeful availment), the less a defendant

need show in terms of unreasonableness to defeat jurisdiction." Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995).

In light of the complete inadequacy of Neutone's showing with respect to relatedness and purposeful availment, as discussed above, the reasonableness factors weigh heavily against subjecting the out-of-state defendants to the Court's personal jurisdiction. See Callahan v. Harvest Bd. Int'l, Inc., 138 F. Supp. 2d 147, 162-163 (D. Mass. 2001) (analyzing reasonableness factors and holding that "given the weak showing the plaintiff made on relatedness and purposeful availment, the exercise of jurisdiction by this court would be unfair"). Each of the four defendants are businesses located in and around Los Angeles, California. Ehlers Aff. ¶¶ 4-8; Baly Aff. ¶¶ 2-3. Most discovery relating the alleged infringing activity and defenses to infringement will be focused in California. As most of the witnesses are employees of the defendants, the defendants would bear an undue and disproportionate burden in this case. The aggregate burden of forcing the defendants to litigate in Massachusetts, especially in view of the number of defendants joined in this action, falls inordinately on the defendants. Admittedly, litigating in a foreign forum is not, by itself, generally considered a significant burden reaching constitutional significance. Here, however, the fact that the majority of the evidence, witnesses and defendants are located outside of Massachusetts constitutes a special or unusual burden that merits dismissal. This is particularly true in light of the fact that, as discussed above, Neutone has failed to allege that any of the defendants have a connection to Massachusetts. See Comer v. Comer, 295 F. Supp. 2d 201, 213 (D. Mass. 2003) (finding that "there would be a significant burden" on Kentucky defendants to litigate in Massachusetts when none of them had "any connection to Massachusetts").

While Massachusetts does have an interest in providing an effective forum for its residents, the Commonwealth's interests in adjudicating this dispute are minimal at best. Neutone has asserted no claims on the basis of Massachusetts law in particular. Moreover, Neutone's asserted copyright interests were obtained in New Hampshire. Under these circumstances, Massachusetts has little, if any interest in adjudicating this dispute. Likewise, because the events giving rise to this action occurred in California, involve California businesses and witnesses, and because the only state law claims and counterclaims will likely be governed by California law, California -- not Massachusetts -- thus has a strong interest in resolving this action. See Sawtelle, 70 F.3d at 1395 (stating that forum state's interest in litigation was "far less compelling" because "the acts comprising the defendants' alleged negligence occurred almost entirely outside" the forum state); Merced v. JLG Indus., 193 F. Supp. 2d 290, 295 (D. Mass. 2001) (holding that Massachusetts "has no compelling interest" in lawsuit because events giving rise to plaintiff's claims "occurred entirely outside of its borders by an entity that transacts no business within them"). Neutone does have an interest in obtaining convenient and effective relief, but the convenience afforded Neutone does not justify the disproportionate burden of forcing all defendants to litigate in a distant forum with only a "random, isolated or fortuitous" relationship with the events giving rise to the cause of action. Noonan, 135 F.3d at 92.

The judicial system's interest in obtaining the most effective resolution also merits dismissal in this case. As discussed in detail in the defendants' motion to transfer venue and motion to dismiss for failure to join necessary and indispensable parties filed herewith, the most effective resolution of this action can be had only in the Central District of California, the forum in which the infringing activity took place, in which most witnesses and discovery reside, in which all necessary defendants may be joined, and in which all defendants are subject to the

district court's jurisdiction.  Consideration of the interests, burdens and equities involved thus weighs strongly in favor of dismissal.

| LATIN MUSIC ENTERTAINMENT, and DIMELO! RECORDS, | DREAMWORKS PRODUCTIONS, LLC, and DREAMWORKS INTERNATIONAL DISTRIBUTION, LLC, |
|---|---|
| By their attorneys, | By their attorneys, |
| /s/ William S. Strong | /s/ Gabriel M. Helmer |
| William S. Strong (BBO #483520) <br> KOTIN, CRABTREE & STRONG, LLP <br> One Bowdoin Square <br> Boston, Massachusetts 02114 <br> (617) 227-7031 | John A. Shope (BBO #562056) <br> Gabriel M. Helmer (BBO #652640) <br> Michael C. Martin (BBO #653876) <br> FOLEY HOAG LLP <br> 155 Seaport Blvd. <br> Boston, MA  02210 <br> (617) 832-1000 |

Dated: July 27, 2005

| **CERTIFICATION OF COUNSEL** | **CERTIFICATE OF SERVICE** |
|---|---|
| Pursuant to Local Rule 7.1(A)(2), the undersigned certifies that on July 13, 2005 counsel for the defendants attempted to confer with William Carroll, Esquire, counsel for Neutone Recordings, in a good faith attempt to resolve the issues raised in this motion and was unable to resolve this matter. | I hereby certify that on the 27th day of July, 2005, I caused a true copy of the above document to be served upon William Carroll,, Esquire, counsel for Neutone Recordings, by facsimile and mail. |
| /s/ Gabriel M. Helmer | /s/ Gabriel M. Helmer |
| Gabriel M. Helmer | Gabriel M. Helmer |

B3070977.11